Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2186574 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Sands Bros. & Co., Ltd. v. Alba Perez Ttee Catalina Garcia Revocable Trust U/A DTD 9/04/01
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
SANDS BROTHERS & CO., LTD., Plaintiff,
v.
ALBA PEREZ TTEE CATALINA GARCIA REVOCABLE TRUST U/A DTD 9/04/01, Defendant.
No. 04 Civ. 0005(JFK).

Sept. 28, 2004.

Mark S. Koplik & Associates, Ariel Berschadsky, New York, NY, for Plaintiff Sands Brothers & Co., Ltd., of counsel.
Bruno & Degenhardt, P.C., Christopher Bruno, Fairfax, VA, David Chase, P.A., David Chase, Hollywood, FL, for Defendant Alba Perez Ttee Catalina Garcia Revocable TrustU/A DTD 9/04/01, of counsel.

*OPINION and ORDER*
KEENAN, J.

Factual Background

*1 In 1988, Ms. Catalina Garcia suffered permanent brain damage as the result of medical malpractice. Defendant's Motion ("Def.Motion") at 2. The personal injury settlement she received was used to fund a trust allegedly established under the laws of Florida, with its address in Miami, Florida, known as the Catalina Garcia Revocable Trust U/A DTD 9/04/01 ("the Trust"). *Id.;* Complaint ¶ 3. Alba Perez, Ms. Garcia's daughter and the trustee of the Trust, hired Shochet Securities, Inc., ("Shochet"), a securities broker-dealer in Florida, to manage the Trust funds. Def. Motion at 2. The individual Shochet broker, Leila Shuminer, allegedly mismanaged the Trust's assets, "wiping out the Trust Account's equity" by late October, 2001. *See* Complaint Exhibit A at 2-3.

On October 17, 2003, Alba Perez Ttee Catalina Garcia Revocable Trust U/A DTD 9/04/01 (the same Trust as above, also the defendant in the instant case) filed a "Statement of Claim" for arbitration with the National Association of Securities Dealers, Inc. ("NASD") "to recover losses it sustained as a direct result of [the] mismanagement of its investment assets." Complaint Exhibit A at 1; Complaint ¶ 3. The respondent given in the caption, however, was not Shochet, but Sands Brothers & Co., Ltd. ("Sands") (plaintiff in the instant case), a Delaware Corporation with its principal place of business in New York City. Complaint Exhibit A at 1; Complaint ¶ 2. Sands is named as respondent because on November 7, 2001, Sands acquired through a Purchase Agreement the Trust account, along with other assets of Bluestone Capital Corp. ("Bluestone"), of which Shochet was a subsidiary. *See* Complaint ¶¶ 4, 7, 9; Complaint Exhibit B (the Purchase Agreement). Under Section 8 of the Purchase Agreement, Sands did not assume the liabilities of Bluestone or Shochet when it acquired the Bluestone assets: "BlueStone acknowledges that ... Sands Brothers shall not assume any liabilities, debts, or obligations of BlueStone ... including, without limitation, any Litigation Liabilities. 'Litigation Liabilities' means any debts, obligations, or liabilities arising from or relating to pending, threatened and unasserted claims ... or arbitration ... against BlueStone or Shochet." Complaint Exhibit B § 8. The Trust does not oppose this contention. *See* Def. Motion at 6 ("[T]here is no need to even reach the issue of successor liability.").

The Trust account remained with Sands until approximately December 2003. However, no account activity is alleged between November 7, 2001 and December 2003. Def. Motion at 4-5; Complaint ¶ 12.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

K

Not Reported in F.Supp.2d, 2004 WL 2186574 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Procedural Background

On January 5, 2004, Sands filed a complaint with this Court seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, that it is not a successor in interest to Bluestone or Shochet, and that it is not liable or responsible for transactions that took place at either Bluestone or Shochet, as alleged in the Statement of Claim filed by the Trust before the NASD. Also on January 5, 2004, Sands moved this Court, by Order to Show Cause, for an order preliminarily enjoining defendant from prosecuting the arbitration brought by the Trust against Sands and staying such arbitration as to Sands. Sands' Memorandum of Law submitted in conjunction with the Order to Show Cause does not support Sands' request for a preliminary injunction, but rather supports Sands' request for a declaratory judgment.

*2 The Court set the return date for the Order to Show Cause for January 8, 2004. On January 7, 2004, counsel for both parties sent to the Court, via facsimile, a Joint Stipulation erroneously dated December 7, 2003 ("Stipulation"). The Stipulation provided that the Trust would serve and file its response by January 23, 2004, and Sands would serve and file its reply by January 28, 2004. The parties requested "that the Court then rule on the papers, with no requirement that a hearing be held." Stipulation, ¶ 2. The Stipulation further provided that "[t]he parties have reached agreement on an extension of time for plaintiff to respond to the arbitration claim, if required." Stipulation, ¶ 4. This Court entered an Order on January 7, 2004, granting the parties' request to decide the Order to Show Cause on the papers, adopting the briefing schedule set forth in the Stipulation, and noting that the parties have agreed to extend the time for Sands to respond to the arbitration claim. See Order dated January 7, 2004.

On January 22, 2004, the Trust served Sands, ostensibly as its response to the Order to Show Cause, and without requesting a pre-motion conference in accordance with this Court's rules, with "Defendant's Motion to Dismiss Complaint and to Compel Arbitration." The Trust has moved to dismiss Sands' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b) (1)") for lack of subject matter jurisdiction, and to compel Sands to arbitrate before the NASD. In this submission, the Trust states that "*it is believed* that the parties [the Trust and Shochet] entered into a written arbitration agreement," and refers the Court to "Shochet's standard arbitration agreement" without providing the Court with an affidavit as to the authenticity of that document. Def. Motion at 3 (emphasis added); Def. Motion Exhibit A.

Sands' reply, served on January 26, 2004, addresses several, but not all, arguments made in the Trust's Motion, and adds a third request for declaratory relief: that Sands is not liable to the Trust because there were no activities in the Trust account after November 7, 2001. Neither party requested supplemental briefing for the two added issues.

Because of the unorthodox procedural posture of this matter, and because of the parties' agreement that the Court rule on the papers, the Court treats the parties' submissions as a motion for declaratory judgment and a cross-motion to dismiss and to compel arbitration. For the reasons that follow, Sands' motion for a declaratory judgment is granted, and the Trust's cross-motion to dismiss under Rule 12(b)(1) and to compel arbitration is denied.

I. Legal Standards

A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint when the federal court lacks jurisdiction over the subject matter. Because a lack of subject matter jurisdiction renders other defenses moot, a court usually gives first consideration to a motion to dismiss under Rule 12(b)(1). *Friedman v. United States,* No. 01 Civ. 7518(LTS)(RLE), 2003 WL 1460525 at *5 (S.D.N.Y. Mar. 18, 2003); *Prestop v. Hamlett,* No. 99 Civ. 2747(GBD), 2001 WL 363676 at *6 (S.D.N.Y. Apr. 12, 2001). Where the defendant challenges the legal, and not the factual, sufficiency of the plaintiff's jurisdictional allegations, the district court takes all facts alleged in the complaint as true, and draws all reasonable inferences in favor

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW   Document 30-12   Filed 09/06/2007   Page 3 of 5

Not Reported in F.Supp.2d                                               Page 3
Not Reported in F.Supp.2d, 2004 WL 2186574 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

of the plaintiff. *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001) (citations omitted). However, when jurisdictional facts are called into question, *id.,* "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citation omitted); *Smith v. Potter,* 208 F.Supp.2d 415, 417 (S.D.N.Y.2002) (citations omitted).

B. Declaratory Judgment

*3 In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a). "[T]he granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest." 10B Wright & Miller, *Federal Practice and Procedure* § 2759 (3d ed.). That discretion is reviewable on appeal only for an abuse of discretion. *Id.; see Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995).

II. Arbitration

A. Who Decides the Question of Arbitrability?

The Court must first determine the threshold question of who decides whether the claim is arbitrable-the Court or the arbitrator. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 53 (2d Cir.2001) (quotation and citation omitted). Furthermore, "one party's membership in [the NASD] is insufficient, in and of itself, to evidence the parties' clear and unmistakable intent to submit the 'arbitrability'

question to the arbitrators." *Id.* at 57; *see Sands Bros. & Co. v. Ettinger,* No. 03 Civ. 7854(DLC), 2004 WL 541846 at *2 (S.D.N.Y. Mar. 19, 2004).

The Trust's 12(b)(1) claim hinges on the threshold question of who decides arbitrability: " Significantly, there is no indication, let alone ambiguity, in the Arbitration Agreement to even remotely suggest that the threshold question of the arbitrability of this matter would properly be subject to judicial determination." Def. Motion at 7. However, it is a matter of speculation whether this arbitration agreement actually exists. The Court cannot grant the Trust's motion to dismiss for lack of subject matter jurisdiction based on this believed-in document. The Trust's belief, without any stronger showing, that the Trust and Shochet entered into an arbitration agreement fails to constitute "clear and unmistakable" evidence that the parties agreed to have an arbitrator decide question of arbitrability. This Court, therefore, and not the arbitrator, has jurisdiction to decide the question of arbitrability.

2. Is the Claim Arbitrable?

The second issue a court must decide is whether the claim is, in fact, arbitrable, keeping in mind the " strong federal policy favoring arbitration," and resolving any doubts as to the scope of arbitrable issues in favor of arbitration. *Ettinger,* 2004 WL 541846 at *3 (citations omitted). The court uses a summary judgment standard. *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir.2003). If an issue of fact as to the making of the agreement for arbitration exists, a trial must be held to determine whether the claim is arbitrable. *Id.* (citing 9 U.S.C. § 4). However, if there is alternative basis for judgment, such as resolution of the issue of arbitrability as a matter of law, then the judgment of a district court remains undisturbed. *Id.*

*4 Under Rule 10301(c) of the NASD Code, "[a]ny dispute, claim or controversy ... between a customer and a member" must be submitted to arbitration " upon the demand of the customer." *See Ettinger,* 2004 WL 541846 at *3. Customer status is determined "as of the time of the events providing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW    Document 30-12    Filed 09/06/2007    Page 4 of 5

Not Reported in F.Supp.2d
Page 4
Not Reported in F.Supp.2d, 2004 WL 2186574 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

the basis for the allegation of fraud," and " allegations against a predecessor-in-interest d[o] not give rise to a duty to arbitrate on the part of the successor." *Id.* (quoting *Bensadoun*, 316 F.3d at 177).

The Trust does not qualify as a Sands customer as of the time of the events providing the basis for the Trust's allegations-specifically, the stock purchases that occurred before the end of October 2001-because the Trust had no connection with Sands until November 7, 2001, when Sands purchased the Bluestone assets. The Trust's arbitration claim thus falls outside the NASD Rule and is not arbitrable.

### 3. Merits of the Claim

#### a. Successor-in-Interest Liability

New York common law provides four exceptions to the general rule that an asset purchaser is not liable for its predecessor's torts: (1) if the buyer expressly assumed the predecessor's tort liability, (2) if the buyer and the predecessor entered into a *de facto* merger, (3) if the buyer was a mere continuation of the predecessor, or (4) if the buyer and the predecessor entered into a transaction fraudulently to escape the predecessor's torts. *See Cargo Partner AG v. Albatrans Inc.*, 352 F.3d 41, 45 (2d Cir.2003); *Ettinger*, 2004 WL 541846 at *4. The *de facto* merger and mere continuation exceptions are so similar as to be considered a single exception. *Cargo Partners*, 352 F.3d at 45 n. 3; *Ettinger*, 2004 WL 541846 at *4 n. 5. Because there is no allegation here that Sands and Bluestone entered into the Purchase Agreement for fraudulent purposes, and because Sands expressly disclaimed any Bluestone liabilities, including liability for claims in arbitration against Bluestone, only the *de facto* merger and mere continuation exceptions are potentially applicable here.

A *de facto* merger is a merger in substance but not in form. Four conditions are required: continuity of selling corporation as demonstrated by the same management, personnel, assets, and physical location; continuity of stockholders that occurs when the purchaser pays for the acquired corporation with shares of the purchaser's stock; dissolution of the selling corporation; and assumption of liabilities by the purchaser. *Ettinger*, 2004 WL 541846 at *4 (citing *Cargo Partners*, 352 F.3d at 45-46).

Sands' acquisition of certain Bluestone assets demonstrates none of the four conditions that place an acquisition within the *de facto* merger exception. Sands paid cash for the purchase of the assets, Bluestone acquired no Sands stock, and Sands did not acquire Bluestone's liabilities. Purchase Agreement § 7.1, 8. Bluestone's co-chairmen were prohibited from working at Sands, and Sands was not required to hire any Bluestone employees. *Id.* § 3.1. The Sands/Bluestone acquisition thus falls within the general rule that successor-in-interest liability does not exist when one entity purchases assets of another. Even if this Court were to assume that the ephemeral arbitration agreement between Shochet and the Trust does, indeed, exist, Sands is entitled, as a matter of law, to a declaratory judgment that it is not a successor in interest to the liabilities of Shochet or Bluestone and therefore cannot be compelled to arbitrate the Trust's claims.

#### b. Duty of Ongoing Supervision

*5 In the context of a non-discretionary account, that is, an account where the customer keeps control of the account and has full responsibility for trading decisions, a broker need not give ongoing advice to the customer. Instead, the broker's obligations end after each transaction is complete. *See De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1302 (2d Cir.2002); *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir.1999); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940-41 (2d Cir.1998).

It is uncontested that no activity occurred in the Trust account between November 7, 2001 and December 2003. Indeed, according to the Trust's Statement of Claim, the account was "wip[ed] out" by the end of October, 2001. In the absence of any activity in the account, Sands is entitled to a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

declaratory judgment that it had no ongoing duty to advise or supervise the Trust account between November 7, 2001 and the closing of the Trust account in December 2003.

## Conclusion

For the reasons given above, the Trust's motion to dismiss and to compel arbitration is denied, and declaratory judgment is granted in favor of Sands. The Clerk of the Court is instructed to close this case and remove it from the Court's active docket.

SO ORDERED.

S.D.N.Y.,2004.
Sands Bros. & Co., Ltd. v. Alba Perez Ttee Catalina Garcia Revocable Trust U/A DTD 9/04/01
Not Reported in F.Supp.2d, 2004 WL 2186574 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.