1  ZEIGER, TIGGES & LITTLE LLP
   Marion H. Little, Jr., Esq. (admitted *pro hac vice*)
2  Michael R. Reed, Esq. (admitted *pro hac vice*)
   3500 Huntington Center
3  41 South High Street
   Columbus, OH  43215
4  Telephone:    (614) 365-9900
   Facsimile:    (614) 365-7900
5
   SQUIRE, SANDERS & DEMPSEY L.L.P.
6  Joseph A. Meckes (State Bar No. 190279)
   Daniel T. Balmat (State Bar No. 230504)
7  One Maritime Plaza, Suite 300
   San Francisco, CA  94111-3492
8  Telephone:  +1.415.954.0200
   Facsimile:  +1.415.393.9887
9
   Attorneys for Plaintiff
10 THE O.N. EQUITY SALES COMPANY

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                        (SAN JOSE DIVISION)

15

16 THE O.N. EQUITY SALES COMPANY,        Civil Action No. C-07-2844 JSW
   an Ohio Corporation,
17                                        **(E-FILING)**
                  Plaintiff,
18                                        **NOTICE OF MOTION AND MOTION
          vs.                             FOR AN ORDER AUTHORIZING THE
19                                        PARTIES TO ENGAGE IN IMMEDIATE
   DANIEL MARIA CUI, an individual,       DISCOVERY ON THE ISSUE OF
20                                        ARBITRABILITY; MEMORANDUM IN
                  Defendant.              SUPPORT**
21
                                          [E-Filed concurrently with [Proposed] Order]
22

23                                        DATE:       October 12, 2007
                                          TIME:       9:00 a.m.
24                                        CTRM:       2, 17th Floor
                                                      Hon. Jeffrey S. White
25

26                                        **Complaint filed:**    May 31, 2007
                                          **Trial date:**         None
27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN       Case No. C07-2844 JSW
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

1    TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE THAT that, on October 12, 2007 at 9:00 a.m., or as soon

3    thereafter as the matter may be heard, in the courtroom of the Honorable Jeffrey S. White, located

4    at 450 Golden Gate Ave., Seventeenth Floor, San Francisco, California 94102, Plaintiff The O.N.

5    Equity Sales Company ("ONESCO") will and hereby does move the Court, pursuant to Rule 26

6    of the Federal Rules of Civil Procedure and Local Rules 7 and 37, for an Order permitting the

7    parties to engage in immediate discovery on the issue of arbitrability.

8    This motion is based on the memorandum of points and authorities in support hereof, the

9    exhibits attached to this motion, the pleadings, records and papers on file herein and such other

10   and further evidence and argument as may be presented at or before any hearing of this motion.

11

12                                          Respectfully submitted,

13   Dated:  September 6, 2007              SQUIRE, SANDERS & DEMPSEY L.L.P.

14

15                                          By:_____/s/_____
                                                         Michael R. Reed
16
                                            Attorneys for Plaintiff
17                                          THE O.N. EQUITY SALES COMPANY

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY                Case No. C07-2844 JSW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF THE CASE ................................................................................... 2

III. STATEMENT OF FACTS ......................................................................................... 2

    A.   Gary Lancaster And The Lancorp Financial Fund Business Trust ...................... 2

    B.   Defendant's Irrevocable Commitment To Purchase Lancorp Fund Investments ................................................................................................................ 3

    C.   What Defendant Asserted In His NASD Statement Of Claim ............................ 4

    D.   Defendant's Effort to Rewrite His Claims Makes Clear That Discovery is Appropriate .......................................................................................................... 5

IV.  LAW AND ARGUMENT ......................................................................................... 5

    A.   The Court Must Determine Whether An Agreement To Arbitrate Exists, And No Presumption Is Applicable To Its Analysis .......................................... 5

    B.   The Question Of Arbitrability Hinges On Whether The Events Giving Rise To Defendant's Claims Occurred When Lancaster Was An Associated Person Of ONESCO ............................................................................................ 6

        1.   The Existence Of An Agreement To Arbitrate Under NASD Rules Depends On The Timing Of Events Giving Rise To The Investor's Claims ........................................................................................................ 6

        2.   In A Securities Action Premised On Alleged Fraud And Misrepresentation, The Events Giving Rise To The Claims Are The Alleged Misrepresentations Or Omissions ...................................................... 6

        3.   Courts Properly Treat Multiple Claims Individually In Determining Whether They Are Subject To An Express Arbitration Agreement. ......... 8

    C.   The Issue Of Arbitrability In This Case Must Be Resolved Through Application Of Standard Procedures Applicable To Motions For Preliminary Injunction .......................................................................................... 8

        1.   A Party Is Irreparably Harmed In Being Forced To Arbitrate A Dispute It Never Agreed To Arbitrate, Therefore, A Civil Action For Injunctive Relief Is Proper .................................................................. 8

        2.   Courts Routinely Permit Discovery On The Issue Of Arbitrability ............. 9

        3.   Courts Routinely Consider Extrinsic Evidence And Hold Evidentiary Hearings On Parties' Motions For Preliminary Injunction To Enjoin Arbitration ............................................................... 10

V.   CONCLUSION ......................................................................................................... 12

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA  90017-5554

-i-

TABLE OF CONTENTS
Case No. C07-2844 JSW

1

## TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4

*AT&T Tech., Inc. v. Communications Workers of America,*
    475 U.S. 643 (1986) ................................................................... 5

5

*Antell v. Andersen LLP,*
    WL 245878 (N.D. Ill. May 4, 1998) ........................................ 7

6

*Asdar Group v. Pillsbury, Madison & Sutro,*
    99 F.3d 289 (9th Cir. 1996) ..................................................... 7

7

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,*
    WL 2265041 (S.D.N.Y. Aug. 8, 2006) ................................... 10

8

*Carson v. Giant Food, Inc.,*
    175 F.3d 325 (4th Cir. 1999)..................................................... 5

9

*Dean Witter Reynolds, Inc. v. Goyette,*
    25 F.Supp.2d 1344 (M.D. Fla. 1996) ..................................... 11

10

*Edward D. Jones & Co. v. Sorrells,*
    957 F.2d 509 (7th Cir. 1992)..................................................... 8

11

*Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.,*
    WL 1139907 (N.D. Ill. Aug. 10, 2000) .................................. 11

12

*H.L. Libby Corp. v. Skelly & Loy, Inc.,*
    910 F.Supp. 195 (M.D. Pa. 1995) ........................................... 10

13

*Hooters of America, Inc. v. Phillips,*
    39 F.Supp.2d 582 (D.S.C. 1998) ............................................ 10

14

*Hornor, Townsend & Kent, Inc.,*
    Case No. 1:01-CV-2979-JEC (N.D. Ga. Sept. 6, 2005)............. 8

15

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) ............................................................. 11, 12

16

*International Union of Electrical Radio & Machine Workers,*
    *AFL-CIO v. Westinghouse Electric Corp.,*
    48 F.R.D. 298 (S.D.N.Y. 1969) .............................................. 10

17

*Investor's Capital Corp. v. Brown,*
    129 F.Supp.2d 1340 (M.D. Fla. 2000) ................................... 10

18

*LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution,*
    *Teamsters Local 63,*
    849 F.2d 1236 (9th Cir. 1988)................................................... 9

19

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
    501 U.S. 350 (1991) ................................................................... 7

20

*Litton Fin. Printing Div. v. Nat'l Labor Relations Board,*
    501 U.S. 190 (1991) ................................................................... 5

21

*MONY Sec. Corp. v. Bornstein,*
    390 F.3d 1340 (11th Cir. 2004) ................................................ 6

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

TABLE OF AUTHORITIES

Case No. C07-2844 JSW

**TABLE OF CONTENTS**
**(continued)**

Page

*MONY Sec., Inc. v. Vasquez,*
  238 F.Supp.2d 1304 (M.D. Fla. 2002) ................................................ 9

*Malhotra v. Equitable Life Assurance Society of the United States, AXA,*
  364 F.Supp.2d 299 (E.D.N.Y. 2005) ................................................. 7

*McLaughlin Gormley King Co. v. Terminix International Co., L.P.,*
  105 F.2d 1192 (8th Cir. 1997) ...................................................... 10

*Merrill Lynch Investment Managers v. Optibase, Ltd.,*
  337 F.3d 125 (2d. Cir. 2003) ......................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,*
  62 F.3d 381 (11th Cir. 1995) ........................................................ 11

*Merrill Lynch, Pierce, Fenner & Smith v. Masland,*
  878 F.Supp. 710 (M.D. Pa. 1995) ................................................. 11

*Northwestern Human Services, Inc. v. Panaccio,*
  WL 2166293 (E.D. Pa. 2004) ......................................................... 7

*Overseas Oil Transport Corp. v. Phibro Energy, A.G.,*
  WL 77176 (S.D.N.Y. Feb. 1, 1989) .............................................. 10

*Paine Webber, Inc. v. Hofmann,*
  984 F.2d 1372 (3d Cir. 1993) .................................................... 8, 11

*Sands Bros. & Co., Ltd. v. Ettinger,*
  WL 541846 (2004) ......................................................................... 6

*Sanford v. Memberworks, Inc.,*
  483 F.3d 956 (9th Cir. 2007) ......................................................... 9

*The Shaw Group, Inc. v. Triplefine International Corp.,*
  WL 1246583 (S.D.N.Y. Oct. 18, 2001) ....................................... 10

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,*
  925 F.2d 1136 (9th Cir. 1991) ...................................................... 5

*Wafra Leasing Corp. v. Prime Capital Corp.,*
  192 F.Supp.2d 852 (N.D. Ill. 2002) .............................................. 7

*Wheat, First Sec., Inc. v. Green,*
  993 F.2d 814 (11th Cir. 1993) ............................................... 1, 3, 6

*World Group Sec. v. Ko,*
  WL 1811145 (N.D. Cal. Feb. 11, 2004) ....................................... 6

**FEDERAL STATUTES**

F.R.C.P. Rule 7 .................................................................................. 1
F.R.C.P. Rule 81(a) ............................................................... 9, 10, 19
F.R.C.P. 10b-5 ................................................................................... 7
F.R.C.P. Rule 26 ............................................................................... 1
F.R.C.P. Rule 65 ..................................................................... 8, 9, 11
NASD Rule 10301 ......................................................................... 1, 6

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

-iii-

TABLE OF AUTHORITIES

Case No. C07-2844 JSW

# MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

> *"[I]n a Title 9 action to compel arbitration, the discovery provisions of the Federal Rules are applicable. Rule 26 allows discovery only of matters relevant to the controversy, and in a Title 9 action, the issue of arbitrability is a relevant and proper matter for discovery."*

[Moore's Federal Practice (2d ed.) § 81.05[7] (emphasis added).[1]]

Such is the case here. At issue in this case is whether the claims asserted against Plaintiff O.N. Equity Sales Company ("ONESCO") by Defendant Daniel Maria Cui as part of NASD Case No. 07-00936 (the "NASD Action") are arbitrable. This is the only issue presented by ONESCO's Complaint and its Motion for Preliminary Injunction. [Docket No. 1, and filed concurrently.]

It is undisputed that no written arbitration agreement exists in this case. Thus, as set forth below and in our Motion for Preliminary Injunction, the issue of arbitrability under NASD Rule 10301, as explained in *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993), necessarily requires a factual inquiry into the timing of events giving rise to the fraud and misrepresentation claims asserted by Defendant in the NASD Action. As the Court will see, there is a fundamental factual dispute as to the *substance and timing* of events giving rise to Defendant's claims. Resolution of this dispute is essential to the Court's determination of the arbitrability of such claims—indeed it is the exclusive province of the Court to resolve this.

The instant motion is now filed to have the Court resolve what will undoubtedly be a contentious issue at the outset of this case: the availability of relevant discovery on the issue of arbitrability. In other federal actions involving the same defense counsel, the same underlying investment, and the same question of arbitrability, Defendant's counsel has taken the position that no discovery is appropriate under the circumstances. Undoubtedly, Defendant will take the same position here.

---

[1]   *See also* Moore's Federal Practice (3d ed.) § 81.08[1] ("The federal rules apply only to judicial proceedings under the FAA, such as actions brought in district court to compel arbitration.") (emphasis added).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-2844 JSW

1    Defendant is wrong.  It is hornbook law that in such a case, the issue of arbitrability is a

2    relevant and proper topic for discovery.  The case law clearly treats this as a factual issue, and one

3    to be decided only after discovery on and presentation of evidence relevant to the fundamental

4    issue of arbitrability—as in any other civil action governed by the Federal Rules of Civil

5    Procedure.  By addressing this issue at this early stage, the Court can timely resolve this

6    inevitable dispute, and order the parties to immediately begin participating in the discovery that

7    will prove essential to the Court's ultimate decision in this case and, specifically, the injunctive

8    relief sought.

9                    II.      STATEMENT OF THE CASE

10    This case asks whether the claims asserted by Defendant against ONESCO as part of the

11    NASD Action are arbitrable, pursuant to NASD rules, given the timing of events giving rise to

12    Defendant's claims and the fact that Defendant never had any type of customer or contractual

13    relationship with ONESCO.  In the NASD Action, Defendant seeks to hold ONESCO liable for

14    the alleged actions of an individual who was, at one time, associated with ONESCO, but whose

15    actions, which form the basis for Defendant's claims, had nothing to do with the business of

16    ONESCO and, in fact, occurred *prior to his association therewith*.

17    In light of the timing of and circumstances surrounding the events that provide the factual

18    predicate for Defendant's NASD claims, ONESCO initiated this action to have *the Court*

19    determine the arbitrability of such claims.  Specifically, ONESCO seeks a declaration that such

20    claims are not arbitrable pursuant to NASD rules and injunctive relief enjoining Defendant from

21    proceeding with the NASD Action.  [*See* Complaint, Docket No. 1.]

22                    III.      STATEMENT OF FACTS

23    A.      Gary Lancaster And The Lancorp Financial Fund Business Trust.

24    As more fully outlined in our Complaint, the genesis of this dispute are Defendant's

25    investments in a *private placement* offered by the Lancorp Financial Fund Business Trust (the

26    "Lancorp Fund"), a Nevada Business Trust unaffiliated with ONESCO.  Non-party Gary

27    Lancaster ("Lancaster") served as Trustee of the Lancorp Fund.  Lancaster was a registered

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-2-
PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY            Case No. C07-2844 JSW

1  representative with ONESCO (a broker-dealer registered with the NASD), on an independent

2  contractor basis, from March 23, 2004 to January 3, 2005.  [*See* Exh. A, Form U-5 for Gary

3  Lancaster; Affidavit of Jeffrey Bley, Exh. B ("Bley Aff'd").]  *As the NASD expressly recognized*

4  *in its August 10, 2006 Letter of Acceptance, Waiver and Consent Agreement with Lancaster,*

5  *Lancaster never disclosed his involvement with the Lancorp Fund to ONESCO.*  [*See* Letter of

6  Acceptance, No. 20050034080-01, Exh. C.]

7         As part of this private placement offering, the Lancorp Fund prepared a detailed Private

8  Placement Memorandum, a copy of which is attached to the Complaint as Exhibit A.  Prior to

9  investing in Lancorp, all potential investors, *including Defendant*, were required to review this

10 Memorandum and execute a Subscription Agreement.

11        **B.    Defendant's Irrevocable Commitment To Purchase Lancorp Fund**
              **Investments.**

12

13        Defendant never established any form of contractual or customer relationship with

14 ONESCO.  Rather, all of his dealings were solely with Lancorp Fund.  More importantly,  the

15 information recovered to date by ONESCO reveals that Defendant's irrevocable commitment to

16 purchase Lancorp Fund investments occurred before Lancaster's association with ONESCO, and

17 that such commitment was induced by alleged misrepresentations or omissions that occurred prior

18 thereto.

19        For instance, we know that beginning in March 2003, Lancaster and the Lancorp Fund

20 began circulating the Private Placement Memorandum that forms the basis for many, if not all, of

21 Defendant's misrepresentation and omission claims.  We know that Lancaster was affiliated with

22 ONESCO, as a registered representative, *only* from March 23, 2004 to January 3, 2005.  We also

23 know that Defendant executed a subscription agreement with the Lancorp Fund on July 30,

24 2003—nearly eight months before Lancaster became an "associated person" of ONESCO [Cui

25 Subscription Agreement, Exh. D.]

26        In executing the subscription agreement, Defendant memorialized his *irrevocable*

27 *commitment* to purchase investments from the Lancorp Fund.  [*See id.*]  As a matter of law and

28 common sense, any misrepresentations or omissions that induced such a commitment (*i.e.*,

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-3-

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-2844 JSW

1   Defendant's investment decision) must have occurred at or before the time of Defendant's

2   execution of the agreement.

3           **C.      What Defendant Asserted In His NASD Statement Of Claim.**

4           Despite these facts, Defendant will contend that that there is no dispute as to the

5   occurrence and timing of events giving rise to Defendant's claims asserted in the NASD Action,

6   and that such events clearly occurred during Lancaster's tenure with ONESCO.  Thus, according

7   to Defendant, discovery is inappropriate.  Such a contention is belied by Defendant's own

8   allegations in his NASD statement of claim.

9           Defendant's claims are based on alleged material misrepresentations and omissions that

10  induced his *original decision* to invest in the Lancorp Fund.  This is made clear in the allegations

11  contained on pages 16 through 20 of Defendant's first amended statement of claim.

12          For instance, in paragraph 39 of his first amended statement of claim, Defendant alleges

13  that "Respondent ONESCO, acting through Lancaster, *recommended* that Claimants invest in …

14  [an] unregistered, fraudulent investment …" [*See* First Amended Statement of Claim, at 16

15  (emphasis added) (Compl. Exh.C).]  At paragraph 40, Defendant alleges that "Respondent

16  ONESCO, acting through Lancaster, made numerous false representations to Claimants

17  concerning this Lancorp Financial Fund Business Trust … and Megafund Corporation …

18  investment." [*Id.* at 17]  And in paragraphs 41 to 45, Defendant accuses ONESCO, acting

19  through Lancaster, of making numerous other misrepresentations or omissions with respect to the

20  risks associated with and operations of the Lancorp Fund.  [*Id.* at 18-20.]

21          These allegations are premised upon statements contained in (and/or alleged omissions

22  from) the private placement memorandum, which was unquestionably provided to Defendant

23  *before he* executed his irrevocable commitment to purchase Lancorp Fund investments, and

24  before Lancaster became affiliated with ONESCO.  In short, although Defendant asserts a number

25  of federal and state law causes of action in his NASD statement of claim, *all* are fundamentally

26  premised on the same events or occurrences (i.e., the same factual predicate): *Lancaster's*

27  *alleged misrepresentations and/or omissions that induced his original decision to invest in the*

28  *Lancorp Fund.*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-4-

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-2844 JSW

**D.    Defendant's Effort to Rewrite His Claims Makes Clear That Discovery is Appropriate.**

While we believe this simple analysis compels the issuance of injunctive relief, Defendant contends otherwise and will attempt to interject "new facts." By doing so, Defendant will attempt to create factual disputes as to the occurrence and timing of events giving rise to the Defendant's NASD claims; while at the same time inexplicably arguing that no actual dispute exists. In any event, discovery as to the actual timing and occurrence of the events giving rise to Defendant's claims is clearly appropriate.

## IV.    LAW AND ARGUMENT

**A.    The Court Must Determine Whether An Agreement To Arbitrate Exists, And No Presumption Is Applicable To Its Analysis.**

The law is clear that the question of whether a given dispute is arbitrable is for the Court and not an arbitration panel to decide. Indeed, U.S. Supreme Court authority holds that questions of arbitrability must be resolved by the courts. *See Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 208 (1991) ("whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court"); *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) (determining whether a contract creates a duty to arbitrate a particular matter is an issue for the courts to decide). The Ninth Circuit, obviously, adheres to the same rule. *See Three Valleys Mun. Water Dist. y. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("The court must determine whether a contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting a question to an arbitrator.").

In resolving this issue, there is no presumption of arbitrability. The general presumption in favor of arbitrability is limited to disputes where the existence of an express arbitration agreement is not in question. The presumption has no application where, as here, the existence of an agreement covering the claims at issue is the very question to be decided by the Court. *See, e.g., Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999).

-5-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION

Case No. C07-2844 JSW

**B.   The Question Of Arbitrability Hinges On Whether The Events Giving Rise To Defendant's Claims Occurred When Lancaster Was An Associated Person Of ONESCO.**

**1.   The Existence Of An Agreement To Arbitrate Under NASD Rules Depends On The Timing Of Events Giving Rise To The Investor's Claims.**

To compel a broker-dealer to arbitrate under NASD Rules, and specifically Rule 10301(a) of the NASD arbitration code, a claimant must qualify as a "customer" of either the broker-dealer or of a person associated with the broker-dealer *at the time of the occurrence of events giving rise to his or her claims*. *See, e.g.*, *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993). In other words, "customer" status, for purposes of arbitrability under the NASD Rules "must be determined as of the time of the events providing the basis for the allegations of fraud." *Id.* ("customer" status for purposes of arbitrability "should be determined as of the time of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint").[2]

Thus, critical to this Court's decision on the issue of arbitrability is a determination both of the events giving rise to Defendant's claims and the timing thereof.

**2.   In A Securities Action Premised On Alleged Fraud And Misrepresentation, The Events Giving Rise To The Claims Are The Alleged Misrepresentations Or Omissions.**

It is well settled that in an action premised on allegations of securities fraud, the events giving rise to an investor's claims are the *misrepresentations* that induce the investments in question—not the date of sale, or of payment with respect to the investments in question. *See, e.g.*, *Hornor, Townsend*, Case No. 1:01-CV-2979-JEC, *9 (N.D. Ga. Sept. 6, 2005) ("The events that constitute the factual predicate for defendants' claim that Tommy Fountain made fraudulent representations are the sales pitches that Fountain made up to the date that the sale was made.") (Exh. E).

---

[2]   *Accord: MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004) (reaffirming that "customer status for purpose of the NASD is 'determined as of the time of the events providing the allegations.'"); *World Group Sec. v. Ko*, 2004 WL 1811145, at *6 (N.D. Cal., Feb. 11, 2004) (holding under similar NASD Rule 10201 that an associated person had no claim against member firm based on contractual relationship and events occurring before the person was associated with the member) (Exh. F); *Sands Bros. & Co., Ltd. v. Ettinger*, 2004 WL 541846 (S.D.N.Y., Mar. 19, 2004) (Exh.G).

SQUIRE, SANDERS & DEMPSEY L.L.P. One Maritime Plaza, Suite 300 San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION          Case No. C07-2844 JSW

1    In an analogous context, courts consistently identify alleged pre-sale misrepresentations

2    and omissions as the events giving rise to claims under Federal Rule 10b-5, for purposes of the

3    statutes of repose applicable thereto. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v.*

4    *Gilbertson*, 501 U.S. 350, 364 (1991) (holding that the statute of repose for a Rule 10b-5 claim

5    starts from the date of the alleged misrepresentation inducing a sale, not from the date of sale

6    itself); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 294-95 (9th Cir. 1996). This

7    rule recognizes the basic proposition that a cause of action premised on fraud arises at the time of

8    "the alleged fraudulent conduct"—i.e., a defendant's "affirmative misrepresentation" or

9    omission. *See Antell v. Andersen LLP*, 1998 WL 245878, *5-6 (N.D. Ill. May 4, 1998)

10    ("violation" of Rule 10b-5 occurs when "a defendant makes an affirmative misrepresentation")

11    (Exh. H).[3]

12    In applying this rule, courts presume "[a]s a matter of simple logic, [that] any

13    misrepresentation or omission must have occurred *on or before the date of sale*." *Northwestern*

14    *Human Services, Inc. v. Panaccio*, 2004 WL 2166293, at *18 (E.D. Pa., Sept. 24, 2004) (holding

15    that a "violation" of Section 10(b) occurs when the fraudulent misrepresentation is made, not at

16    the time of purchase) (emphasis added) (Exh. I). In other words, common sense dictates that a

17    misrepresentation or omission cannot induce an investment decision *after that decision has*

18    *already been made*.

19    The same rule applies here. Because Defendant's claims are premised on fraud and

20    misrepresentation/omission, the events giving rise to his claims are the alleged misrepresentations

21    or omissions that induced his decision to invest in Lancorp Fund. The question of whether such

22    misrepresentations or omissions occurred before Lancaster became affiliated with ONESCO, if

23    not already resolved by the date Defendant executed the Subscription Agreement, cannot be fully

24    answered without discovery on the issue of arbitrability.

25

26    [3]    *See also Malhotra v. Equitable Life Assurance Society of the United States, AXA*, 364 F. Supp.2d 299, 305
(E.D.N.Y. 2005) (subsequent purchases are time-barred unless "triggered by a new and materially different

27    omission") (emphasis added); *Wafra Leasing Corp. v. Prime Capital Corp.*, 192 F. Supp. 2d 852, 863-64 (N.D. Ill.
2002) (holding that the violation "occurs when the defendant makes a misrepresentation in connection with the sale

28    or purchase of securities").

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-7-

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN    Case No. C07-2844 JSW
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

### 3.    Courts Properly Treat Multiple Claims Individually In Determining Whether They Are Subject To An Express Arbitration Agreement.

Even assuming for the sake of argument that one or more of Defendant's claims is arbitrable, the arbitrability of one claim does not automatically mean that other, non-arbitrable claims should be ordered to arbitration.  In fact, courts properly treat different claims individually in determining arbitrability based on the timing of events and occurrences giving rise to them. *See*, *e.g.*, *Paine Webber, Inc. v. Hofmann*, 984 F.2d 1372, 1377 (3d Cir. 1993).

If the timing of events giving rise to certain claims falls outside of the alleged arbitration agreement, then such claims *should not be arbitrated*—even if others are subject to arbitration. *Id.  See also Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir. 1992) (vacating NASD arbitration award as to certain claims based on determination that such claims were not arbitrable due to timing of events giving rise to them); *Hornor, Townsend & Kent, Inc.*, *supra*, at *11 (one of multiple claims subject to arbitration because "representations inducing" investment occurred when representative was associated with broker-dealer).

Thus, in this case, even if the Court determines that one or more of Defendant's claims are arbitrable, it should not simply order all remaining claims to arbitration.  Rather, the Court must examine each claim and determine the timing of the events or occurrences giving rise thereto—*an inherently factual issue*.  If any of Defendant's claims fall outside of the applicable NASD rules (i.e., the agreement), they cannot be arbitrated.

### C.    The Issue Of Arbitrability In This Case Must Be Resolved Through Application Of Standard Procedures Applicable To Motions For Preliminary Injunction.

### 1.    A Party Is Irreparably Harmed In Being Forced To Arbitrate A Dispute It Never Agreed To Arbitrate, Therefore, A Civil Action For Injunctive Relief Is Proper.

Courts hold that an action for declaratory and injunctive relief, pursuant to Federal Rule 65, is the appropriate method for a party to protect itself from being compelled to arbitrate claims for which it has no obligation to do so.  *See also Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2nd Cir. 2003) (unless arbitration is enjoined, movant would suffer irreparable harm by being forced to expend time and resources arbitrating an issue that is not

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION                    Case No. C07-2844 JSW

arbitrable and as to which any award would not be enforceable); *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("It is axiomatic that … a party cannot be required to submit any dispute which he has not agreed so to submit."). In light of this settled precedent, ONESCO filed the instant action in an effort to *fully and finally* adjudicate the parties' rights with respect to the alleged arbitration agreements (i.e., NASD Rules) at issue, and in order to prevent the irreparable harm that would inevitably result if ONESCO is forced to arbitrate claims that it never agreed to arbitrate.[4] In short, this is a quintessential civil action.

### 2.    Courts Routinely Permit Discovery On The Issue Of Arbitrability.

> "[I]n a Title 9 action to compel arbitration, the discovery provisions of the Federal Rules are applicable. Rule 26 allows discovery only of matters relevant to the controversy, *and in a Title 9 action, the issue of arbitrability is a relevant and proper matter for discovery.*"

[Moore's Federal Practice (2d ed.) § 81.05[7] (emphasis added).]

It is hornbook law that discovery on the issue of arbitrability is proper with respect to a party's motion to compel arbitration—*an action expressly governed by the Federal Arbitration Act.* It follows that discovery on the issue of arbitrability is equally, if not more, appropriate in a preliminary injunction action, which is governed by Rule 65 of the Federal Rules of Civil Procedure. Indeed, Federal Rule 81(a)(3) contemplates discovery on the issue of arbitrability even in actions brought solely pursuant to the Federal Arbitration Act:

> "[T]he petitioner argues that the Federal Arbitration Act contemplates a speedy and inexpensive determination of the question of arbitrability. In light of this, the petitioner contends that the application of the normal discovery rules of the Federal Rules of Civil Procedure would be inimical to this statutory scheme. …
>
> This argument, though, as even the petitioner recognizes, flies in the face of the clear language of Rule 81(a)(3), F.R. Civ.P., which provides that the Federal Rules of Civil Procedure apply to proceedings under Title 9, U.S.C., to the extent that matters of procedure are not provided for in those statutes. Title 9 is silent on the question of the availability of discovery devices in proceedings brought pursuant to its provisions. If it had been deemed necessary

---

[4]    *See LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) (holding that party was entitled to injunctive relief once it established that it was not under a contractual duty to arbitrate); *MONY Sec., Inc. v. Vasquez*, 238 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002) ("This Court has continuously held that irreparable harm is present if a party is compelled to arbitrate a claim absent an agreement between the parties to arbitrate.).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-9-

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN    Case No. C07-2844 JSW
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

1   as a matter of policy to exempt Title 9 proceedings from the usual
    discovery procedures it would have been a simple matter for the
2   draftsmen of Rule 81(a)(3) to have done so."

3   [*International Union of Electrical Radio & Machine Workers, AFL-CIO v. Westinghouse Electric*

4   *Corp.*, 48 F.R.D. 298, 300 (S.D.N.Y. 1969).]

5          Recognizing that, as here, the question of arbitrability often hinges on the resolution of

6   factual disputes, courts routinely permit the parties to conduct discovery—*including*

7   *depositions*—on that issue, whether the action is brought pursuant to the Arbitration Act or the

8   federal rules. *See Investor's Capital Corp. v. Brown*, 129 F. Supp. 2d 1340, 1341 (M.D. Fla.

9   2000) ("this Court … concludes that the Plaintiff is entitled to limited discovery *on the 'customer'*

10  *issue*" for purposes of determining arbitrability under NASD rules) (emphasis added);

11  *International Union of Electrical Radio & Machine Workers, AFL-CIO v. Westinghouse Electric*

12  *Corp.*, 48 F.R.D. 298, 300-01 (S.D.N.Y. 1969) (noticed depositions relating to issue of

13  arbitrability must proceed).[5]

14         As these authorities make clear, discovery in this case is both necessary and proper with

15  respect to the question of arbitrability.

16         **3.      Courts Routinely Consider Extrinsic Evidence And Hold Evidentiary
               Hearings On Parties' Motions For Preliminary Injunction To Enjoin**
17             **Arbitration**

18         Consistent with the decisions permitting discovery on the issue of arbitrability, courts

19  routinely consider extrinsic evidence and conduct evidentiary hearings in cases where a broker-

20

21  _____

22  [5]   *See also Overseas Oil Transport Corp. v. Phibro Energy, A.G.*, 1989 WL 77176, *3 (S.D.N.Y. Feb. 1, 1989) (with
    respect to party's motion to compel arbitration, "discovery is allowed into the issue of whether an arbitrable contract
    exists.") (Exh. J); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 2006 WL 2265041, *4 (S.D.N.Y. Aug. 8,
23  2006) (discovery was "necessary" on issue of contract negotiation and formation before court could decide issue of
    arbitrability, in action where plaintiff sought declaration that Defendant's claims were not arbitrable) (Exh. K); *H.L.
24  Libby Corp. v. Skelly & Loy, Inc.*, 910 F. Supp. 195, 200 (M.D. Pa. 1995) (on party's motion to compel arbitration,
    and with respect to issue of "whether their contract included the agreement to arbitrate," court "permit[ted] a limited
25  period for discovery"); *McLaughlin Gormley King Co. v. Terminix International Co., L.P.*, 105 F.2d 1192, 1193 (8th
    Cir. 1997) (affirming trial court order "freezing resolution of the parties' dispute pending discovery pertinent to the
26  issue of arbitrability"); *The Shaw Group, Inc. v. Triplefine International Corp.*, 2001 WL 1246583, *1 (S.D.N.Y.
    Oct. 18, 2001) (recognizing that parties may conduct discovery "as to the arbitrability of … claims") (Exh. L);
27  *Hooters of America, Inc. v. Phillips*, 39 F. Supp.2d 582, 591 (D.S.C. 1998) (party "entitled to limited discovery
    relative to the circumstances surrounding the making of the alleged arbitration agreement" including "interrogatories,
28  requests to produce and five depositions").

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY          Case No. C07-2844 JSW

1   dealer seeks injunctive relief to enjoin arbitration.[6]  The mere fact that arbitrability is in issue does

2   not change the process due the parties under Rule 65 of the Federal Rules of Civil Procedure.

3          *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 386 (11th Cir. 1995),

4   is directly on point.  In that case, the plaintiff broker-dealer sought injunctive relief to enjoin the

5   arbitration of the defendant investors' misrepresentation and omission claims because such claims

6   were premised on events and occurrences outside of the timeframe contemplated under NASD

7   rules.  *Id*.  The defendants argued that the events and occurrences happened at a later date, and

8   thus, their claims based on those occurrences were arbitrable under NASD rules.  *Id*.  After the

9   district court summarily dismissed the plaintiff's action, the Eleventh Circuit reversed and

10  ordered the district court to fully "examine each of the [NASD claimants'] claims in order to

11  determine what is the 'occurrence or event' giving rise to that claim." *Id*. at 385.[7]

12         The appeals court held that, in order to decide the issue of arbitrability under NASD rules,

13  the district court was required to "look to the parties' agreement and attempt to determine their

14  intentions."  *Id*.  Given the nature of the defendants' claims, it was "not a foregone conclusion …

15  that the purchase date is the relevant occurrence or event giving rise" their claims.  *Id*.  In

16  ordering a full examination of the defendant's claims for purposes of arbitrability, the court

17

18  _____

19  [6]    *See Merrill Lynch, Pierce, Fenner & Smith v. Masland*, 878 F. Supp. 710, 714-15 (M.D. Pa. 1995) ("[T]he first
    step will be to determine whether parties intended to submit disputes over the operative occurrence or event, and/or

20  when it occurred to arbitration.  *In resolving this question, the court should look to the language of the contract and
    all relevant extrinsic evidence. ... An evidentiary hearing is necessary for this determination.*") (emphasis added);

21  *Dean Witter Reynolds, Inc. v. Goyette*, 25 F. Supp. 2d 1344, 1344-46 (M.D. Fla. 1996) (granting preliminary
    injunction enjoining arbitration based on timing of events giving rise to investors' claims after "consideration of the
    parties' pleadings, *the evidence filed herein*, and the arguments of counsel") (emphasis added); *Paine Webber, Inc. v.*

22  *Hofmann*, 984 F.2d 1372, 1382 (3d Cir. 1993) (in resolving dispute as to arbitrability based on timing of "operative
    occurrence or event, … the court should look to the language of the contract and *all relevant extrinsic evidence*")

23  (also recognizing that question of "operative occurrence or event" includes "many factual disputes to be resolved")
    (emphasis added); *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 2000 WL 1139907 (N.D. Ill. Aug. 10, 2000)

24  (court held "evidentiary hearing to assist in determining whether the dispute that gave rise to this action is subject to
    mandatory arbitration provisions") (Exh. M).

25  [7]    Subsequent to *Merrill Lynch*, the U.S. Supreme Court, in a limited holding, determined that the NASD's express

26  six-year arbitration limitation rule, at issue in *Merrill Lynch*, generally does not present a question of arbitrability for
    the court.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).  This subsequent holding (which

27  addressed an NASD rule not at issue here), in no way impacts the required arbitrability analysis employed by the
    *Merrill Lynch* court, and specifically the court's recognition that the question of timing for purposes of arbitrability

28  requires *a detailed inquiry* into the occurrence and timing of events giving rise to an investor's claims.

-11-

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN          Case No. C07-2844 JSW
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION

1   rejected the defendants' argument that the burdens imposed on the parties justified less than full

2   process with respect to the Plaintiff's motion:

3           On remand, the district court should examine each of the Cohens'
            claims in order to determine what is the "occurrence or event"
4           giving rise to that claim. … *Although our holding may compel
            federal courts to hold mini-trials on timeliness, which may be
5           followed by full arbitration if the claims are not deemed time-
            barred, concerns for judicial economy alone are not sufficient to
6           justify interference with the binding agreement of the parties*.

7   [*Id.* at 385 (emphasis added).]

8           The same is true here.  Any burden imposed on the parties by discovery on the issue of

9   arbitrability is outweighed by the parties' respective rights to have their purported arbitration

10  agreement applied consistent with its express terms.

11                          **V.    CONCLUSION**

12          For all of the reasons set forth herein, discovery on the issue of arbitrability is both

13  relevant and essential in this case.   As a result, such discovery must commence without delay.

14

15                                          Respectfully submitted,

16  Dated: September 6, 2007               SQUIRE, SANDERS & DEMPSEY L.L.P.

17

18                                          By:_____/s/_____
                                                          Michael R. Reed
19
                                            Attorneys for Plaintiff
20                                          THE O.N. EQUITY SALES COMPANY

21

22

23

24  SANFRANCISCO/230684.1

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN      Case No. C07-2844 JSW
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY