Westlaw.

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

C
World Group Securities v. Ko
N.D.Cal.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
WORLD GROUP SECURITIES, Plaintiff,
v.
Eugene KO, Defendant.
No. C035055 MJJ(EDL).

Feb. 11, 2004.

Julie A. Arbuckle, U.S. Department of Justice, United States Attorney's Office, Brian T. Ashe, Christian J. Rowley, Seyfarth Shaw LLP, San Francisco, CA, for Plaintiff.
Steve A. Buchwalter, Law Offices of Steve A Buchwalter, P.C., Encino, CA, Timothy A. Canning, Law Offices of Timothy A. Canning, Eureka, CA, for Defendant.

REPORT AND RECOMMENDATION RE:
PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION AND STAY OF ARBITRATION;
AND DEFENDANT'S MOTION TO COMPEL
ARBITRATION
LAPORTE, Magistrate J.

I. INTRODUCTION

*1 On November 14, 2003, Plaintiff World Group Securities initiated this action for declaratory and injunctive relief against Defendant Eugene Ko. The case was assigned to Judge Martin Jenkins, who referred Plaintiff's Motion for a Preliminary Injunction and Stay of Arbitration and Defendant's Motion to Compel Arbitration to this Court pursuant to Civil Local Rule 72-1. See Jan. 8, 2004 Order of Reference. In its Motion for Preliminary Injunction, Plaintiff seeks a judicial declaration that it is not subject to the jurisdiction of the National Association of Securities Dealers ("NASD") as to certain claims in an arbitration asserted against Plaintiff and various other parties by Defendant in his capacity as representative of his brother's estate as well as in his personal capacity. Plaintiff is not contesting NASD's jurisdiction to adjudicate Defendant's personal claims. Plaintiff also seeks an injunction precluding Defendant from prosecuting the deceased brother's claims against it in the NASD arbitration. Defendant's motion seeks to compel Plaintiff to arbitrate his brother's claims or in the alternative, to stay this action pending arbitration.

Upon consideration of the parties' submissions and their arguments at the hearing on February 3, 2004, and for the reasons set forth below, the Court enters the following Report and Recommendation.

II. BACKGROUND

Defendant's deceased brother, Cole Ko, began his association with World Marketing Alliance, Inc. ("WMA") and World Marketing Alliance Securities ("WMAS") in 1993. See Declaration of Julie Arbuckle ("Arbuckle Decl.") Ex. A (Eugene Ko's Statement of Claims filed with NASD Dispute Resolution Inc., 4/14/03) ¶ 8. While WMA provided insurance products and WMAS provided securities products, both were under common ownership and shared many of the same administrative functions and personnel. Id. ¶¶ 2, 8.

Plaintiff and Plaintiff's affiliated company, World Financial Group ("WFG"), are subsidiaries of AEGON Asset Management Services (AAMSI). Declaration of Charles Vahl at ¶ 3. On May 6, 2001, AAMSI and WFG executed an Asset Purchase Agreement with WMAS and its affiliated company, WMA.[FN1] Id. ¶ 5. WMA and WMAS are not, and have never been, affiliated with AAMSI, WFG or Plaintiff. Id. ¶ 6. Under the Asset Purchase Agreement, Plaintiff purchased certain specific assets of WMAS. Id. ¶ 7. The asset

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H-1

EXHIBIT
F

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

purchase closed on April 12, 2002 and Plaintiff began operations on that date. *Id.* ¶¶ 7, 18.

> FN1. Defendant moves to strike the Asset Management Agreement and any statements in briefs or in declarations referring to the Agreement because he claims that he has not seen a copy of the Agreement. However, Defendant's counsel received a redacted copy that he filed as an exhibit in this matter. *See* Second Supplemental Declaration of Steve Buchwalter at ¶¶ 2, 3; Ex. A. Dollar amounts were redacted from the Agreement and Plaintiff has apparently not provided an unredacted copy. However, all statements relied upon by the Court are not redacted.

According to Defendant, Cole Ko signed associate contracts with WMA/WMAS during his affiliation with the companies stipulating that if he died, his ongoing commissions generated through his efforts as well as the efforts of his recruits and of their recruits' recruits, would be paid out to his estate. *See* Arbuckle Decl. Ex. A, ¶ 11. However, after Cole Ko's death in May 2000, Defendant contends that WMA refused to forward the ongoing commissions to the estate. *Id.* ¶¶ 12, 13. After allegedly being told that with the proper credentials he could take over his brother's business, Defendant obtained the proper licenses and became a WMA agent. *Id.* ¶¶ 14, 15. Defendant contends that he has not received his brother's business or any ongoing commissions to which he claims his brother's estate is entitled. *Id.* ¶ 15.

*2 Thereafter, on April 14, 2003, Defendant commenced arbitration against several parties including Plaintiff, WFG, WMA and WMAS, asserting several claims on behalf of his deceased brother. Compl. ¶¶ 1, 14. In a letter from Plaintiff to the NASD dated July 9, 2003, Plaintiff asserted that the NASD had no jurisdiction to arbitrate the claims brought on behalf of Cole Ko because he died nearly two years before Plaintiff became a broker-dealer. *See* Arbuckle Decl. Ex. C. In that letter, Plaintiff requested dismissal and advised that it would seek an injunction if necessary to stay the arbitration. *Id.* Defendant subsequently amended his Statement of Claims in arbitration to add several personal claims against Plaintiff and others. *See* Arbuckle Decl., Exhibits B, L. NASD has not dismissed Plaintiff from the arbitration as to the Cole Ko claims even though Plaintiff has expressed its objections to NASD's jurisdiction over those claims at every opportunity. An NASD arbitrator has not yet been assigned to the case.

III. DISCUSSION

A. Proper Forum for Decision on Arbitrability

Defendant disputes this Court's jurisdiction to decide arbitrability, arguing that the arbitrator should make that determination. Numerous courts have noted a distinction between questions of procedure and questions of substantive " arbitrability." *See, e.g., Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791, AFL-CIO,* 321 F.3d 251, 254 (1st Cir.2003). Arbitrators generally decide questions of procedure such as waiver, notice, and other conditions precedent to an obligation to arbitrate. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (referring to Revised Uniform Arbitration Act of 2000 (RUAA), § 6, comment 2, 7 U.L.A., at 13). In contrast, courts generally decide substantive arbitrability questions, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a particular dispute. *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that a court decides whether an arbitration agreement survives a corporate merger). Only where parties "clearly and unmistakably" provide otherwise are courts divested of their authority allowing the arbitrator to decide whether the dispute is arbitrable. *AT & T Techs. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *United Brotherhood of Carpenters and*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H-2

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

*Joiners of America, Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir.1996).

The primary issue in this case is whether Plaintiff is bound to an arbitration agreement through successor liability. This is a classic example of an arbitrability question reserved to the courts. *See Prudential Securities Inc. v. Bellomo*, 1997 U.S. Dist. LEXIS 8775, *7 (N.D.Cal.1997) (concluding that courts decide arbitrability question of whether successor liability rules bind party to arbitration agreement). Therefore, unless the parties have " clearly and unmistakably" provided otherwise, the issue is one for the Court.

*3 Parties "clearly and unmistakably" divest a court of authority to decide the arbitrability question when they agree to submit the question to the arbitrator. *First Options v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("a court must defer to an arbitrator's arbitrability decision when parties submitted that matter to arbitration"); *Orion Pictures Corp. v. Writers Guild of America*, 946 F.2d 722, 725 (9th Cir.1991) (holding that a district court may not resolve questions about the jurisdiction of an arbitrator "at the behest of a party which has submitted the question of arbitrability to the arbitrator for decision "). Defendant relies on *Orion Pictures*. There, Orion submitted the arbitrability question to the arbitrator by filing a formal motion for dismissal on the ground that it was not a party to the arbitration agreement. *Id.* at 723-724. Following a hearing on the matter at which Orion appeared, the arbitrator determined that he had the authority to decide whether Orion was bound to arbitrate the matter before him. *Id.* at 724. Unsatisfied with that result, Orion filed an action for declaratory relief with the district court. *Id.* The Ninth Circuit stated that " [o]nce the arbitrator has asserted jurisdiction over a dispute-even limited to ruling that he has jurisdiction to determine his own jurisdiction-a district court generally may not review the arbitrator's rulings ... until the arbitrator relinquishes jurisdiction by issuing a final award." *Id.* at 725. By filing a motion for dismissal with the arbitrator, attending the hearing on the issue, and obtaining the result prior to seeking judicial relief, Orion "clearly and unmistakably" submitted the question of arbitrability to the arbitrator, divesting the court of its authority. *See Id.*

Here, by contrast, the NASD has not yet appointed an arbitrator, much less has Plaintiff formally submitted this question to the arbitrator or filed a motion to dismiss. Nor, plainly, has plaintiff waited for an unfavorable decision from the arbitrator before pursuing a judicial determination. *Cf. Ficek v. Southern Pacific Co.*, 338 F.2d 655, 656-7 (9th Cir.1964) ("[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act."). While Plaintiff has submitted a letter to NASD on the arbitrability issue, disputing its jurisdiction to hear the claims brought against it on behalf of Cole Ko, such conduct does not indicate a clear and unmistakable intent to submit the question of arbitrability to the arbitrator. *See First Options*, 514 U.S. at 946 (" [m]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by an arbitrator's decision on that point"); *see also Brookstreet Secs. Corp. v. Bristol Air, Inc*, 2002 U.S. Dist. LEXIS 16784, *12 (N.D.Cal.1997) (concluding, without discussion of *Orion*, that in a case where both parties had already submitted letters to NASD setting forth their respective positions regarding jurisdiction, the arbitrability question was for the court). Moreover, while it has submitted papers to the NASD on the merits of the Cole Ko claims, Plaintiff has reiterated its jurisdictional objections on each filing. *See George Day Const. Co. v. United Brotherhood of Carpenters and Joiners*, 722 F.2d 1471, 1475 (9th Cir.1984) (identifying two ways a party submitting to arbitration may preserve arbitrability issues for judicial determination: (1) "object[ ] to the arbitrator's authority, refuse[ ] to argue the arbitrability issue before him, and proceed [ ] to the merits of the grievance"; or (2) "make[ ] an objection as to jurisdiction and an express reservation of the question on the record"). Since Plaintiff has not "clearly and unmistakably" submitted the question of arbitrability to the NASD arbitrator, the Court recommends that the district court find that it has jurisdiction to decide the question of arbitrability.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H-3

### B. Motion to Compel Arbitration

#### 1. FAA

*4 Under the Federal Arbitration Act ("FAA"), a court is charged with enforcing arbitration agreements or staying litigation that contravenes those agreements. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). The FAA does not require parties to arbitrate when they have not agreed to do so. *See Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000). Even if parties do not have an arbitration agreement, they can be compelled to arbitrate under certain circumstances if one party is a member of the National Association of Securities Dealers ("NASD"). *See* NASD Rules 10101, 10201.

"Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Defendant's petition for arbitration contains claims brought by Defendant in his capacity as representative of Cole Ko's estate as well as in his personal capacity.[FN2] In this motion, however, Defendant improperly focuses on his own claims against Plaintiff and attempts to piggyback his brother's personal claims onto the arbitration agreement that Defendant has with Plaintiff.

> FN2. Defendant's authority to bring this action on behalf of his deceased brother appears to rest on California Civil Procedure Code § 377.30, which states that: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Under that section, then, Eugene Ko would only be able to bring this action on Cole Ko's behalf if Cole Ko could have brought this action himself, which he could not, as explained in this Report and Recommendation.

Here, there is no arbitration agreement between Cole Ko and Plaintiff. Cole Ko died in May 2000. Plaintiff did not commence business until April 2002. There is no evidence that Plaintiff has otherwise expressly agreed to arbitrate Cole Ko's claims. Eugene Ko apparently entered into a contract with Plaintiff in or about April 2002 that provides for arbitration of disputes that "may arise in the future between him" and Plaintiff. *See* Def.'s Mot. to Compel Ex. B. The contract is between Eugene Ko and Plaintiff, not Cole Ko and Plaintiff, and in any case does not apply to claims that arose in the past, as Cole Ko's did.

Further, Plaintiff is not required to arbitrate the Cole Ko claims under a theory of successor liability. Under Florida law, which the Asset Purchase Agreement incorporates as the controlling law (*see* Asset Purchase Agreement ¶ 14(i)), the liabilities of a selling company cannot be imposed upon the buying company unless: (1) the buying company expressly or implicitly assumes the obligations of the seller; (2) the transaction is a de facto merger; (3) the buying company is a mere continuation of the seller; or (4) the transaction is a fraudulent effort to avoid liabilities of the seller. *Bernard v. Kee Manufacturing Co., Inc.*, 409 So.2d 1047, 1049 (Fla.1982).

First, Plaintiff did not expressly or impliedly assume the contract between Cole Ko and WMAS. The Asset Purchase Agreement makes clear that Plaintiff assumed only certain obligations of WMAS arising before the Agreement's April 12, 2002 Closing Date, which did not include Cole Ko's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW    Document 32-7    Filed 09/06/2007    Page 5 of 8

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

claims. Specifically, Plaintiff did "not assume or have any responsibility whatsoever with respect to any obligations, commitments, or liabilities that arose prior to the WMAS Closing or are based upon, or arise from, occurrences or transactions prior to the WMAS Closing Date." *See* Asset Purchase Agreement, Schedule 4 (WMAS Assumed Liabilities). Plaintiff also disclaimed any liabilities not specifically named in the Agreement. *See id.* § 2(c) (stating that Plaintiff "will not assume or have any responsibility whatsoever with respect to any other obligation or liability of ... WMAS not included within the definition of ... WMAS Assumed Liabilities."). The Cole Ko contract with WMA/WMAS was not specifically named in the Agreement. Defendant's argument at the hearing that Plaintiff assumed the Cole Ko contract because Plaintiff assumed all Active Associate Membership Agreements from WMA is without merit. *See* Asset Purchase Agreement, Schedule "WMA Assumed Contracts." The Asset Purchase Agreement specifically states that Plaintiff assumed WMAS's liabilities and contracts, not WMA's. *See* Asset Purchase Agreement at § 2(c).

*5 Second, the Asset Purchase Agreement was not a de facto merger. Under Florida law, a transaction is, as a practical matter, a merger if: (1) the purchaser's stock was the consideration for the assets; (2) shareholders of the seller become shareholders of the purchaser; (3) the purchaser assumed the seller's liabilities; (4) the seller liquidated; and (5) the purchaser continued the same enterprise after the sale. *See Serchay v. NTSC Ft. Lauderdale*, 707 So.2d 960 (Fla. 4th DCA 1998). Here, Plaintiff purchased assets for cash, not stock. Vahl Decl. ¶¶ 10, 11. No shareholders of WMAS/WMA became shareholders of Plaintiff or World Financial Group, which have been wholly owned by AAMSI. *See id.* ¶ 12, n. 3. WMAS continued to exist after the asset purchase and has apparently participated in the arbitration underlying this lawsuit. *See id.* ¶ 14. After the asset purchase, Plaintiff began new operations with a new business plan. *See id.* ¶ 18. It hired its own employees, including some WMAS employees who were invited to apply for new positions. *See id.* ¶ 19. There are no common high-level executives between the companies. *See id.* ¶¶ 12, 13. Although Plaintiff operates from the same location that WMAS/WMA did, WMAS no longer operates from there and Plaintiff entered into a new lease agreement with the building owner. *See id.* ¶ 15. Plaintiff did, however, take over WMAS/WMA's customers to the extent that those customers did not object to the transfer of their accounts from WMAS/WMA to Plaintiff. *See id.* ¶ 16. Defendant has provided no evidence to contradict Mr. Vahl's declaration.

Third, for the reasons stated above, Plaintiff is not a mere continuation of WMAS/WMA. A mere continuation is shown if the successor company is a continuation or reincarnation of the predecessor company under a difference name. *See Amjad Munim, M.D., P.A., v. Azar*, 648 So.2d 145, 154 (Fla. 4th DCA 1994).

Fourth, there is no evidence that the asset purchase was a fraudulent attempt to escape liabilities. Under Florida law, the fraudulent transaction exception refers to the absence of adequate consideration for a sale or transfer. *Bud Antle Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985). This asset purchase was negotiated over an extended period of time in an arm's length transaction which resulted in WMAS/WMA receiving a fair consideration of cash for assets. *See* Vahl Decl. ¶ 10.

2. NASD rules

As a member of the NASD, Plaintiff is bound by its Rules so that even in the absence of an arbitration agreement, Plaintiff must arbitrate certain disputes. First, Rule 10101 describes the types of disputes that an NASD arbitration panel has jurisdiction to hear: "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association ... (c) between or among members and/or associated persons and public customers, or others." Second, Rule 10201 provides for arbitration of "[a] dispute, claim or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

person(s) or arising out of the employment or termination of employment of such associated person(s) with such member...." Then, unless a party can avail itself of Rule 10201, it cannot force an action to arbitration, regardless of whether the substantive dispute is eligible for submission to arbitration pursuant to Rule 10101.

*6 Defendant argues that arbitration should be compelled because Cole Ko's claims are eligible for submission under Rule 10101 and because he is an associated person bringing a dispute arising in connection with Plaintiff's business under Rule 10201. An "associated person" is:
... a sole proprietor, partner, officer, director or branch manager of a member, or other natural person occupying a similar status or performing similar functions or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the NASD under these By-Laws or the Rules of the Association....

NASD By-Laws, Art. I, § (dd). Because Plaintiff did not exist until two years after Cole Ko died, Cole Ko could not have directly or indirectly controlled or been controlled by Plaintiff, who is a member of NASD. *See, e.g., World Group Securities v. Tiu,* CV 03-2609 NM, (C.D.Cal.7/23/03). Therefore, Cole Ko is not an associated person.

"Certain others" may also participate in a NASD proceeding, but cannot compel arbitration under the NASD Code. *Burns v. New York Life Ins. Co.,* 202 F.3d 616, 620 (2nd Cir.2000); Rule 10201(a) (stating that arbitration may only be compelled by a member or an associated person). Therefore, even if Cole Ko were a "certain other" under Rule 10201, he could not compel arbitration.

Even if Cole Ko were an associated person, it cannot be shown that his claims arose "in connection with the business of" Plaintiff as required by Rule 10201 because he died two years before Plaintiff commenced business. Cole Ko's relationship was with WMAS/WMA, not with Plaintiff. Defendant has made no showing that Eugene Ko's relationship with Plaintiff beginning in 2002 is sufficient to provide for arbitration of Cole Ko's claims, which arose with WMAS/WMA prior to Plaintiff's existence. Defendant argues that because the claims arise out of the non-payment of monies by Plaintiff as well as fraudulent transfers of assets from WMAS/WMA to Plaintiff, there is no dispute that the claims arose in connection with Plaintiff's business. But Eugene Ko's status as a person associated with Plaintiff is not sufficient to force arbitration of the Cole Ko claims against Plaintiff.

Further, Defendant argues that "in connection with the business of" Plaintiff for purposes of this Rule is broad enough to encompass claims arising prior to the contract to arbitrate, citing *Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 13 F.3d 330, 332 (10th Cir.1993) (interpreting specific contract language that encompassed prior dealings between the parties and not addressing the NASD rules). *Zink,* however, is inapposite. Here, unlike in *Zink,* the parties have not agreed to specific contract language encompassing prior dealings.

Additionally, by itself, Plaintiff's status as a NASD member cannot support an order compelling arbitration where there was no association between the NASD member and the claimant. *Brookstreet Securities Corp. v. Bristol Air, Inc.,* 2002 U.S. Dist. LEXIS 16784, *17-19; *see also Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 820 (11th Cir.1993).

*7 Because there has been no showing that Plaintiff is liable as a successor company under an agreement made by WMAS/WMA with Cole Ko, because there is no agreement between Plaintiff and Cole Ko, and because the NASD Code does not provide a basis for arbitration of Cole Ko's claims, it is hereby recommended that Defendant's motion to compel arbitration and/or to stay this action be denied.

C. Motion for Preliminary Injunction

To obtain a preliminary injunction, the moving

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H-6

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury without the injunction or (2) that serious questions are raised and that the balance of hardships tips sharply in the moving party's favor. *Stuhlberg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-40 (9th Cir.2001); *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir.1997). These are not two separate tests, but are " 'outer reaches of a single continuum." ' *Stuhlberg*, 240 F.3d at 840 (quoting *International Jensen, Inc. v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir.1993)).

1. Probable success on the merits

Because the Court concludes that the arbitration should not be compelled because there is no basis for arbitrating the Cole Ko claims against Plaintiff, the Court concludes that Plaintiff's probability of success on the merits is very high.

2. Irreparable harm

With such a strong showing of probable success, Plaintiff need show little irreparable harm to obtain a preliminary injunction. *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*., 204 F.3d 867, 874 (9th Cir.2000) ("these two formulations [for issuing a preliminary injunction] represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."). As a general matter, purely economic losses will not rise to the level of irreparable harm if adequate compensatory relief will be available in the course of litigation. *See generally Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir.1984). However, time and resources spent in arbitration are not compensable by monetary award under the Arbitration Act. *See, e.g., Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2nd Cir.1977).

Plaintiff's showing of irreparable harm consists largely of monetary losses such as responding to filings in the arbitration and being forced to litigate in two forums. However, Plaintiff has shown that it will suffer irreparable harm by having to arbitrate Cole Ko's claims in the absence of a clear agreement to do so, contrary to arbitration jurisprudence. *AT & T Techs.*, 475 U.S. at 648; *Textile Unlimited, Inc. v. ABMH and Co.*, 240 F.3d 781, 786 (9th Cir.2001) (noting that district court's finding that plaintiff would suffer irreparable harm if arbitration were not stayed was not erroneous, although finding was not challenged on appeal); *Gruntal & Co., Inc. v. Steinberg*, 854 F.Supp. 324, 342 (D.N.J.1994) (compelling a party to appear in arbitration when it did not agree to arbitration of any sort would constitute per se irreparable harm). In addition, Plaintiff argues that it will suffer irreparable harm by being deprived of its choice of forum if the Cole Ko claims are arbitrated. This showing of irreparable harm, coupled with Plaintiff's probability of success on the merits, weighs in favor of granting a preliminary injunction.

3. Balance of the hardships

*8 The balance of the hardships also weighs in favor of issuing an injunction. If the injunction is not granted, Plaintiff will effectively be compelled to arbitrate in the absence of a clear agreement to do so and will be denied its choice of forum. Defendant has failed to show how he would be prejudiced and the record reflects that Defendant would suffer no greater hardship if the injunction issued. Defendant is proceeding in arbitration against WMAS/WMA on the Cole Ko claims. He has provided no indication as to why relief on the Cole Ko claims against those entities would not sufficiently compensate him. Also, Defendant can still proceed with his personal claims against Plaintiff, some of which may overlap with the Cole Ko claims. Further, all necessary parties are already part of the arbitration in the event that Defendant prevails in this lawsuit and is permitted to arbitrate the Cole Ko claims.

4. Public interest

This is a purely private dispute, but one that raises serious questions about arbitrability. To the extent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 8

Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

that ensuring that arbitration is not compelled without an agreement to do so reflects a public policy, then the public interest weighs in favor of issuing the injunction.

### 5. Bond

Where, as here, the issue before the Court concerns the proper forum rather than preserving an award of damages, a court does not abuse its discretion by requiring no bond or a nominal one. *See Maryland Cas. Co.,* 107 F.3d at 985 (citing *Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 985 (2nd Cir.1996) ( "It has been held proper for the [district] court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved." '). Accordingly, the Court recommends requiring a nominal bond.

### IV. CONCLUSION

For all the foregoing reasons, it is hereby recommended that the district court: (1) grant Plaintiff's Motion for Preliminary Injunction and Stay of Arbitration; and (2) deny Defendant's Motion to Compel Arbitration. It is further recommended that the district court require a nominal bond in the amount of $10,000.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

N.D.Cal.,2004.
World Group Securities v. Ko
Not Reported in F.Supp.2d, 2004 WL 1811145 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H-8