ZEIGER, TIGGES & LITTLE LLP
Marion H. Little, Jr., Esq. (admitted *pro hac vice*)
Michael R. Reed, Esq. (admitted *pro hac vice*)
3500 Huntington Center
41 South High Street
Columbus, OH  43215
Telephone:    (614) 365-9900
Facsimile:    (614) 365-7900
Email:    little@litohio.com

SQUIRE, SANDERS & DEMPSEY L.L.P.
Joseph A. Meckes (CA Bar No. 190279)
Daniel T. Balmat (CA Bar No. 230504)
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
Telephone:  +1.415.954.0200
Facsimile:  +1.415.393.9887
Email:    jmeckes@ssd.com
          dbalmat@ssd.com

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, an Ohio Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL MARIA CUI, an individual,<br><br>Defendant. | Civil Action No. C-07-2844 JSW<br><br>**E-FILING**<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:    January 18, 2008**<br>**Time:    9:00 a.m.**<br>**Courtroom:  2, 17th Floor**<br><br>**Complaint filed:**  May 31, 2007<br>**Trial date:**      None |

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on January 18, 2008 at 9:00 a.m., in the above-entitled

3    Court, located at 450 Golden Gate Avenue, San Francisco, CA  95113, Plaintiff The O.N. Equity

4    Sales Company ("ONESCO") will move and herby does move, Pursuant to Rule 65 of the

5    Federal Rules of Civil Procedure for a preliminary injunction against Defendant Daniel Maria

6    Cui.

7         ONESCO seeks an injunction enjoining Defendant from arbitrating his claims against

8    ONESCO in NASD Case No. 07-00936, filed with the Financial Industry Regulatory Authority,

9    formerly the National Association of Securities Dealers ("NASD"), because he has no agreement

10   to arbitrate with ONESCO.

11

12                                          Respectfully submitted,

13   Dated: November 14, 2007              ZEIGER, TIGGES & LITTLE LLP

14

15                                         By:_____/s/_____

16                                                    Michael R. Reed

17                                         Attorneys for Plaintiff
                                           THE O.N. EQUITY SALES COMPANY

18

19

20

21

22

23

24

25

26

27

28

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

INTRODUCTION ............................................................................................... 2

I.   STATEMENT OF FACTS ............................................................................. 3

     A.   Overview Of The Parties And The NASD Action.................................. 3

     B.   Lancaster And The Lancorp Fund ...................................................... 3

     C.   What We Know Even Without The Benefit Of Discovery....................... 4

     D.   What Defendant Asserted In His NASD Statement Of Claim................. 5

II.  LAW AND DISCUSSION ............................................................................. 6

     A.   ONESCO Has A Strong Likelihood Of Success On The Merits ............ 6

          1.   It is The Court's Exclusive Province To Determine Whether a Party
               Has Agreed To Arbitrate A Particular Dispute ........................... 6

          2.   "Contract Existence" Is A Threshold Question That Must Be
               Answered Before A Court Can Determine Whether A Particular
               Dispute Falls Within The "Scope" Of An Express Agreement ........ 8

          3.   NASD "Customer" Status Is A Question Of Contract Existence ..... 9

          4.   "Customer" Status, As An Existence Question, Requires A Factual
               Inquiry Into The Occurrence And Timing Of Events Giving Rise
               To The Investor's Claims ...................................................... 11

          5.   Even If Some Claims Are Deemed Arbitrable, The Court Must
               Sever And Enjoin Those Claims That Are Not Arbitrable ............ 15

          6.   ONESCO Is Entitled To Injunctive Relief ................................ 16

     B.   ONESCO Would Suffer Irreparable Harm If Forced To Arbitrate A
          Dispute It Has Not Agreed To Arbitrate, And Defendant Can Show No
          Countervailing Hardship ................................................................ 17

     C.   The Public Interest Is Advanced By Not Forcing Parties To Arbitrate Their
          Disputes Where They Never Agreed To Arbitrate ................................ 17

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Antell v. Andersen LLP,*
   1998 WL 245878 (N.D. Ill. May 4, 1998) ........................................................................ 14

*Asdar Group v. Pillsbury, Madison & Sutro,*
   99 F.3d 289 (9th Cir. 1996) .............................................................................................. 14

*AT&T Tech., Inc. v. Communications Workers of America,*
   475 U.S. 643 (1986) ...................................................................................................... 7, 18

*Bensadoun v. Jobe-Riatt,*
   316 F.3d 171 (2d Cir. 2002) ........................................................................................... 8, 11

*BMA Financial Services, Inc. v. Guin,*
   164 F. Supp. 2d 813 (W.D. La. 2001) ........................................................................... 10, 12

*California Fina Group, Inc. v. Herrin,*
   379 F.3d 311 (5th Cir. 2004) ................................................................... 1, 8, 10, 11, 12

*California Trucking Association v. Brotherhood of Teamsters,*
   679 F.2d 1275 (9th Cir. 1982) ............................................................................................ 7

*Collins & Aikman Products Co. v. Building Systems, Inc.,*
   58 F.3d 16 (2d Cir. 1995) ............................................................................................... 1, 15

*Comer v. Micor, Inc.,*
   436 F.3d 1098 (9th Cir. 2006) .......................................................................................... 1, 8

*Dean Witter Reynolds v. Byrd,*
   470 U.S. 213 (1985) ........................................................................................................... 15

*Equal Employment Opportunity Commission v. Woodmen of the World Life
   Insurance Society,*
   479 F.3d 561 (8th Cir. 2007) ............................................................................................... 7

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995) ............................................................................................................. 7

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,*
   264 F.3d 770 (8th Cir. 2001) ............................................................................................. 10

*Fleetwood Enterprises, Inc. v. Gaskamp,*
   280 F.3d 1069 (5th Cir. 2002) ....................................................................................... 8, 11

*Goldman Sachs & Co. v. Becker,*
   2007 WL 1982790 (N.D. Cal. July 2, 2007) .................................................................... 12

*Hornor, Townsend & Kent, Inc. v. Hamilton,*
   218 F. Supp. 2d 1369 (N.D. Ga. 2002) ............................................................................ 12

*Hornor, Townsend & Kent, Inc. v. Hamilton,*
   WL 23832424 (N.D. Ga., Sept. 29, 2003) ....................................................................... 13

*Hornor, Townsend,*
   Case No. 1:01-CV-2979-JEC (N.D. Ga. Sept. 6, 2005) ............................................. 13, 16

*John Hancock Life Insurance Co. v. Wilson,*
   254 F.3d 48 (2d Cir. 2001) ................................................................................................ 11

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

501 U.S. 350 (1991) ............................................................................................ 14

*LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution,*
   *Teamsters Local 63,*
   849 F.2d 1236 (9th Cir. 1988) ......................................................................... 17

*Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.,*
   501 U.S. 190 (1991) ........................................................................................... 7

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
   708 F.2d 1458 (9th Cir. 1983) ......................................................................... 15

*Merrill Lynch Investment Managers v. Optibase, Ltd.,*
   337 F.3d 125 (2nd Cir. 2003) .......................................................................... 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985) ........................................................................................... 7

*MONY Sec. Corp. v. Bornstein,*
   390 F.3d 1340 (11th Cir. 2004) ....................................................................... 11

*MONY Sec., Inc. v. Vasquez,*
   238 F. Supp. 2d 1304 (M.D. Fla. 2002) .......................................................... 17

*Multi-Financial Sec. Corp. v. King,*
   386 F.3d 1364 (11th Cir. 2004) ....................................................................... 10

*Northwestern Human Services, Inc. v. Panaccio,*
   2004 WL 2166293 (E.D. Pa., Sept. 24, 2004) ................................................ 14

*Paine Webber, Inc. v. Hofmann,*
   984 F.2d 1372 (3d Cir. 1993) .......................................................................... 15

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,*
   636 F.2d 51 (3d Cir. 1980) ................................................................................ 8

*Prudential Sec., Inc. v. Dusch,*
   1994 WL 374425 (S.D. Cal., Mar. 28, 1994) ............................................ 11, 12

*Ryan, Beck & Co. v. Fakih,*
   268 F. Supp. 2d 210 (E.D.N.Y. 2003) ............................................................ 12

*Sands Bros. & Co., Ltd. v. Alba Perez Ttee Garcia Revocable Trust,*
   2004 WL 2186574 (S.D.N.Y., Sept. 28, 2004) .............................................. 12

*Sands Bros. & Co., Ltd. v. Ettinger,*
   2004 WL 541846 (S.D.N.Y., Mar. 19, 2004) ................................................. 12

*Sanford v. Memberworks, Inc.,*
   483 F.3d 956 (9th Cir. 2007) ............................................................................. 7

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) ............................................................................. 8

*Textile Unlimited, Inc. v. A..BMH and Co. Inc.,*
   240 F.3d 781 (9th Cir. 2001) ............................................................................. 6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,*
   925 F.2d 1136 (9th Cir. 1991) ........................................................................... 7

*Vestax v. McWood,*
   280 F.3d 1078 (6th Cir. 2002) ......................................................................... 11

*Volt Info. Sciences, Inc. v. Stanford Univ.,*
   489 U.S. 468 (1989) ........................................................................................... 7

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-iii-

TABLE OF AUTHORITIES -- Case No. C-07-2844 JSW

*Washington Square Securities, Inc. v. Aune*,
    385 F.3d 432 (4th Cir. 2004)..................................................................................... 11

*Wheat, First Sec., Inc. v. Green*,
    993 F.2d 814 (11th Cir. 1993).............................................................. 1, 2, 9, 12, 13

*World Group Sec. v. Ko*,
    2004 WL 1811145 (N.D. Cal., Feb. 11, 2004) ....................................................... 12

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**SUMMARY OF ARGUMENT**

ONESCO is entitled to injunctive relief because, with respect to some if not all of his NASD claims, Defendant does not qualify as a "customer" under Rule 10301(a). The question of a party's "customer" status under Rule 10301(a) is a question as to the *existence* of an agreement to arbitrate between the parties to a specific dispute. *California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316 n.6 (5th Cir. 2004).

In the context of NASD Rule 10301(a), an investor's "customer" status, and thus contract existence, is determined through a factual inquiry into the timing of events giving rise to an investor's claims. *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817-20 (11th Cir. 1993). No presumption in favor of arbitrability applies to this fundamental existence inquiry. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). To the extent Defendant does not qualify as a "customer," he cannot compel ONESCO to arbitrate his claims.

When, as here, the investor's claims are premised solely on his alleged dealings with an "associated person" of an NASD member, the investor qualifies as a "customer" only if the events giving rise to his claims occurred during the period of the "associated person's" association with the member. *Id.* If the relevant events occurred outside of the associated person's association, then the investor simply has no agreement to arbitrate his claims with the NASD member.

Notably, in conducting this analysis, the Court must view each claim independently to determine if it is subject to an express agreement to arbitrate. Even if some claims are deemed arbitrable, the Court must sever and enjoin those claims for which no agreement exists. *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).

Applied to the present case, these rules reveal that certain of Defendant's claims clearly arose before Lancaster's association with ONESCO, and thus Defendant has no agreement to arbitrate them with ONESCO. As a result, these claims should be immediately enjoined. As to the remaining claims, discovery is necessary so that the Court can properly resolve this inherently factual question of contract existence.

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

**INTRODUCTION**

> *"[NASD customer status for purposes of arbitrability should] be determined as of the time of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint. ... We cannot imagine that any NASD member would have contemplated that its NASD membership would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer."*

[*Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993) (emphasis added).]

This holding applies with equal force to the instant case. Defendant Daniel Mari Cui ("Cui"), who invested in a private placement unrelated to ONESCO, seeks to arbitrate claims against ONESCO before the Financial Industry Regulatory Authority, formerly known as the National Association of Securities Dealers (hereinafter, "NASD"). Yet Defendant does not have a written agreement to arbitrate any dispute between himself and ONESCO and, indeed, had no business relationship with ONESCO at all. Instead, he seeks to arbitrate his claims under an NASD rule that applies only to "customers" of NASD members or their "associated persons." As such, Defendant's only conceivable ground for arbitration is that he entered into an investment relationship with a trust whose purported trustee *later* – after the key events related to Defendant's investment decisions – became an "associated person" of ONESCO.

As discussed herein, the question of NASD "customer" status is a question of contract *existence*. If a party does not qualify as a "customer," then he has no agreement to arbitrate his claims with an NASD member. And as *Wheat* and other cases consistently hold, "customer" status and, thus, contract existence must be determined "as of the time of the occurrence of the events that constitute the factual predicate for the causes of action." *Wheat*, 993 F.2d at 820. This is a factual question that should be answered only after discovery.

ONESCO submits that the evidence obtained through discovery and presented at hearing will reveal that Defendant is not a "customer" entitled to arbitrate his NASD claims against ONESCO.[1] Rather, as made clear by his NASD allegations, the events giving rise to his claims

---

[1]    In an October 19, 2007 decision, the Magistrate Judge issued a decision finding that no discovery is necessary for the Court to decide the parties' competing motions in this case. ONESCO has timely filed objections to the Magistrate's decision in which it

occurred before the alleged "associated person" became associated with ONESCO.  As a result, Defendant has no agreement to arbitrate his claims with ONESCO, and ONESCO is entitled to an injunction preventing him from forcing ONESCO to arbitrate claims it has never agreed to arbitrate.

## I.    STATEMENT OF FACTS

**A.    Overview Of The Parties And The NASD Action.**

ONESCO is a Cincinnati, Ohio based securities broker-dealer licensed in all 50 states and a member of the NASD.  Defendant is an individual who allegedly purchased investments in a private placement known as the Lancorp Financial Fund Business Trust ("Lancorp Fund").

In his Statement of Claim in NASD Case No. 07-00936 (the "NASD action"), filed with the NASD on or about March 16, 2007, and amended on or about April 3, 2007, Defendant alleges that the Lancorp Fund, through its purported trustee Gary Lancaster, induced his investments through misrepresentation and omission, and that he suffered losses as a result of the Lancorp Fund's investment in Megafund, later revealed to be a Texas-based Ponzi scheme.  [First Amended Statement of Claim, Exh. C to Complaint.]  Although Defendant does not allege that he maintained a direct customer relationship with ONESCO or that ONESCO had any involvement with the Lancorp Fund offering, he alleges that ONESCO is liable for Lancaster's conduct both under agency principles and under federal and state "controlling person" statutes.  Defendant has no express agreement to arbitrate with ONESCO.  Rather, he contends ONESCO is bound to arbitrate his claims pursuant to NASD Rules.  [*Id.* at 1-2.]

**B.    Lancaster And The Lancorp Fund.**

The genesis of this dispute is Defendant's alleged investment in a private placement offered by the Lancorp Fund through Lancaster, its purported trustee. Lancaster was a registered representative with ONESCO on an independent contractor basis, from March 23, 2004 to January 3, 2005.  [CRD for Gary Lancaster, Exh. B to Affidavit of Marion H. Little, Jr.; Affidavit

submits that, consistent with the Court's prior comments in this case, discovery is necessary for the Court to determine whether an agreement to arbitrate exists between the specific parties in this case.  Such objections remain pending before the Court.

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

of Jeffrey Bley, Exh. E to Affidavit of Marion H. Little, Jr.]  As the NASD expressly recognized

in its August 10, 2006 Letter of Acceptance, Waiver and Consent Agreement with Lancaster,

Lancaster did not disclose his involvement with the Lancorp Fund to ONESCO.  [Exh. C to

Affidavit of Marion H. Little, Jr.]

As part of this private placement offering, the Lancorp Fund prepared a detailed Private

Placement Memorandum, in which it disclosed the numerous risks associated with the offering as

well as the *absence of any broker-dealer involvement therewith*.  As but one example, at page 4 of

the Private Placement Memorandum it is specifically stated:  "This offering is a 'best efforts' and

'minimum-maximum' offering by the Trust, *without the assistance of any broker-dealer or any*

*other selling agent*.  There will be no compensation payable to the Trust or any other party in

connection with the sale of the Investor Shares."  (Emphasis added.)  Prior to investing in

Lancorp Fund, all potential investors, *including Defendant*, were required to review this

Memorandum and execute a Subscription Agreement commemorating their receipt and review

thereof.

C.    **What We Know Even Without The Benefit Of Discovery**.

Through ONESCO's investigation conducted to date, a number of facts pertinent to the

arbitrability of Defendant's claims have come to light.  For instance, we know that beginning in

March 2003, the Lancorp Fund began circulating the Private Placement Memorandum that forms

the basis for Defendant's misrepresentation and omission claims.  We know that Lancaster was

affiliated with ONESCO, as a registered representative, *only* from March 23, 2004 to January 3,

2005.  [*See* Lancaster CRD.]  We also know that Defendant executed a subscription agreement on

July 30, 2003 -- more than seven months *before* Lancaster's association with ONESCO.  [Exh. A

to Affidavit of Marion H. Little, Jr.]

In executing the subscription agreement, Defendant memorialized his *irrevocable*

commitment to purchase investments from the Lancorp Fund.  [*See id.*]  Accordingly, any

misrepresentations or omissions that induced Defendant's irrevocable commitment must have

occurred at or before the time of Defendant's execution of the original Subscription Agreement

and, thus, prior to Lancaster's affiliation with ONESCO.

1    As to the question of who would have actually made any misrepresentations to induce the

2    execution of the Subscription Agreement or any other actions by Defendant, we know that

3    Defendant stated in his Subscription Agreement that it was a Mr. Bob Reese *who was the actual*

4    *referring party for his underlying Lancorp Fund purchase*.  [Subscription Agreement at SB-11.]

5    We also know that Lancaster, during his deposition in connection with *Securities and Exchange*

6    *Commission v. Megafund Corporation, et al.*, Case No. 3:05-CV-1328-L (N.D. Texas), testified

7    that he did not, in fact, solicit *any* investors in the Lancorp Fund, but that such solicitation was

8    conducted by others who, like Mr. Reese, indisputably had no relationship with ONESCO.  [*See*

9    Lancaster Tr. at 66, Exh. D to Affidavit of Marion H. Little, Jr.]  Defendant offers nothing to

10   suggest that Lancaster, as opposed to someone else, ever actually solicited his investments in

11   Lancorp Fund.

12        Finally, we know that Lancaster never disclosed to ONESCO any involvement by him

13   with the Lancorp Fund.  Lancaster stipulated to this fact in his Letter of Acceptance, Waiver and

14   Consent with the NASD.  [Exh. C, at 5.]

15   **D.    What Defendant Asserted In His NASD Statement Of Claim.**

16        A closer look at Defendant's NASD allegations reveals that the pertinent events giving

17   rise to his claims are alleged misrepresentations or omissions that induced his fundamental

18   decisions to invest in Lancorp Fund.[2]  This is made clear in the allegations contained on pages 16

19   through 20 of his first amended statement of claim.

20        For instance, in paragraph 39 of his First Amended Statement of Claim, Defendant alleges

21   that "Respondent ONESCO, acting through Lancaster, *recommended* that Claimants invest in …

22   [an] unregistered, fraudulent investment …"  [Emphasis added.]  At paragraph 40, he alleges that

23   "Respondent ONESCO, acting through Lancaster, made numerous false representations to

24   Claimants concerning this Lancorp Financial Fund Business Trust … and Megafund Corporation

25   … investment."  And in paragraphs 41 to 45 Pals accuses ONESCO, acting through Lancaster, of

26

27   [2]    As set forth *infra* at pp. 13-14, settled law holds that the relevant event for purposes of
a securities fraud claim is the alleged misrepresentation or omission that induces an
28   investor's investment decision -- not subsequent events.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    making numerous other misrepresentations or omissions with respect to the risks associated with

2    and operations of the Lancorp Fund.  Specifically, at Paragraph 44, he alleges:

3            In connection with the above _offer of securities_, Respondent
             ONESCO, acting through Lancaster, failed to disclose the
4            following material facts, among others, which were necessary in
             order to make the statements made, in light of the circumstances
5            under which they were made, not misleading … .

6                            [Emphasis added.]

7            These allegations are premised in large part on statements contained in (and/or alleged

8    omissions from) the private placement memorandum, which was unquestionably provided to

9    Defendant _before he_ executed his irrevocable commitments to purchase Lancorp Fund

10   investments, and before Lancaster became affiliated with ONESCO.  In short, although

11   Defendant asserts a number of federal and state law causes of action in his NASD statement of

12   claim, all are fundamentally premised on the same events or occurrences:  _Lancorp Fund's_

13   _alleged misrepresentations and/or omissions that induced his original, irrevocable investment_

14   _decisions_.

15                    **II.    LAW AND DISCUSSION**

16           In an action seeking to enjoin an arbitration proceeding, the traditional equitable criteria

17   for granting injunctive relief apply.  These factors are: "(1) a strong likelihood of success on the

18   merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted;

19   (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest."

20   _Textile Unlimited, Inc. v. A..BMH and Co. Inc._, 240 F.3d 781, 786 (9th Cir. 2001).  We address

21   each of these elements:

22   **A.    ONESCO Has A Strong Likelihood Of Success On The Merits.**

23           **1.    It is The Court's Exclusive Province To Determine Whether a Party Has
                    Agreed To Arbitrate A Particular Dispute.**

24

25           The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 _et seq._, governs arbitration disputes

26   involving interstate commerce.  Although the public policy embodied in the FAA favors

27   arbitration in resolving disputes about the scope of an express agreement to arbitrate, above all:

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1

> [A]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.

2

3

> [*AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).]

4

5        It is, of course, clear that "whether or not a company is bound to arbitrate … is a matter to

6    be determined *by the Court*." *Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S.

7    190, 208 (1991) (emphasis added). *See also AT&T Tech.*, 475 U.S. at 649 (determining whether a

8    contract creates a duty to arbitrate a particular matter is an issue for the courts to decide); *Three*

9    *Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("The

10   court must determine whether a contract *ever* existed; unless that issue is decided in favor of the

11   party seeking arbitration, there is no basis for submitting a question to an arbitrator.").

12       Courts must take care to ensure that they do not force a party to arbitrate a dispute that it

13   never agreed to arbitrate. Indeed, "the first task of a court asked to compel arbitration of a dispute

14   is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v.*

15   *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As the Supreme Court squarely

16   recognized in *Volt Info. Sciences, Inc. v. Stanford Univ.*, 489 U.S. 468, 469 (1989), "[a]rbitration

17   under the act is a matter of consent, not coercion, and parties are generally free to structure their

18   arbitration agreements as they see fit … [and] they may limit by contract the issues which they

19   will arbitrate." *Accord: First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)

20   ("Arbitration is simply a matter of contract between the parties; it is a way to resolve disputes --

21   but only those disputes -- the parties have agreed to submit to arbitration."); *Sanford v.*

22   *Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("It is axiomatic that … a party cannot be

23   required to submit any dispute which he has not agreed so to submit.").

24       If the existence of such an agreement is established, a court must then determine "whether

25   the particular dispute falls within the scope of that agreement." *Equal Employment Opportunity*

26   *Commission v. Woodmen of the World Life Insurance Society*, 479 F.3d 561, 565 (8th Cir. 2007).

27   *See also California Trucking Association v. Brotherhood of Teamsters*, 679 F.2d 1275, 1280 (9th

28   Cir. 1982).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1

2

**2.    "Contract Existence" Is A Threshold Question That Must Be Answered Before A Court Can Determine Whether A Particular Dispute Falls Within The "Scope" Of An Express Agreement.**

3    Courts often cite the general federal policy favoring arbitration, indeed a presumption, in

4    determining whether a particular dispute falls "within the scope" of an express agreement to

5    arbitrate.  But let us be clear.  This liberal federal policy simply has no bearing on a court's

6    consideration of the threshold question of contract existence.  To the contrary, the federal policy

7    favoring arbitration "is best understood as concerning 'the scope of arbitrable issues.'"  *Comer v.*

8    *Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

9    When the question presented is "not whether a particular issue is arbitrable, but whether *a*

10   *particular party is bound by the arbitration agreement* …, the liberal federal policy regarding the

11   scope of arbitrable issues is inapposite." *Id.* (emphasis added).   In other words, the "federal

12   policy favoring arbitration does not apply to the determination of whether there is a valid

13   agreement to arbitrate *between the parties*; instead '*[o]rdinary contract principles determine who*

14   *is bound.*" *Fleetwood Enterprises, Inc.*, 280 F.3d at 1073 (quoted in *Comer*, 436 F.3d at 1104

15   n.11)).  *See also California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316 n.6 (5th Cir. 2004).

16   Indeed, as the Ninth Circuit has recognized, when the party opposing arbitration raises an

17   issue as to the making (i.e., existence) of an agreement to arbitrate, "discovery and a full trial" are

18   proper. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999).  *See also Bensadoun v.*

19   *Jobe-Riatt*, 316 F.3d 171, 175 (2d Cir. 2002) ("[i]f there is an issue of fact as to the making of the

20   agreement for arbitration, then a trial is necessary").  In fact, this inquiry is mandated by the

21   Federal Arbitration Act. *Simula*, 175 F.3d at 726.[3]   In short, when the question presented is one

22   of contract existence, as opposed to scope, a court must conduct an *independent* review, and no

23   presumption in favor of arbitrability should apply to its analysis.

24

25   ---

[3]    Under the FAA, the party opposing arbitration may demand a *jury trial* with respect to
the making of an arbitration agreement.  9 U.S.C. § 4; *see Par-Knit Mills, Inc. v.*
26   *Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) ("[T]he party who is
contesting the making of the agreement has the right to have the issue presented to a
27   jury.").  No jury demand was made here, but ONESCO seeks the opportunity to discover
additional information to support its request for injunctive relief and opposition to
28   Defendant's Motion to Compel.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-8-

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1

### 3.   NASD "Customer" Status Is A Question Of Contract Existence.

2    We thus turn to the case at hand.  Having no signed arbitration agreement to invoke,

3 Defendant can arbitrate his claims _only_ if NASD Rule 10301(a) applies.  Defendant will

4 undoubtedly argue that the existence of an agreement to arbitrate is conclusively established by

5 the mere existence of Rule 10301(a), and that the question of his "customer" status presents only

6 an issue of contract "scope," to be determined solely on the basis of his unilateral submissions in

7 light of a federal presumption in favor of arbitrability.  He is wrong.

8    Rule 10301(a) provides:

9           Any dispute, claim, or controversy eligible for submission
10     under the Rule 10100 Series between a _customer_ and a member
       and/or associated person arising in connection with the business of
       such member or in connection with the activities of such associated
11     persons shall be arbitrated under this Code, as provided by any duly
       executed and enforceable written agreement or upon the demand of
12     the customer.

13                  [NASD Rule 10301(a) (emphasis added).]

14 This rule "contain[s] two prerequisites before an NASD member can be compelled to arbitrate.

15 First, a complaining party must be a "customer" of either the NASD member or an "associated

16 person" of that member.  *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817-20 (11th Cir. 1993)

17 (court deemed it "rudimentary" that "the first task of a court asked to compel arbitration of

18 dispute under the NASD Rules is to determine whether the parties agreed to arbitrate").  Second,

19 the "dispute, claim or controversy" must have arisen "in connection with the business of such

20 member."  *See*, *e.g.*, *id.* at 820.

21    Under this two-step analysis, "customer" status is the determining factor of whether an

22 agreement to arbitrate _exists_.[4]  As the Fifth Circuit aptly stated:

23           [T]he federal policy favoring arbitration does not apply in a
24     situation like this when a court is determining whether an
       agreement to arbitrate exists.  Rather, it applies when a court is

25 ───────────────────────

[4]    The second step, whether the dispute arises in connection with the business activities,
26 refers to the _scope_ of arbitrability.  Of course, if customer status is not attained, and thus
no agreement to arbitrate exists, the second step of the analysis (scope) is not even
27 reached.  *See Wheat*, 993 F.2d at 820-21 (finding that because investors were not Wheat,
First customers, "we do not reach the question of whether [the investors'] claims arose 'in
28 connection with the business' " of Wheat First).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

\

determining whether the dispute in question falls within the scope
of the arbitration agreement already found to exist. … ("Thus, *until
[the] court determines that the Defendant-Investors were
'customers' and are therefore entitled to invoke arbitration
pursuant to [Rule 10301(a)], [the] court may not give the
Defendant-Investors the benefit of the federal policy favoring
arbitration*.").

[*California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316
n.6 (5th Cir. 2004) (quoting *BMA Financial Services, Inc.
v. Guin*, 164 F. Supp. 2d 813, 818 (W.D. La. 2001))
(emphasis added).]

The Eighth Circuit also has expressly recognized that the "customer" issue presents a

question of contract "existence" as between the specific parties to the dispute; and if the investor

is not a "customer," there is "no agreement to submit to arbitration."

The essence of the dispute before this court is whether [the NASD
claimant] was a customer of [the broker-dealer] under the NASD
Code.  If the answer is yes, then, according to the NASD Code, [the
broker-dealer] has agreed to submit any claim by a customer to
arbitration, thus, the motion to stay litigation and compel arbitration
should be granted.  *If the answer is no, then there has been no
agreement to submit to arbitration, and the litigation shall
continue*.

[*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*,
264 F.3d 770, 771 (8th Cir. 2001).  (emphasis added).][5]

---

[5]    Defendant will undoubtedly cite a number of decisions in which courts have held that
Rule 10301(a) constitutes an agreement to arbitrate.  Such decisions, however, are
inapposite.  Indeed, those courts holding that Rule 10301(a) is an agreement have done so
only where the *only* question presented is whether an investor can compel arbitration
against an NASD member (i.e., broker-dealer) where the investor's only relationship was
with an associated person, *and it was undisputed that the events giving rise to the
investor's claims occurred during that associated person's relationship with the NASD
member*.  Hence, the investor's status as "customer" with the associated person was
uncontroverted.

Such decisions include the Eleventh Circuit's decision in *Multi-Financial Sec. Corp.
v. King*, 386 F.3d 1364 (11th Cir. 2004).  The issue addressed in that case was limited to
whether the existence of a customer relationship between an associated person and an
investor was sufficient under Rule 10301(a) to compel the member (or broker-dealer) of
the associated person to arbitrate where there existed no customer relationship between the
member and the investor.  There, the court specifically noted that the broker-dealer had
"conceded" the investor was a customer of an "associated person" *during the period* of
that person's association with the broker-dealer.  *Id.* at 1368 & n.2.  As such, there was *no
dispute* as to the timing of relevant events, and thus, the Eleventh Circuit was able to
determine, as a matter of law, the NASD claimants' "customer" status on the basis of
these *undisputed* events.  Because the investor was found to be a customer within the
meaning of the Rule, a contract was found to exist and a presumption arose as what claims
were within its scope.  The exact same, limited question based on undisputed facts was at

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    The same is true here.  The mere existence of Rule 10301(a) does not, standing alone,

2   establish the *existence* of an agreement to arbitrate between the specific parties in this case.

3   Rather, NASD Rule 10301(a) gives rise to a "contract" only if the investor is first found to be a

4   "customer."  No presumption applies.  Instead, the court must employ "ordinary contract

5   principles … [to] determine *who* is bound" by an alleged agreement to arbitrate.  *Fleetwood*

6   *Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (emphasis added).

### 4. "Customer" Status, As An Existence Question, Requires A Factual Inquiry Into The Occurrence And Timing Of Events Giving Rise To The Investor's Claims.

9    The question of contract existence based on an investor's "customer" status *is a factual*

10  *inquiry.*  As the Eleventh Circuit has stated, "customer status" under the NASD Rules "must be

11  determined as of the time of the events providing the basis for the allegations of fraud."  *Wheat,*

12  *First*, 993 F.2d at 820 (holding that "customer" status for purposes of arbitrability "*should be*

13  *determined as of the time of the occurrence of events that constitute the factual predicate for the*

14  *causes of action contained in the arbitration complaint*") (emphasis added).  *See also MONY Sec.*

15  *Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004) (Eleventh Circuit reaffirmed that "'customer

16  status for purpose of' the NASD is 'determined as of the time of the events providing the

17  allegations.'").[6]

---

18   issue in *Washington Square Securities, Inc. v. Aune*, 385 F.3d 432 (4th Cir. 2004); *Vestax v. McWood*, 280 F.3d 1078 (6th Cir. 2002), and *California Fina Group, Inc. v. Herrin*,

19   379 F.3d 311 (5th Cir. 2004); and *John Hancock Life Insurance Co. v. Wilson*, 254 F.3d

20   48 (2d Cir. 2001), wherein the courts reached the same result.  Indeed, it appears that most, if not all, courts to have addressed this limited question hold that an investor

21   qualifies as a "customer" where his claims are based solely on his dealings with an "associated person," *and* where such claims indisputably arose during that person's

22   association with the respondent broker-dealer.

      Such decisions simply have no bearing here, where the parties dispute both the

23   *occurrence and timing* of Pals' claims and, ultimately, his "customer"

24   status.  Interestingly, the *Multi-Financial* court specifically recognized this as a distinction and acknowledged the Second Circuit's decision in *Bensadoun v. Jobe-Riat*, 316 F.2d 171

25   (2d Cir. 2003)), which held that where there is a *factual* dispute as to whether the investor qualified as a "customer" of the "associated person," an evidentiary hearing is appropriate.

26   *Id.*

     [6]   This legal proposition has been adopted by every court that has considered this issue,

27   including the Southern District of California in *Prudential Sec., Inc. v. Dusch*, 1994 WL 374425 (S.D. Cal., Mar. 28, 1994) (investor's claims were not arbitrable because they

28   arose when the investor was not yet a customer of Prudential) (Exh. F to Affidavit of Marion H. Little, Jr.); *World Group Sec. v. Ko*, 2004 WL 1811145, at *6 (N.D. Cal., Feb.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-11-

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    As noted, the federal policy in favor of arbitrability that applies to scope questions has no

2    application to this inherently factual question of contract existence.  *California Fina Group*, 379

3    F.3d at 316.  Rather, the question of "customer" status under Rule 10301(a) is a "threshold"

4    question of contract existence, and one that must be answered *independent* of any federal policy

5    favoring arbitration. *Id.*[7]  *See also Wheat, First*, 993 F.2d at 820 (issues of arbitrability under

6    NASD Rules based on the timing of relevant events present a question of contract *existence*, to be

7    determined by the court through application of standard principles of contract construction and

8    interpretation).

9    Thus, instead of simply accepting at face value an investor's unilateral assertions of

10   "customer" status, and thus presuming the existence of an agreement to arbitrate, a court in

11   considering the "customer" question "may take into account evidence that directly contradicts the

12   [claimant's] statement of claims." *Goldman Sachs & Co. v. Becker*, 2007 WL 1982790, *6 (N.D.

13   Cal. July 2, 2007) (Exh. J to Affidavit of Marion H. Little, Jr.).[8]

14   11, 2004) (holding under similar NASD Rule 10201 that an associated person had no
     claim against member based on contractual relationship and events occurring before the
15   person was associated with the member) (Exh. G to Affidavit of Marion H. Little, Jr.);
     *Sands Bros. & Co., Ltd. v. Ettinger*, 2004 WL 541846 (S.D.N.Y., Mar. 19, 2004) (Exh. H
16   to Affidavit of Marion H. Little, Jr.) ("To the extent [the associated person with whom the
     investor had dealt] engaged in misconduct with respect to her account while at
17   [predecessor brokerages], Ettinger cannot require Sands to arbitrate that claim under the
     theory that she became a 'customer' of Sands thereafter."); *Sands Bros. & Co., Ltd. v.
18   Alba Perez Ttee Garcia Revocable Trust*, 2004 WL 2186574, at *4 (S.D.N.Y., Sept. 28,
     2004) (Exh. I to Affidavit of Marion H. Little, Jr.) (same result as to a different claimant);
19   *Ryan, Beck & Co. v. Fakih*, 268 F. Supp. 2d 210 (E.D.N.Y. 2003) (rejecting an investor's
     attempt to arbitrate over a transaction that took place *after* the investor ceased to be a
20   customer of the NASD member).

21   [7]   *See also Dusch*, 1994 WL 374425, at *4 ("On the question of arbitrability, Dusch has
     presented no evidence suggesting that there *exists* an agreement to arbitrate claims
22   concerning events that occurred before Dusch became a customer of Prudential.")
     (emphasis added); *BMA Financial Services, Inc. v. Guin*, 164 F. Supp. 2d 813, 818 (W.D.
23   La. 2001) ("[T]he issue of whether [NASD claimants] are 'customers' entitled to demand
     arbitration … is often viewed as a threshold question that goes directly to the existence of
24   an arbitration agreement.") (quoted in *California Fina*, *supra*).

25   [8]   A series of decisions issued by the Northern District of Georgia in *Hornor, Townsend
     & Kent, Inc. v. Hamilton* serve as a prime example of the danger associated with accepting
26   one party's unilateral assertions of "customer" status.  In that case, *the same law firm
     representing Defendant in this case* represented investors attempting to force arbitration
27   against an NASD member.  As set forth in *Hornor, Townsend & Kent, Inc. v. Hamilton*,
     218 F. Supp. 2d 1369 (N.D. Ga. 2002), the investors secured an order from the court
28   denying a motion by Hornor Townsend, the plaintiff broker-dealer, for an injunction and
     allowing arbitration to proceed.  The court's decision was based on a sworn statement by

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    Here, the facts pertinent to the Court's existence inquiry -- in light of Defendant's NASD

2    allegations -- are the alleged misrepresentations or omissions giving rise to his allegations of

3    fraud. *See Wheat, First*, 993 F.2d at 820 ("Customer status" under the NASD Rules "must be

4    determined as of the time of the events providing the basis for the allegations of fraud."); *Hornor,*

5    *Townsend*, Case No. 1:01-CV-2979-JEC, *9 (N.D. Ga. Sept. 6, 2005) ("The events that constitute

6    the factual predicate for defendants' claim that Tommy Fountain made fraudulent representations

7    are the sales pitches that Fountain made up to the date that the sale was made.") (Exh. L to

8    Affidavit of Marion H. Little, Jr.).

---

10    the defendants that a transaction they claimed was subject to arbitration had occurred on October 1, 1999 – three weeks after the sales representative with whom they had dealt became associated with Hornor Townsend.

12    Later, during discovery in the arbitration, Hornor Townsend learned that the transaction in question had actually occurred on August 2, 1999 – more than a month *before* the sales representative became its associated person – not on October 1, as the investors had claimed in a sworn statement. After Hornor Townsend presented this new evidence to the court, the court granted reconsideration of judgment, conditioned upon remand of an appeal of the arbitrability issue from the Eleventh Circuit. *See Hornor, Townsend & Kent, Inc. v. Hamilton*, 2003 WL 23832424 (N.D. Ga., Sept. 29, 2003) (Exh. K to Affidavit of Marion H. Little, Jr.). The court expressed its concern that the defendants had misrepresented the purchase date in their affidavits in order to make their claims arbitrable. *Id.* at *10-11.

17    Nevertheless, the investors continued to try to force arbitration by means of various arguments that arbitrability was not controlled by NASD "customer" status on the transaction date, as ample case authorities hold, but rather as of the dates of subsequent events arising from a contractual relationship. In a later order in that case, the court granted summary judgment to Horner Townsend, ruling the claim not arbitrable. *See Hornor, Townsend & Kent, Inc. v. Hamilton*, Case No. 1:01-cv-02979 (N.D. Ga., Sept. 6, 2005) (slip op.) [Exh. L to Affidavit of Marion H. Little, Jr.]. In finding that the claims arising from the August 2, 1999, transaction were not arbitrable, the court noted that "[d]efendants try mightily to date their first investment after September 11, 1999 – the date on which Tommy Fountain became associated with plaintiff – in an understandable effort to tie plaintiff to Fountain and thereby force plaintiff to an arbitration." *Id.*, slip op., at 9. However, the court was not persuaded, and it commented that:

23    The failure of defendants' counsel to alert the Court originally to the existence of this August 2nd purchase date and the drafting inconsistencies now apparent in defendants' original description of the purchase dates strongly suggest that even defendants' counsel recognize the weakness of their present argument. Otherwise, they would have aired all of these matters when they were originally before the Court instead of the Court having to learn all of this only after plaintiff later received discovery material that brought to light the existence of an earlier purchase date than that represented by counsel.

[*Id.*, slip op., at 10.]

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-13-
PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    In an analogous context, courts consistently identify alleged pre-sale misrepresentations

2 and omissions as the events giving rise to claims under Federal Rule 10b-5, for purposes of the

3 statutes of repose applicable thereto. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v.*

4 *Gilbertson*, 501 U.S. 350, 364 (1991) (holding that the statute of repose for a Rule 10b-5 claim

5 starts from the date of the alleged misrepresentation inducing a sale, not from the date of sale

6 itself); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 294-95 (9th Cir. 1996). This

7 rule recognizes the basic proposition that a cause of action premised on fraud arises at the time of

8 "the alleged fraudulent conduct"-- i.e., a defendant's "affirmative misrepresentation" or

9 omission. *See Antell v. Andersen LLP*, 1998 WL 245878, *5-6 (N.D. Ill. May 4, 1998)

10 ("violation" of Rule 10b-5 occurs when "a defendant makes an affirmative misrepresentation")

11 (Exh. M to Affidavit of Marion H. Little, Jr.).

12    In applying this rule, courts presume "[a]s a matter of simple logic, [that] any

13 misrepresentation or omission must have occurred on or before the date of sale." *Northwestern*

14 *Human Services, Inc. v. Panaccio*, 2004 WL 2166293, at *18 (E.D. Pa., Sept. 24, 2004) (holding

15 that a "violation" of Section 10(b) occurs when the fraudulent misrepresentation is made, not at

16 the time of purchase) (emphasis added) (Exh. N to Affidavit of Marion H. Little, Jr.). In other

17 words, common sense dictates that a misrepresentation or omission cannot possibly induce an

18 investment decision after that decision has already been made.[9]

---

19    [9]    Indeed, Defendant recognizes and seeks to apply this rule in the NASD action. In his
First Amended Statement of Claim, Defendant avers that the relevant events, for purposes

20 of the arbitrability of his claims, are the alleged misrepresentations or omissions that
induced his investment decisions. Specifically, at pages 16 and 17 of his First Amended

21 Statement of Claim, Defendant purports to bring claims based on payments he allegedly
made to Lancorp Fund in April and September *2005* -- months *after* Lancaster's

22 association with ONESCO had ended. In a footnote, he justifies such claims by arguing
that the relevant events, for purposes of the arbitrability of his claims, are the alleged

23 misrepresentations or omissions that allegedly induced such payments -- not subsequent
events, such as the payments themselves. Specifically, in identifying these alleged

24 investment dates, Defendant notes:

25        Lancaster's license with Respondent terminated on January 3, 2005. …
        However, CLAIMANTS relied on the false and misleading

26        misrepresentations concerning Lancorp that Lancaster made while he was
        associated with RESPONDENT ONESCO, and CLAIMANTS did not

27        know at the time of the second Lancorp investment that Lancaster had
        been terminated by RESPONDENT ONESCO.

28        [*Id.* at 17 (emphasis added).]

-14-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    **5.    Even If Some Claims Are Deemed Arbitrable, The Court Must Sever And Enjoin Those Claims That Are Not Arbitrable.**

2

3    Of course, even if *some* of Defendant's claims ultimately prove to be arbitrable, the Court

4    must nonetheless sever and enjoin arbitration of those claims that are clearly not arbitrable.  In

5    short, arbitrability is not an all or nothing proposition.

6    Courts have thus recognized that when certain claims are arbitrable but others are not, a

7    court must sever the non-arbitrable claims before compelling arbitration.  *Mediterranean*

8    *Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464-65 (9th Cir. 1983) (ordering

9    arbitration of certain claims but severing, for judicial determination, claims "that are either

10   primarily or wholly outside the scope of the arbitration clause").  *See also Paine Webber, Inc. v.*

11   *Hofmann*, 984 F.2d 1372, 1377 (3d Cir. 1993) (vacating and remanding the district court's order

12   to arbitrate because the lower court was "flawed" in its "assumption that there was a single,

13   indivisible claim.").  As the Second Circuit stated:

14   > BSI contends that, because one of the claims is clearly arbitrable,
     > and because all of the claims are related to a single set of facts,
15   > federal policy disfavors bifurcation of proceedings in which some
     > claims are presented to arbitrators and some are decided by a court
16   > of law.  This argument is frivolous.  The Supreme Court has
     > directly addressed and soundly rejected it:  'The preeminent
17   > concern of Congress in passing the [Arbitration] Act was to enforce
     > private agreements … and that concern requires that we rigorously
18   > enforce agreements to arbitrate, even if the result is piecemeal
     > litigation …'  *If some claims are non-arbitrable, while others are*
19   > *arbitrable, then we will sever those claims subject to arbitration*
     > *from those adjudicable only in court*.

20
     > [*Collins & Aikman Products Co. v. Building Systems, Inc.*,
21   > 58 F.3d 16, 20 (2d Cir. 1995) (quoting *Dean Witter*
     > *Reynolds v. Byrd*, 470 U.S. 213, 221 (1985)) (emphasis
22   > added).]

23   Indeed, that is exactly what happened in *Hornor*, *supra*, where the court enjoined

24   arbitration of some claims and permitted arbitration of another because "representations

25

26   ────────────────────────

27      In short, Defendant emphasizes the "timing" of the alleged misrepresentations and
     omissions in an effort to justify claims against ONESCO for events occurring *after*
28   Lancaster had no further association with ONESCO.  In doing so, he seeks to apply the
     rule that should guide the Court's analysis here.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1   inducing" the subject investment occurred when the representative was associated with the

2   plaintiff broker.  *Hornor, Townsend*, Case No. 1:01-cv-02979, at *11.

3       **6.    ONESCO Is Entitled To Injunctive Relief.**

4       Applied here, these rules compel the conclusion that ONESCO is immediately entitled to

5   injunctive relief with respect to *some* of Defendant's claims:

6       (a)    All claims premised upon any alleged misrepresentations or omissions in the

7   Private Placement Memorandum, which bears a date of March 17, 2003, and was referenced in

8   the Subscription Agreement Defendant executed prior to Lancaster's association with ONESCO.

9       (b)    All claims premised upon any statements or omissions contained in Defendant's

10  Subscription Agreement, which he executed prior to Lancaster's association with ONESCO.

11      (c)    All claims premised upon any other written or oral representation allegedly made

12  by Lancaster before March 23, 2004, which is the first date he had an association with ONESCO.

13      (d)    All claims and damages based upon events occurring *after* Lancaster's association

14  with ONESCO.  Lancaster testified, for example, that Lancorp investors' funds were not actually

15  invested in Megafund Corporation until *2005*, after Lancaster was no longer associated with

16  ONESCO.  [Lancaster Tr. at 24-25, Exh. D to Affidavit of Marion H. Little, Jr.]  ONESCO has no

17  obligation to arbitrate claims arising after January 3, 2005, when his association with ONESCO

18  was terminated.

19      (e)    All claims based in whole or part on the conduct of persons other than Lancaster.

20  Again, Defendant stated in his Subscription Agreement that a Bob Reese was the actual referring

21  party for his underlying Lancorp Fund purchase.  [Subscription Agreement, at SB-11.]  We also

22  know that Lancaster, in his deposition in connection with *S.E.C. v. Megafund Corp., et al.*, Case

23  No. 3:05-CV-1328-L (N.D. Tex.), testified that he did not, in fact, solicit *any* investors in the

24  Lancorp Fund, but that such solicitation was conducted by others who, like Reese, indisputably

25  had no relationship with ONESCO.  [*See* Lancaster Tr. at 66.]  None of these other persons had

26  any affiliation with ONESCO and thus ONESCO has no obligation to arbitrate claims based upon

27  their conduct.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-16-
PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW

1    As to the remaining claims, discovery is necessary so that the Court can properly

2    determine the occurrence and timing of relevant events (i.e., the "factual predicate") giving rise to

3    them.  If, as the above discussion makes clear, such events occurred at a time when Lancaster was

4    not associated with ONESCO, then Defendant does not qualify as a "customer," and he, thus, has

5    no agreement to arbitrate such claims with ONESCO.

6    **B.    ONESCO Would Suffer Irreparable Harm If Forced To Arbitrate A Dispute It Has
        Not Agreed To Arbitrate, And Defendant Can Show No Countervailing Hardship.**

7

8        The Ninth Circuit has clearly spoken that a party is caused irreparable harm if it is forced

9    to arbitrate a dispute where it had no contractual obligation to do so.  *See LAWI/CSA*

10   *Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236,

11   1241 n.3 (9th Cir. 1988) (holding that party was entitled to injunctive relief once it established

12   that it was not under a contractual duty to arbitrate).  *Accord: Merrill Lynch Investment Managers*

13   *v. Optibase, Ltd.*, 337 F.3d 125, 129 (2nd Cir. 2003) (unless arbitration is enjoined, movant would

14   suffer irreparable harm by being forced to expend time and resources arbitrating an issue that is

15   not arbitrable and as to which any award would not be enforceable); *MONY Sec., Inc. v. Vasquez*,

16   238 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002) ("This Court has continuously held that irreparable

17   harm is present if a party is compelled to arbitrate a claim absent an agreement between the

18   parties to arbitrate).

19       In light of this law, the balance of hardships tips completely in ONESCO's favor, because

20   if Defendant has no right to an arbitration, he will suffer no hardship at all by having to litigate

21   his disputes in court like every other litigant who lacks an agreement to arbitrate.

22   **C.    The Public Interest Is Advanced By Not Forcing Parties To Arbitrate Their Disputes
        Where They Never Agreed To Arbitrate.**

23

24       Although it is often said that public policy favors arbitration of disputes, that is true only if

25   the parties have agreed to arbitrate in the first instance.  Arbitration is a creature of contract, and

26   / / /

27   / / /

28   / / /

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

\

if the parties never had a contract to arbitrate their disputes, then, as the Supreme Court has recognized, they cannot be compelled to arbitrate. *AT&T Tech*, 475 U.S. at 648. Clearly, the public interest is *advanced* through enforcement of this binding precedent.

Respectfully submitted,

Dated: November 14, 2007                    ZEIGER, TIGGES & LITTLE LLP


By:_____/s/_____
                    Michael R. Reed

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-18-
PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF -- Case No. C-07-2844 JSW