Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1

Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

▷

Antell v. Arthur Andersen LLP
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
James B. ANTELL, III, Nick Pino, Anthony
Dicamillo, and Ralph Corigliano Plaintiffs
v.
Arthur ANDERSEN LLP., Defendant.
No. 97 C 3456.

May 4, 1998.

MEMORANDUM OPINION AND ORDER
ANDERSEN, District J.
*1 On February 20, 1998, Magistrate Judge Martin C. Ashman filed and served upon the parties his report and recommendation concerning the motion of Defendant, Arthur Andersen LLP ("Arthur Andersen"), to dismiss the instant complaint pursuant to Fed.R.Civ.P. 12(b)(6). Judge Ashman recommends that Arthur Andersen's motion be granted in part and denied in part.

After a careful consideration of the above-referenced motion, the applicable memoranda of law, other relevant pleadings, Judge Ashman's report, and the parties' objections, the Court hereby adopts in full the report and recommendation.

I. BACKGROUND

For purposes of a motion to dismiss, the allegations in the complaint are presumed true. The Discovery Zone, Inc. (the "Discovery Zone") owns, operates, and franchises children's indoor recreational centers. In June 1993, the Discovery Zone offered its stock to the public for the first time.

Each of the four named Plaintiffs purchased Discovery Zone stock in the pertinent time period.

According to Plaintiffs, between March 31, 1994 and September 15, 1995, the officers and directors of the Discovery Zone inflated the price of the company's stock by using false and misleading financial statements in the company's annual Form 10-K Securities and Exchange Commission ("SEC") filings for the years ending 1993 and 1994. Plaintiffs further allege that Arthur Andersen, an independent accounting firm, audited these financial statements and issued unqualified or "clean" audit opinions. Additionally, Plaintiffs contend that the officers and directors of the Discovery Zone and Arthur Andersen engaged in various accounting improprieties which converted normal operating expenses to capital thereby masking operational loses. Accordingly, Plaintiffs allege that these accounting manipulations and other misrepresentations deceived the public into believing that the Discovery Zone was profitable and well positioned for dramatic future growth.

The Discovery Zone filed the pertinent Form 10-Ks and audit reports prepared by Arthur Andersen with the SEC on March 31, 1994 and March 31, 1995.

On November 9, 1994, the Discovery Zone reported a substantial operating loss for the third quarter of 1994. On November 28, 1994, the first putative class action was filed against the Discovery Zone and certain officers and directors alleging that these defendants improperly inflated the price of Discovery Zone stock in violation of §§ 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 78t, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

Several other putative class actions were also filed against the Discovery Zone and certain officers and directors. All of the separate lawsuits were consolidated in front of Judge Ruben Castillo (the "Related Action"). On January 31, 1995, James B. Antell, III ("Antell") filed a consolidated putative class action complaint in the Related Action and later amended that pleading on April 25, 1995 and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

J-1

EXHIBIT

M

Case 3:07-cv-02844-JSW   Document 47-14   Filed 11/14/2007   Page 2 of 6

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

November 16, 1995. Antell purchased Discovery Zone stock on December 7, 1994.

*2 In the Related Action, Antell asserted a fraud-on-the-market theory on behalf of a class of shareholders who purchased Discovery Zone stock during the period that the price of the stock was purportedly inflated due to the defendants' alleged manipulations and misrepresentations.

As part of the Related Action, on September 5, 1995 Arthur Andersen was served with a subpoena seeking its work papers from its 1993 and 1994 audits of the Discovery Zone's financial statements. In December 1996 and January 1997, Arthur Andersen produced documents which allegedly demonstrated, for the first time, that Arthur Andersen acted with scienter in the alleged accounting manipulations. Based on this information, on March 28, 1997, Antell sought leave to file a third amended complaint in the Related Action asserting similar fraud-on-the-market claims against Arthur Andersen. Judge Castillo denied the motion on the grounds that the addition of Arthur Andersen would delay discovery and prejudice the defendants. Nonetheless, Judge Castillo's order did not preclude the filing of a separate lawsuit against Arthur Andersen.

On May 9, 1997, Antell filed a putative class action against Arthur Andersen. Antell seeks damages on behalf of the class of shareholders who purchased Discovery Zone stock between March 31, 1994 and September 15, 1995. Antell claims that Arthur Andersen's audit reports either intentionally or recklessly failed to disclose that the Discovery Zone's financial statements were materially misstated and not in compliance with Generally Accepted Accounting Principles and General Accepted Auditing Standards. Antell brings claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, (Count I) and common law fraud (Count II).

On August 6, 1997, Judge Ashman granted the motion of class members Nick Pino ("Pino"), Anthony DiCamillo ("DiCamillo"), and Ralph Corigliano ("Corigliano") for appointment as lead plaintiffs. Corigliano purchased Discovery Zone stock on March 24, 1995. DiCamillo and Pino purchased the stock on September 13, 1995 and September 14, 1995, respectively.

Arthur Andersen filed a motion to dismiss Plaintiffs' claims on July 21, 1997. In its motion to dismiss, Arthur Andersen argues that Plaintiffs' federal securities claim (Count I) is barred by the applicable statutes of limitations and repose. Arthur Andersen further asserts that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claim for common law fraud (Count II). Plaintiffs contend that their claims are not time barred.

Judge Ashman issued his report and recommendation on February 20, 1998 recommending that Arthur Andersen's motion to dismiss based on the one-year statute of limitations be denied and that the motion be granted based on the applicable three-year statute of repose. Accordingly, Judge Ashman recommends that all claims for purchases made in reliance on the March 31, 1994 Form 10-K and the accompanying supplemental claims for common law fraud be dismissed. The Plaintiffs and Arthur Andersen each filed and briefed their objections in March 1998.

II. DISCUSSION

*3 A motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *Triad Assoc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 626-627 (7th Cir.1995) (citations omitted). Dismissal is proper only if it appears beyond doubt that the plaintiff cannot prove any of the facts in support of her claim that would entitle her to the requested relief. *Hughes v. Rowe,* 449 U.S. 5, 9-10, 101 S.Ct. 173,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

66 L.Ed.2d 163 (1980).

With these standards in mind, we now turn to the report and recommendation. In doing so, we must " make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which a specific written objection has been made." Fed.R.Civ.P. 72(b). This "de novo determination" does not require a new hearing, but simply means that we must give "fresh consideration to those issues to which specific objections have been made." *Rajaratnam v. Moyer,* 47 F.3d 922, 925 n. 8 (7th Cir.1995) (*quoting* 12 Charles A. Wright et al., *Federal Practice and Procedure* § 3076.8 (Supp.1994)).

An action claiming a violation of Section 10(b) or Rule 10b-5 must be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); 15 U.S.C. § 78i(e). The statue of limitations is an affirmative defense. In the context of a motion to dismiss, a plaintiff is not required to negate an affirmative defense in his complaint. *Fugman v. Aprogenex, Inc.,* 961 F.Supp. 1190, 1198 (N.D.Ill.1997). Nonetheless, if the plaintiff pleads facts that establish that his suit is time barred, he pleads himself out of court. *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994).

A. One-Year Statute of Limitations

The one-year limitations period begins to run when a plaintiff has "inquiry notice" of the alleged fraud rather than when a plaintiff actually discovers the fraud. *Id.* at 722. The test is an objective one. *Law v. Medco Research, Inc.,* 113 F.3d 781, 786 (7th Cir.1997). A person is charged with "inquiry notice" when she becomes aware of facts that would lead a reasonable person to investigate whether she has a claim under Section 10(b) or Rule 10b-5. *Marks v. CDW Computer Centers, Inc.,* 122 F.3d 363, 367 (7th Cir.1997). " 'Suspicious circumstances, coupled with ease of discovering, without the use of legal process, whether the suspicion is well grounded, may cause the statute of limitations to start to run before the plaintiffs discover the actual fraud." ' *Fujisawa Pharm. Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1335 (7th Cir.1997) (citing *Law,* 113 F.3d at 786).

*4 Judge Ashman recommends that Arthur Andersen's motion to dismiss based on the one-year limitations period be denied. Arthur Andersen objects to Judge Ashman's conclusion that Plaintiffs did not have "inquiry notice" of their claim more than one year before the action was commenced. Plaintiffs offer no objection on this point. For the following reasons, we agree with Judge Ashman and overrule Arthur Andersen's objection.

Plaintiffs filed the instant action against Arthur Andersen on May 9, 1997. Arthur Andersen contends that Plaintiffs had inquiry notice of this claim on November 28, 1994, the day the original complaint in the Related Action was filed. Arthur Andersen asserts that the Related Action complaint proclaimed to the world that Discovery Zone shareholders asserted fraud based on the same type of accounting manipulations and practices that Plaintiffs claim in the instant lawsuit. Thus, Arthur Andersen concludes that Plaintiffs were sufficiently alerted that Arthur Andersen, the auditor of the purported fraudulent financial statements, may have participated in the alleged fraud.

A "reasonable investor is presumed to have information available in the public domain, and therefore [a plaintiff] is imputed with constructive knowledge of this information." *Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 67 F.3d 605, 610 (7th Cir.1995). Arthur Andersen correctly states that pleadings in a lawsuit can provide inquiry notice of a claim. See *Astor Chauffeured Limousine Co. v. Runnfeld Inv. Corp.,* 910 F.2d 1540, 1544 (7th Cir.1990); *Cashman v. Coopers & Lybrand,* 877 F.Supp. 425, 436-437, n. 14 (N.D.Ill.1995). Nonetheless, Plaintiffs are not charged with inquiry notice until they knew or should have known Arthur Andersen acted with scienter. *Law,* 113 F.3d at 786.

Plaintiffs contend that they could not have known

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

J-3

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

that Arthur Andersen may have joined in the alleged fraudulent accounting treatment until Arthur Andersen produced its work papers in the Related Action in late 1996 and early 1997. Specifically, in ¶ 80 of the complaint Plaintiffs allege that:
Beginning in December 1996 and continuing in January 1997, as a result of discovery in the action against the Related Action Defendants, which discovery had previously been stayed, plaintiffs received work papers of Arthur Andersen relating to the 1993 and 1994 audits. Included in the Administration Binder produced by Arthur Andersen, contained as part of the 1993 work papers, were Audit Issue Control Documents dated February 7, 1994. These documents and related documents revealed for the first time, that Arthur Andersen knew or recklessly disregarded that the public financial statements for the years ended December 31, 1993, and December 31, 1994, issued or disseminated in the name of [the Discovery Zone], were materially false and misleading and that Arthur Andersen's audits did not conform with GAAS.

Although the pleadings filed in the Related Action and the disclosures in the Form 10-K filings may have created suspicious circumstances as to Arthur Andersen's knowledge and activities, we cannot accept Arthur Andersen's assertion that these documents conclusively provided inquiry notice of Arthur Andersen's supposed recklessness or intentional misconduct. In order to make the inference Arthur Andersen requires, the Court must ignore the equally reasonable inference that the Related Action pleadings and the SEC filings merely put Plaintiffs on notice that Arthur Andersen acted only in a negligent manner.

*5 Whether a plaintiff has inquiry notice of a claim under Section 10(b) or Rule 10b-5 is a question of fact and, as such, is often inappropriate for resolution of a motion to dismiss. *Marks,* 122 F.3d at 366. At this stage of the proceedings, we must assume the truth of Plaintiffs' allegations and draw all reasonable inferences in their favor. Thus, for purposes of the motion to dismiss we find that Plaintiff had inquiry notice of the instant claim against Arthur Andersen when it received Arthur Andersen's work papers in December 1996 or January 1997. Arthur Andersen's motion to dismiss based on the one-year statue of limitations is, therefore, denied.

### B. Three-Year Statute of Repose

In *Lampf,* the Supreme Court adopted a three-year statute of repose for claims brought under Section 10(b) and Rule 10b-5. The Supreme Court, however, did not specifically define the "violation" that triggers the repose period. Plaintiffs assert that a plaintiff's purchase of a security triggers the repose period. Judge Ashman and Arthur Andersen both suggest that the alleged misrepresentation is the "violation" contemplated by the statute of repose.

Based on the statute of repose, Judge Ashman recommends that Arthur Andersen's motion to dismiss be granted for all claims for purchases made in reliance on the Discovery Zone's March 31, 1994 Form 10-K filing, namely all purchases made prior to March 31, 1995. Plaintiffs object to Judge Ashman's recommendation. Defendant offers no objection on this point. For the following reasons, we agree with Judge Ashman and overrule Plaintiffs' objection.

Whether Plaintiffs' claims are time-barred under the statute of repose depends on when the repose period began to run. Although the Seventh Circuit has not yet determined the triggering event in the Section 10(b) or Rule 10b-5 context, the court has held that a period of repose bars a suit a fixed number of years after an action by a defendant, even if this period ends before a plaintiff suffers any injury. *Beard v. J.I. Case Co.,* 823 F.2d 1095, 1097 n. 1 (7th Cir.1987). *Accord Lampf,* 501 U.S. at 363 (stating "the purpose of the 3-year [statute of repose] is clearly to serve as a cutoff...."); *Law,* 113 F.3d at 786 (noting that "the three-year statute of repose gives defendants a definite limit beyond which they needn't fear being sued"). For the following reasons, we hold that the repose period is triggered by the alleged misrepresentation rather than by a plaintiff's purchase of a security.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

An examination of the language of 15 U.S.C. § 78i(e), § 9(e) of the of the 1933 Security and Exchange Act, the rule adopted by the Supreme Court in *Lampf*, is instructive. Pursuant to § 78i(e), claims must be "brought within one year after the discovery of the facts constituting the *violation* and within three years after such *violation*." The employment of the term "violation" for purposes of both the one-year statute of limitations period and the three-year repose period demonstrates that a "violation" occurs at the time of the alleged fraudulent conduct. As discussed above, *see supra* Section A, a party must commence a Section 10(b) or Rule 10b-5 claim within one-year after discovery of the facts constituting the alleged fraudulent conduct. If we held that the repose period begins when a plaintiff purchased the Discovery Zone stock, "violation" would have two different meanings in the same sentence.

*6 Additionally, although the *Lampf* opinion did not specifically decide what constitutes a triggering event for the repose period, the Court stated:
As there is no dispute that the earliest of plaintiffs-respondent's complaints was filed *more than three years after petitioner's alleged misrepresentations*, plaintiffs-respondent's claims were untimely.

*Lampf*, 501 U.S. at 364 (emphasis added). Furthermore, the Ninth Circuit and the SEC agree that a "violation" of Section 10(b) or Rule 10b-5 does not depend on a sale or purchase of a security. *E.g. S.E.C. v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir.1993); *In re Cambridge Biotech Corp.*, Exch. Act. Rel. No. 33-7358, 1996 WL 595674 (Oct. 17, 1996).

Thus, we find that the three-year repose period for Section 10(b) and Rule 10b-5 claims begins to run when a defendant makes an affirmative misrepresentation. *Accord In re Prudential Ins. Co. of America Sales Practices Litigation*, 975 F.Supp. 584, 603-604 (D.N.J.1997) (holding that the alleged misrepresentation rather than the sale or purchase of a security triggers the three-year repose period); *In re Phar-Mor, Inc. Securities Litigation*, 892 F.Supp. 676, 687-688 (W.D.Pa.1995) (same); *Continental Bank, Nat'l Assoc.*, 777 F.Supp. 92, 102 (D.Mass.1991) (same); *Greenberg v. Boettcher & Co.*, 755 F.Supp. 776, 784-785 (N.D.Ill.1991) (same); *c.f., Otto v. Variable Annuity Life Ins. Co.*, 816 F.Supp. 458, 461 (N.D.Ill.1991) (declining to select a triggering date for affirmative misrepresentation cases and noting in *dicta* that "a violation of § 10(b) and Rule 10b-5 is comprised not only of a misrepresentation or omission of material fact, but also includes the purchase or sale of any security").

In their objection, Plaintiffs assert that Judge Ashman's conclusion that the misrepresentation triggers the repose period is contrary to law. We have already rejected this argument and agree with Judge Ashman's analysis. Furthermore, Plaintiffs' reliance on *Kleban v. S.Y.S. Restaurant Management, Inc.*, 912 F.Supp. 361 (N.D.Ill.1995), is misplaced. In *Kleban*, the court held that the sale of the security triggers the repose period. *Id.* at 367. We are not bound by this decision and for the reasons stated above we disagree with its reasoning.

Likewise, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), offers Plaintiffs no assistance. In *Blue Chip Stamps*, the Supreme Court held only that actual purchasers and sellers of securities have standing to pursue a claim under the anti-fraud provisions of the Security and Exchange Act of 1934. The Court did not decide when the repose period begins to run or define "violation" in the repose context. Therefore, Plaintiffs' objection is denied.

In sum, all claims for purchases made in reliance on the Discovery Zone's March 31, 1994 Form 10-K filing, namely all purchases made prior to March 31, 1995, are time bared by the statute of repose. Because Antell and Corigliano purchased the stock before March 31, 1995, their federal claims are time-barred. Generally, when federal claims are dismissed, the court should decline to exercise jurisdiction over supplemental state law claims. *United Mine Workers of America v. Gibbus*, 383 U.S. 715, 726-727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court will not exercise supplemental jurisdiction over the state law claims based on purchases made before March 31, 1995. Thus, the claims of Antell and Corigliano are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

J-5

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

dismissed.

*7 Additionally, in his report, Judge Ashman overlooked the purchase dates of Plaintiffs DiCamillo and Pino which occurred on September 13, 1995 and September 14, 1995. Because DiCamillo and Pino relied on the alleged misrepresentations contained in the March 31, 1995 Form 10-K filing, the repose period for their claims had not expired when the instant action was filed on May 9, 1997. Thus, Plaintiffs DiCamillo and Pino may pursue the federal and state law claims in Counts I and II for purchases made in reliance on the Discovery Zone's March 31, 1995 Form 10-K, namely all purchases made between March 31, 1995 and September 15, 1995.

### C. Tolling Of The Three-Year Statue Of Repose

Plaintiffs also contend that the statue of repose was tolled on March 28, 1997, three days before the anniversary of the initial Form 10-K filing. On that date, Plaintiffs filed their motion to amend the complaint in the Related Action to add Arthur Andersen as a defendant. Plaintiffs, thus, argue that the repose period was tolled during the pendency of their motion. Judge Ashman rejected Plaintiffs' assertion and we agree with Judge Ashman.

In *Lampf*, the Supreme Court squarely rejected the doctrine of equitable tolling in securities fraud cases. The Court held that "it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and 3-year [limitations] structure." *Lampf*, 501 U.S. at 363.

Moreover, even if the clock stopped running while Judge Castillo decided Plaintiffs' motion to amend, from March 28, 1997 to May 2, 1997, the repose period would only be extend by three days. Plaintiffs, however, waited four days before filing the instant suit. Thus, we reject Plaintiffs' equitable tolling argument.

### III. CONCLUSION

For the foregoing reasons, we adopt Magistrate Judge Ashman's report and recommendation. Arthur Andersen's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) based on the one-year statute of limitations is denied. The motion to dismiss based on the three-year statute of repose is granted in part and denied in part.

Claims for purchases made in reliance on the Discovery Zone's March 31, 1994 Form 10-K filing are time barred under the statute of repose, namely purchases made prior to March 31, 1995. The claims of Plaintiffs Antell and Corigliano are, thus, dismissed. Accordingly, we decline to exercise supplemental jurisdiction of their state law claims. Claims for purchases made in reliance on the Discovery Zone's March 31, 1995 Form 10-K filing are timely. Therefore, Arthur Andersen's motion to dismiss is denied as to Plaintiffs DiCamillo and Pino. Plaintiffs DiCamillo and Pino may pursue the federal and state law claims in Counts I and II for purchases made in reliance on the Discovery Zone's March 31, 1995 Form 10-K, namely all purchases made between March 31, 1995 and September 15, 1995.

The objections to the report and recommendation of Plaintiffs and Arthur Andersen are hereby overruled.

*8 It is so ordered.

N.D.Ill.,1998.
Antell v. Arthur Andersen LLP
Not Reported in F.Supp., 1998 WL 245878 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.