Joel A. Goodman (FL Bar No. 802468)
Email: gn.law@verizon.net
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808, P.O. Box 17709
Clearwater, Florida 33762
Telephone: 727-524-8486
Facsimile: 727-524-8786

Cary S. Lapidus (CA Bar No. 123983)
Email: CaryLapidus@aol.com
Law Offices of Cary S. Lapidus
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 296-7101
Facsimile: (415) 296-7821

Attorneys for Defendant Daniel Maria Cui

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL MARIA CUI, <br><br> Defendant. | Case No. C 07-02844 JSW <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S ORDER DENYING DISCOVERY** |

Magistrate James correctly ruled that Plaintiff O.N. Equity Sales Company ("ONESCO") is not entitled to discovery in this action. Defendant has alleged events which undisputedly occurred while ONESCO's former representative, Gary L. Lancaster ("Lancaster") worked for ONESCO for which Defendant seeks to hold ONESCO liable and which entitle him to arbitrate. Nothing which ONESCO might hope to learn in discovery would change these undisputed facts. The grounds in further support of this Response are set forth in the Memorandum of Points and Authorities below.

Respectfully submitted,

DATED: November 19, 2007    GOODMAN & NEKVASIL, P.A.
By:   /s/ Joel A. Goodman
      Joel A. Goodman
      Attorney *pro hac vice*

LAW OFFICES OF CARY S. LAPIDUS
   Cary S. Lapidus
   Local counsel

Attorneys for Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.   Magistrate James's Ruling was not "Clearly Erroneous or Contrary to Law," when Twelve Judges in Identical Circumstances have Made the Same Ruling to Deny Discovery, and no Judge has Allowed Discovery.**

Pursuant to Federal Rule of Civil Procedure 72(a), this Court can only modify or set aside Magistrate James's Order denying ONESCO's request for discovery ("Order" or "Order Denying Discovery") (doc. 38), if this Court finds that the Order is "clearly erroneous or contrary to law."

> The . . . Court may modify or set aside any portion of a magistrate's ruling on non-dispositive pre-trial motions found to be "clearly erroneous or contrary to law." A ruling is clearly erroneous if the reviewing court, after considering the evidence, is left with the "definite and firm conviction that a mistake has been committed."
>
> After a careful review of the Discovery Order, this Court finds that the Magistrate's ruling was not clearly erroneous or contrary to law. Therefore, this Court DENIES BriteSmile's Objections and AFFIRMS the Discovery Order . . .

Britesmile, Inc. v. Discus Dental, Inc., 2004 WL 3331770, at *1 (N.D. Cal. 2004) (citations omitted).

This Court cannot find that Magistrate James' ruling was "clearly erroneous" or "contrary to law," when, in the same circumstances, twelve judges have denied ONESCO's discovery requests, and no judge has allowed discovery. This case is one of 21 nearly identical court actions around the country ("ONESCO cases" in "ONESCO courts") that ONESCO is prosecuting against investors in Lancorp Financial Fund Business Trust ("Lancorp"), seeking to enjoin their arbitrations. To date, seven judges have compelled arbitration without allowing discovery, and five more judges have denied discovery pending a decision on arbitrability. ONESCO v. Steinke, 504 F. Supp. 2d 913 (C.D. Cal. 2007) (compelling arbitration without discovery); ONESCO v. Pals, 509 F. Supp. 2d 761 (N.D. Iowa 2007) (same); ONESCO v. Venrick, 508 F. Supp. 2d 872 (W.D. Wash. 2007) (same); ONESCO v. Robinson, 2007 WL 2840477 (E.D. Va. Sept. 27, 2007) (same); ONESCO v. Gibson, ___ F. Supp. 2d ___, 2007 WL 2705859 (S.D.W. Va. Oct. 1, 2007) (same); ONESCO v. Prins, ___ F. Supp. 2d ___, 2007 WL 3286406 (D. Minn. Nov. 7, 2007) (same); ONESCO v. Wallace, Case No. 07cv0859 (S.D. Cal. Nov. 15, 2007) (same) (see attached Exh. 1); ONESCO v. Scott, Case No. 4:07cv269 (N.D. Fla. Sept. 9, 2007) (denying discovery) (see attached Exh. 2); ONESCO v. Rahner, 2007 WL 2908297 (D. Colo. Oct. 3, 2007) (same); ONESCO v. Prins, 2007 WL 3052756 (D. Minn. Oct. 17, 2007) (same); ONESCO v. Maria Cui, 2007 WL 3071553 (N.D. Cal. Oct. 19, 2007) (same); ONESCO v. Emmertz, Case No. 07cv2670 (E.D. Pa. Nov. 16, 2007) (same) (see attached Exh. 2).

1    Defendant disagrees that this Court decided at the scheduling conference to allow discovery. At that time on September 7, Defendant had not yet even made his discovery motion. Instead, this Court transferred all discovery issues to Magistrate James, including whether to have discovery at all. This Court referred to "discovery . . . to whatever extent, *if at all* . . . . That needs to be worked out with the magistrate."[September 7, 2007, Hearing Transcript, at 9.] "You need to . . . work out a discovery schedule . . . without prejudice to . . . defendant's right to object to any particular discovery or *all discovery*. But I'm going to delegate that issue to the magistrate judge." Id. at 12. The issue whether to allow discovery "at all" was thus squarely before Magistrate James. For the reasons stated below and stated in the ONESCO cases cited above, she ruled correctly.

**B.    No Discovery is Necessary, because the Pertinent Documents Show on Their Face that Defendant is Entitled to Arbitrate.**

This Court can determine without delay for discovery that Defendant Daniel Maria Cui ("Maria Cui") is entitled to arbitrate. ONESCO does not dispute it must arbitrate regarding Lancorp investments after Lancaster became an ONESCO agent, but ONESCO claims it is not required to arbitrate under Rule 10301 of the National Association of Securities Dealers, Inc. ("NASD"), because Maria Cui's initial Lancorp investment predated Lancaster's ONESCO tenure. As Maria Cui will explain in greater detail in his Motion to Compel Arbitration and supporting memorandum, however, the Private Placement Memorandum ("PPM") (attached to ONESCO's Complaint as Exh. A) provides that Lancorp could cancel the offer at any time. (PPM at i-iii, 4) The signing of a Lancorp subscription agreement which Lancorp could refuse to accept did not constitute a Lancorp sale. Cohen v. Stratosphere Corp., 115 F.3d 695 (9th Cir. 1997). No discovery is needed on this point, which is unmistakable and is proved by ONESCO's own exhibit to its Complaint.

Furthermore, although Maria Cui may have executed Lancorp documents before Lancaster became an ONESCO representative, Lancaster's First Declaration, ¶¶ 3-5 (see attached Exh. 3), establishes that the Lancorp offering changed, and Lancaster required Maria Cui either to reconfirm his investment after acknowledging the change or to take back his money. This new investment decision, memorialized in Maria Cui's reconfirmation letter in April 2004 attached hereto as Exh. 4, was a new event occurring while Lancaster worked for ONESCO for which ONESCO may be held liable in arbitration. See Getty v. Harmon, 53 F. Supp. 2d 1053, 1056 (W.D. Wash. 1999)

-2-

[Response to Objections to Magistrate's Order Denying Discovery]    Case No. C 07-02844 JSW

1  (treating investors' options to reject renewals as new investments). The date of the reconfirmation letter in attached Exh. 4 is again unmistakable, and no discovery is needed on this point.

The other ONESCO courts agree that these undisputed facts show that Lancorp investors can arbitrate, because the Lancorp sales did not occur until after Lancaster started working for ONESCO.

> [T]he court finds, that Lancaster did not, in fact, invest . . . investors' funds initially, but held those funds in escrow, because the Lancorp Trust had not yet "gotten off the ground." . . . [A]ccording to the private placement memorandum, the investors' initial cash payments were held in escrow until the closing date. . . . [T]he investment was subject to withdrawal, cancellation, or modification by Lancorp without notice until the closing date. . . . Lancorp could decide, in its sole discretion, to terminate the offering at any time before the maximum number of units had been sold.
> . . . .
> . . . Contrary to ONESCO's contentions, the record shows beyond dispute that the Lancorp Fund private placement offering . . . materially changed in April 2004, which required all subscribers to confirm their subscriptions or receive a return of their funds, that Lancaster held all funds invested in the Lancorp Fund private placement offering until May 2004, and that the Lancorp Fund private placement offering did not close until May 2004. . . .

Pals, 509 F. Supp. 2d at 765, 769; see also, e.g., Steinke, 504 F. Supp. 2d at 917.

Maria Cui can also arbitrate because he alleged continuing fraud and supervisory failures after Lancaster became an ONESCO agent. (See, e.g., Maria Cui's Arbitration Claim, ¶¶ 7-32, attached to the Complaint as Exh. C.) According to Lancaster's First Declaration and his Second Declaration attached hereto as Exh. 5, which are replete with evidence of supervisory failure, Lancaster disclosed to ONESCO his Lancorp involvement, but ONESCO never asked him about it, inspected his office, reviewed his customer files, reviewed his correspondence, identified his supervisor, or supplied him with procedures or compliance manuals. The courts in World Group Sec., Inc. v. Sanders, 2006 WL 1278738 (D. Utah May 8, 2006), USAllianz Sec., Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827 (W.D. Mich. 2003), and Beer v. Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007), required arbitration of supervision or continuing fraud claims, even though the investments occurred before the broker joined the firm. No discovery is needed to find that Maria Cui has alleged failures to supervise and continuing fraud.

The other ONESCO courts agree. "[D]efendant's allegations include negligent supervision claims that arose after Lancaster became affiliated with ONESCO . . . . [T]his is not a case where the activity at issue pre-dated the involvement of the NASD member. . . . [P]laintiff's supervision of Lancaster lies at the heart of defendant's NASD claims." Venrick, 508 F. Supp. 2d at 876.

-3-

1        In its Objections to the Magistrate's Order at 7, ONESCO identifies just two factual issues for which it claims to need discovery: (1) the extent of the involvement of Robert Reese ("Reese"), and (2) the timing of the representations that induced the Lancorp investments. With respect to Reese's involvement, ONESCO's own Complaint in this action alleges that Lancaster organized Lancorp, was its Trustee, and promulgated the Lancorp Private Placement Memorandum which ONESCO discusses and quotes at length in its Complaint. Lancaster wrote the reconfirmation letter dated April 5, 2004 (attached hereto as Exh. "4"), which required Maria Cui either to accept changes in the Lancorp offering or to withdraw his subscription. Accordingly, he undisputedly was Lancaster's customer for purposes of NASD Rule 10301, regardless of whether Reese was also involved and whether Lancaster used Reese as an agent to make the initial contact. No discovery is needed to resolve this point. "Because Lancaster was at all times president and CEO of Lancorp, . . . [the] inquiry [of 'who sold Lancorp securities to the investors'] would seem to be only collateral to the question of arbitrability. . . . [T]his is . . . the kind of inquiry that is at the heart of the merits of the claim and not necessary for resolution at this stage." Gibson, 2007 WL 2705859, at *6.

        With respect to the second alleged factual issue–the timing of the representations regarding Lancorp–ONESCO does not dispute that, while Lancaster was an ONESCO representative in April 2004, he required Lancorp investors either to acknowledge changes in the Lancorp investment or to take back their invested funds. (See attached Exh. 4.) ONESCO therefore does not need discovery on when the representations occurred that induced Maria Cui's investment. Representations that occurred before Lancaster became an ONESCO representative are part of the background for the actual initial sale, which occurred in April and May 2004. Maria Cui has alleged events in connection with his Lancorp investments that occurred while Lancaster worked for ONESCO, for which he seeks to hold ONESCO liable. "Defendants' claims stem from a series of transactions with Mr. Lancaster involving a single investment opportunity. It is up to the arbitrator to decide the case on its merits and to determine which, if any, of the events give rise to liability on the part of ONESCO." Prins, 2007 WL 3286406, at *6.

        The proof that discovery is not needed is that, even assuming *arguendo* that all of ONESCO's factual allegations on which it hopes to discover supporting evidence are true, Maria Cui

1  can still arbitrate, because his allegations still satisfy the two requirements for arbitrability under

2  NASD Rule 10301.  First, Maria Cui was an ONESCO customer through Lancaster, because a

3  customer under NASD Rule 10301 is anyone who is not a broker or dealer. <u>Multi-Financial Sec.</u>

4  <u>Corp. v. King</u>,  386 F.3d 1364, 1368 (11th Cir. 2004) ("The NASD generally defines the term

5  'customer' as anyone who is not a broker or a dealer.").  "[U]nder the NASD Code, when the

6  investor deals with an agent or representative, the investor deals with the member, and on that basis

7  the investor is entitled to have resolved in arbitration any dispute that arises out of that relationship."

8  <u>Vestax Sec. Corp. v. McWood</u>, 280 F.3d 1078, 1082 (6th Cir. 2002).  Second, Maria Cui has alleged

9  that ONESCO failed to supervise events occurring in connection with his Lancorp investments while

10 he was Lancaster's customer and while Lancaster worked for ONESCO.  "'A dispute that arises from

11 a firm's lack of supervision over its brokers arises in connection with its business,'" for purposes of

12 the second requirement for arbitrability under NASD Rule 10301. <u>Id</u>. (citation omitted).

13    Accordingly, this Court need not be concerned with ONESCO's allegations of disputed facts

14 which, if they have any validity, relate only to the merits, not to arbitrability.

15 > [W]e are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus on those facts required to satisfy . . . [the] two-part test [for arbitrability under Rule
16 > 10301]. . . . [T]he facts that matter in this case are undisputed: the Bornsteins were customers of . . . an associated person of MONY. This . . . fact pattern is somewhat
17 > common, and the overwhelming response is that the case is subject to arbitration. More importantly, this fact pattern falls wholly within the clear language of Rules
18 > 10101 and 10301, which focus first on whether the investor is a customer, and second on whether the dispute arose in connection with the business of the member.

19 <u>MONY Sec. Corp. v. Bornstein</u>, 390 F.3d 1340, 1346 (11th Cir. 2004) (citations omitted).  Because

20 the two requirements for arbitrability under Rule 10301 are satisfied, this Court must summarily

21 compel arbitration, without delay for discovery and a two-day hearing.

22  **C.    This Court Should Apply Motion Procedures and Proceed Summarily
         to the Arbitrability Issue, Without Lengthy and Expensive Delay for
23       Depositions and Other Discovery Procedures.**

24  ONESCO's request for time-consuming inquiry into arbitrability disregards black letter law

25 under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").  Although ONESCO filed a court

26 complaint, Maria Cui will move to compel arbitration, and, accordingly, the FAA governs.  Section

27 6 of the FAA provides that applications to compel arbitration under Section 4 are treated as motions.

28 Discovery is not automatically permitted for motions.  Section 6 therefore preempts a party's usual

entitlement to discovery when litigating a complaint. This preemption applies regardless of whether, as in this case, the plaintiff filed a complaint to enjoin an arbitration or, as in the more typical case, the plaintiff filed a complaint alleging that the defendant is liable on the merits. In either case, motions to compel arbitration trump the procedures that would otherwise apply. The court must then immediately begin to resolve the arbitrability question by procedures applicable to motions.

ONESCO's position that it is automatically entitled to the same full process that it would get in an ordinary civil proceeding is incorrect.

> [T]he language of Section 6 preempts the applicability of the Federal Rules and an Application to Vacate is to be treated procedurally in the manner of a motion.
> . . . .
> It would defeat the purpose of arbitration if a reviewing court was obligated to give all the due process of the parties filing actions of a civil nature and deserving of Federal Rule 16 treatment, e.g., a scheduling conference, hearing, etc.

Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1258 (7th Cir. 1998).

> The [FAA] provides that "[a]ny application to the court ... shall be made and heard in the manner provided by law for the making and hearing of motions," . . . Rule 81(a)(3) of the Federal Rules of Civil Procedure states, in part: "In proceedings under Title 9, U.S.C., relating to arbitration . . . [the Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes." Thus, the language of Section 6 preempts the Federal Rules. The policy behind this section "is to expedite judicial treatment of matters pertaining to arbitration."

Kruse v. Sands Bros. & Co., 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002) (citations omitted).

The "plain meaning" of the FAA and "the unmistakably clear congressional purpose [was] that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Prima Paint Co. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Congress expressed a "clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). Moses H. Cone cited Section 6 of the FAA and found that "a request for relief under . . . § 4 [of the FAA] is to be treated procedurally as a motion." Id. at 22 n.27. Consequently, to effectuate "the statutory policy of rapid and unobstructed enforcement of arbitration agreements," the FAA requires courts when determining arbitrability to hold "an expeditious and summary hearing, with only restricted inquiry into factual issues." Id. at 22-23. "The Arbitration Act calls for a summary and speedy disposition of motions

or petitions to enforce arbitration clauses." Id. at 29. ONESCO's opposition to summary disposition contradicts the Supreme Court's command that summary disposition is required.

Because these speedy procedures of Section 6 of the FAA apply to all provisions of the Act, the Eleventh Circuit's comments about motions to vacate arbitration awards under Section 10 of the FAA apply equally to arbitrability questions under Section 4.

> If . . . the application to vacate the award may be brought in the form of a complaint, . . . the proceeding . . . would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial. . . .
>
> We disagree. . . . "[T]he purpose of the [FAA] was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." The policy of expedited judicial action expressed in section 6 of the [FAA] would not be served by permitting parties who have lost in the arbitration process to file a new suit in federal court.

O.R. Sec. v. Professional Planning Assoc., 857 F.2d 742, 745-46 (11th Cir. 1988) (citations omitted).

Further reinforcing the summary nature of FAA proceedings is the use of the word "application" in Sections 4 and 6 as the means to compel arbitration. The court in Securities and Exch. Comm'n v. McCarthy, 322 F.3d 650, 656-57 (9th Cir. 2003) (citations omitted), stressed this point when it found that the SEC could summarily enforce a disciplinary order.

> "Applications" are distinct from "actions." . . . Congress's use of the word "application" . . . is significant. . . .
> . . . .
> . . . An "application" is merely a "motion." A "motion" is defined as, "[a] written or oral application requesting a court to make a specified ruling or order." A "application" is not a "lawsuit" or a "formal complaint." It does not necessarily . . . trigger "all the formal proceedings in a court of justice" as does the filing of an "action." Had Congress intended to require the Commission to bring a full-blown civil action . . . in order to enforce its orders, Congress would have made this explicit by requiring the Commission to file an "action" . . ., rather than an "application."

Any other conclusion would frustrate the national policy favoring arbitration. Parties agree to arbitrate to avoid the court procedures sought by ONESCO in this action. "If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

**D.     The Sole Limited Issue Before this Court Is Whether the Arbitration Obligation Is Susceptible to a Construction Allowing Arbitration. No Discovery Is Necessary for this Scope Issue.**

In this case, no issue exists about the making or existence of ONESCO's agreement with the NASD to comply with Rule 10301. ONESCO does not dispute that it agreed to comply with Rule

-7-

10301 and that Rule 10301 exists and is binding on ONESCO. The issue is not the making of NASD Rule 10301, but its scope–whether it applies to the disputes between the parties. When the issue is the scope of an arbitration obligation, the law provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). If arbitration obligations clearly exist, arbitrability is presumed, and arbitration generally is required. This Court must therefore compel arbitration if it can find any interpretation of NASD Rule 10301 and the facts which would allow arbitration. See Washington Square Sec., Inc. v. Aune 385 F.3d 432, 436 (4th Cir. 2004) (construing ambiguities in Rule 10301 in favor of arbitration).

**E.    Permitting Depositions and Other Discovery Would Defeat the Purpose of Arbitration to Reduce Costs and Allow ONESCO to Obtain Court-Ordered Merits Discovery That it Could Not Obtain in the Arbitration.**

While nominally limited to the arbitrability issue, Maria Cui's and Lancaster's depositions would inevitably delve into the merits of the parties' disputes. Beyond doubt, ONESCO will depose them about all aspects of their dealings with ONESCO and each other and the investment Maria Cui purchased. Under the guise of asking questions about "arbitrability," ONESCO will thereby improperly obtain court-ordered discovery about issues relevant to its liability that are committed to the NASD arbitrators for decision. See AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitrators, a court is not to rule on the potential merits of the underlying claims.").

Because courts cannot decide the merits of the parties' disputes when they determine arbitrability, courts routinely refuse to allow merits discovery. "[T]he ordering of discovery which, in essence, pertains to a matter in binding arbitration would be inappropriate." Burlington Northern Joint Protective Board v. Burlington Northern R.R., 822 F.2d 810, 812 (8th Cir. 1987). "The district judge, having determined that arbitration was appropriate, properly refrained from examining the merits of the case. Consequently, his order quashing the notice to depose the manager for inquiry on the merits of the controversy was not an abuse of discretion." H.K. Porter Co., Conners Steel Division v. Local 37, United Steel Workers of Am., 400 F.2d 691, 695-96 (4th Cir. 1968).

The court in <u>ARW Exploration Corp. v. Aguirre</u>, 1990 WL 270291, at *1-2 (W.D. Okla. Dec. 10, 1990), disallowed discovery despite claims that discovery was needed to determine arbitrability.

> [D]iscovery on the merits prior to arbitration is inconsistent with the aims of arbitration. . . .
>
> . . . Defendants have correctly identified the general rule that discovery is prohibited on the merits prior to a determination of arbitrability, and plaintiff has offered nothing in response. In essence, plaintiff would have defendants prove a negative–that plaintiff has no special need. Instead, if plaintiff desires an exception to the general rule, it is plaintiff's burden to prove its entitlement.

See also <u>Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.</u>, 61 F.R.D. 8, 10 (D.V.I. 1973), <u>rev'd on other grounds</u>, 499 F.2d 1391 (3d Cir. 1974) ("In proceedings to compel arbitration, discovery . . . into the merits . . . is improper."); <u>ACE Ltd. v. CIGNA Corp.</u>, 2001 WL 767015, at *5 n.2 (S.D.N.Y. July 6, 2001) ("[D]iscovery . . . [is] more appropriate for evaluating the merits . . . (which is the arbitrator's task) than for determining . . . arbitrability . . . (which is our only task here).").

Moreover, to fulfill arbitration's purpose to reduce costs, arbitration discovery, particularly depositions, is generally limited. "A hallmark of arbitration–and a necessary precursor to its efficient operation–is the limited discovery process." <u>Comsat Corp. v. National Science Foundation</u>, 190 F.3d 269, 276 (4th Cir. 1999). "Limitations on discovery, particularly judicially initiated discovery, remain one of the hallmarks of American commercial arbitration, including arbitration under the FAA. Avoidance of the delay and expense associated with discovery is still one of the reasons parties choose to arbitrate." 3 Ian R. MacNeil *et al.*, <u>Federal Arbitration Law</u> § 34.1 at 34:2 (1997) (footnote omitted). The NASD has said that "[d]epositions are strongly discouraged in arbitration." Notice to Members 99-90, 1999 WL 33176593, at *5 (NASDR Oct. 25, 1999).

The Court in <u>Prins</u>, 2007 WL 3052756, at *1, denied ONESCO's request for discovery in part for this reason.

> Arbitration is often sought as an alternative dispute resolution process because it significantly reduces the time and money normally spent during discovery. Permitting discovery at this time would improperly allow ONESCO to obtain court-ordered discovery on the merits that it could not otherwise obtain in the arbitration thereby driving up the costs of litigation. Therefore, the Court holds that such trial strategy runs counter to the purpose of arbitration . . . .

See also <u>Gibson</u>, 2007 WL 2840400, at *5 ("The value of arbitration may be lost if one side can force expensive discovery through the courts prior to arbitration.").

The Court in <u>Virginia Sprinkler Co. v. Road Sprinkler Fitters Local Union</u>, 868 F.2d 116, 120-21 (4th Cir. 1989) (citations omitted), found that discovery on arbitrability was improper.

> Virginia Sprinkler has argued that the district court should have permitted discovery on . . . the Union's intent. . . . The district court correctly refused such a request. The whole point of the facial invalidity test is to avoid enmeshing courts in detailed interpretations of the meanings of provisions that should instead be decided by the arbitrator. Unless the provision in question is patently invalid or unless it is obvious on the face of the language that the arbitration clause does not cover the dispute, the case should go to arbitration. Arbitration loses much of its value if one party can enforce protracted litigation and expensive discovery merely by raising questions about the party's intent in adopting a particular contract provision.

When arbitration obligations exist, discovery is the arbitrators' province, and interfering with their domain through court-ordered discovery frustrates the FAA's purpose that arbitrators, not courts, resolve arbitrable disputes. Otherwise, courts become embroiled in the arbitration, and parties obtain double-barreled discovery through both arbitration and court, which defeats the object of arbitration to avoid judicial intervention. "Allowing such discovery here, even on a limited basis, would . . . provide the plaintiff with two forums to hear its single claim, and would thereby frustrate the purposes of the Act." <u>Thomas O'Connor & Co. v. Insurance Co. of N. Am.</u>, 697 F. Supp. 563, 567 (D. Mass. 1988).

ONESCO's request for discovery is only a Trojan horse which, once through this Court's gates, would thwart arbitration's purpose to provide a less costly and speedier alternative to litigation. ONESCO will be able to obtain the information it seeks by questioning Maria Cui and Lancaster at the arbitration hearing. ONESCO should not be able to obtain discovery on the merits of Maria Cui's claims through court-ordered depositions prior to the arbitration, when the arbitrators themselves would not permit these depositions. The better course is, as the FAA commands, to resolve the arbitrability issue immediately and summarily, without substantial delay and expense for depositions and the other courtroom procedures inherent in ONESCO's requested litigation.

WHEREFORE, Defendant respectfully requests this Court to overrule ONESCO's objections to the Magistrate's Order Denying Discovery.

Respectfully submitted,

DATED: November 19, 2007

GOODMAN & NEKVASIL, P.A.
By:   /s/ Joel A. Goodman
      Joel A. Goodman
      Attorney *pro hac vice*

LAW OFFICES OF CARY S. LAPIDUS
      Cary S. Lapidus
      Local counsel

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List below.

 /s/ Joel A. Goodman
Joel A. Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone:  727-524-8486
Facsimile:  727-524-8786

**Electronic Mail Notice List**

| Name | Email |
|---|---|
| Daniel T. Balmat | dbalmat@ssd.com |
| Joseph Anthony Meckes | jmeckes@ssd.com, sfr_docket@ssd.com |
| Marion H. Little, Jr. | little@litohio.com |
| Michael R. Reed | reed@litohio.com |