# Exhibit 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BETTY WALLACE, Individually and as Trustee of the BETTY WALLACE TRUST OF 1992, and as Trustee of the BETTY WALLACE EMPLOYEE'S RETIREMENT TRUST-BETTY WALLACE PROFIT SHARING PLAN 002,<br><br>Defendants. | CASE NO. 07cv0859 WQH (AJB)<br><br>**ORDER** |

HAYES, Judge:

Four motions are pending before the Court: (1) Plaintiff's Motion for Preliminary Injunction (Doc. #15), (2) Defendant's Motion to Compel Arbitration (Doc. #20), (3) Defendant's Motion for Protective Order (Doc. # 22), and (4) Plaintiff's Motion for Order Under Civil Rule 56(f) Denying Defendant's Motion to Compel Arbitration or, Alternatively, Granting a Continuance to permit Discovery to be Taken on the Issue of Arbitrability by O.N. Equity Sales Company (Doc. #32).

## Procedural History

On May 11, 2007, Plaintiff O.N. Equity Sales ("ONESCO") filed a Complaint seeking declaratory and injunctive relief against Betty Wallace, individually and as the trustee of the Betty Wallace Trust of 1998 and the Betty Wallace Employee's Retirement

Trust ("Wallace"). (Doc. #1).[1] On June 13, 2007, ONESCO filed a Motion for Preliminary Injunction, which seeks to enjoin Wallace from taking any further action with respect to an arbitration claim ("NASD Complaint") filed by Wallace and other Investors with the National Association of Securities Dealers ("NASD"). On July 3, 2007, Wallace filed a Motion to Compel Arbitration. On July 9, 2007 Wallace filed a Motion for Protective Order. On September 24, ONESCO filed a Motion under Civil Rule 56(f) Denying Defendant's Motion to Compel Arbitration, or Alternatively, Granting a Continuance to Permit Discovery to be Taken on the Issue of Arbitrability by ONESCO. On September 24, 2007, the Court heard oral argument on these motions.

## Factual Background

ONESCO is a full service retail broker-dealer registered in all 50 states. On or about March 17, 2003, non-party Gary Lancaster ("Lancaster") made available a private placement memorandum ("Private Placement Memorandum") for the Lancorp Fund Business Trust ("Lancorp" or "Lancorp Fund"). On September 17, 2003, Wallace executed a Lancorp Financial Fund Business Trust Subscription Agreement ("Subscription Agreement") to subscribe to the Private Placement Memorandum. Lancaster was a registered representative of ONESCO from March 23, 2004 to January 3, 2005.

According to the terms of the Subscription Agreement, Wallace "irrevocably offer[ed]" to tender to the Lancorp Fund a check in the amount of $100,000 for the purchase of 20 shares in the Lancorp Fund. The Subscription Agreement provided that "[t]he check tendered shall be held in a separate escrow account . . . and shall be promptly returned to the undersigned if the shares are not subscribed for and accepted by the [Lancorp Fund] . . . . Upon the acceptance of subscriptions for the Shares by the Trust . . . the cash held in the escrow account will be released to the Lancorp Fund." *Complaint*,

---

[1] This action is apparently one of many that ONESCO has brought addressing essentially the same arbitrability question in different federal courts. At least four courts have ruled on the issue, and all have denied ONESCO's motion for preliminary injunction and compelled arbitration. *See ONESCO v. Steinke,* 2007 U.S. Dist. LEXIS 64842 (CACD, 2007); *ONESCO v. Pals,* 2007 U.S. Dist. LEXIS 66121 (IAND, 2007); ONESCO v. Venrick, 2007 U.S. Dist. LEXIS 68866 (WAWD, 2007); *ONESCO v. Gibson,* 2007 U.S. Dist. LEXIS 74763 (WVSD).

Exhibit D92. The Subscription Agreement provided that Wallace "may not cancel, terminate, or revoke" her subscription. *Id.* at Exhibit D96.

According to the terms of the Private Placement Memorandum, all cash payments for shares would be held in an escrow account until the closing date. *Id.* at Exhibit A2. The Private Placement Memorandum also provided that the Lancorp offering would be subject to "withdrawal, cancellation, or modification by [Lancorp] without notice," and that "in the event of any material changes during this offering, this memorandum will be amended or supplemented accordingly." *Id.* at Exhibit A3-4.

A feature of the Lancorp Fund was an option to purchase insurance, which would insure investors against any failure by Lancorp to return investor funds upon redemption of the Lancorp investor's shares. *Motion to Compel Arbitration,* Exhibit B19. Lancorp changed the insurance component of the Lancorp investment because of changes in the insurance industry. *Id.* On April 5, 2004, Lancaster notified all investors of this change, and required all investors to either confirm their investment or withdraw their subscription. *Id.* On April 9, 2004, Wallace acknowledged the change to the insurance component of her investment and confirmed her investment. *Id.* On June 14, 2004, Lancaster advised Lancorp investors that the Lancorp fund "officially became effective as of May 14, 2004." *Id.* at Exhibit B24.

The parties do not dispute that Lancaster invested significant dollars from the Lancorp Fund in Megafund, which later turned out to be a Texas-based Ponzi scheme. Because of this bad investment, many of the Lancorp Fund investors, including Wallace, suffered significant losses, and the Lancorp Fund went into receivership. *Motion for Preliminary Injunction,* p. 4.

Wallace's NASD Complaint alleges that based on Lancaster's recommendations, she made the following investments in the Lancorp Fund: April 13, 2004 - $100,000, April 13, 2004 - $100,000, June 3, 2004 - $100,000, June 3, 2004 - $100,000. *Complaint,* Exhibit E115.

**Discussion**

Wallace's NASD Complaint alleges claims that she invested in the Lancorp Fund based on misrepresentations and omissions made by Lancaster while he was a representative of ONESCO, and that ONESCO failed to supervise Lancaster while he was a representative of ONESCO. *Complaint,* Exhibit E ¶ 76-162. Wallace contends that none of her investments in the Lancorp Fund became final until after Lancaster became an associated person of ONESCO. Wallace also contends that during the period while Lancaster was a representative of ONESCO, he solicited and confirmed investments in the Lancorp Fund, and ONESCO failed to supervise him. *Motion to Compel,* p. 2-3. Wallace contends that NASD Rules 10101[2] and 10301(a)[3] apply to all of her claims arising out of her Lancorp investments. Wallace moves the Court to compel ONESCO to arbitrate her claims on grounds that Wallace was a "customer" of Lancaster, who was an "associated person" of ONESCO, at the time the dispute in question arose. *See* NASD Rules 10101, 10301(a).

ONESCO contends that Wallace was not its customer at the relevant time because Lancaster's alleged misrepresentations and omissions that accompanied Lancaster's offer of private placements and induced Wallace's investments in the Lancorp Fund occurred before Lancaster became an ONESCO representative. *Opposition to Motion to Compel,* p. 2. ONESCO also contends that Wallace's NASD Complaint does not allege that she made investments in the Lancorp Fund while Lancaster was a representative of ONESCO. *Id.* ONESCO states in its Motion for Preliminary Injunction that either Wallace "is bound by the express allegations in her NASD statement of claim and, thus, she has no legal basis for compelling ONESCO to arbitrate such claims; or she has identified a factual dispute as to

---

[2] NASD Rule 10101 provides: "This Code of Arbitration Procedure is prescribed and adopted for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any Nasdaq member, or arising out of the employment or termination of employment of associated person(s) with any member . . . ."

[3] NASD Rule 10301(a) provides: "Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement upon the demand of the customer . . . ."

1 the timing of events giving rise to her claims for purposes of arbitrability - a dispute that
2 cannot be summarily resolved without discovery and presentation of evidence on that very
3 issue." *Id.* at 2.  ONESCO contends that it is not required to arbitrate under the NASD
4 Rules, and moves the Court for a preliminary injunction, enjoining Wallace from
5 arbitrating her dispute with ONESCO.

6       ONESCO also seeks an evidentiary hearing to address the following disputed
7 material factual questions: Who actually sold the subject securities to Wallace? What
8 misrepresentations or omissions were actually made to induce Wallace's investment
9 decisions? Who actually made the misrepresentations or omissions that induced Wallace's
10 investment decision? When did the misrepresentations or omissions that induced Wallace's
11 investment decision occur? *Rule 56(f) Motion,* p. 8-10.

12 A.    <u>Motion for Preliminary Injunction</u>

13       Applications for preliminary injunctions are measured against the following factors:
14 (1) the movant's likelihood of success on the merits, (2) the threat of irreparable harm to
15 the movant absent the injunction, (3) the balance between the harm and the injury that the
16 injunction's issuance would inflict on other interested parties, and (4) the public interest.
17 *Johnson v. Cal State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir. 1995).  If the Court
18 grants Wallace's Motion to Compel Arbitration, it would follow that ONESCO's Motion
19 for Preliminary Injunction would be moot because ONESCO would not be able to establish
20 any likelihood of success on the merits of its claim that it is not required to arbitrate its
21 dispute with Wallace.  Accordingly, the Court will first turn to the merits of Wallace's
22 Motion to Compel Arbitration.

23 B.    <u>Motion to Compel Arbitration</u>

24       The question of whether a particular dispute is arbitrable is to be decided by the
25 court, not the arbitrator.  *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83 (2002).  The
26 standard the court applies in making the arbitrability determination is similar to the
27 summary judgment standard, and the court should review the record to determine if the
28 party opposing arbitration has raised any triable issue of fact.  *Bensadoun v. Jobe-Riatt,* 316
F.3d 171, 175 (2d Cir. 2003).  The court does not require an evidentiary hearing when the

1  underlying factual circumstances which are relevant to the court's determination of
2  arbitrability are undisputed. *Multi-Financial Securities, Corp., v. King,* 386 F.3d 1364,
3  1367 (11th Cir. 2004). "[A] court is not to rule on the potential merits of the underlying
4  claims." *Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir. 2004). "An order to
5  arbitrate . . . should not be denied unless it may be said with positive assurance that the
6  arbitration clause is not susceptible of an interpretation that covers the asserted dispute.
7  Doubts should be resolved in favor of coverage." *United Steelworkers of America v.*
8  *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960).

9        In determining whether a motion to compel arbitration should be granted, the court
10 generally "ask[s] only (1) whether there is a valid arbitration agreement and (2) whether the
11 particular dispute falls within the terms of that agreement." *Faber,* 367 F.3d at 1052. As to
12 the first inquiry, "[t]he NASD Code constitutes a valid arbitration agreement under the
13 Federal Arbitration Act, 9 U.S.C. § 2, which binds . . . a NASD member to submit an
14 eligible dispute to arbitration upon a customer's demand." *Wash. Square Secs. v. Aune,*
15 385 F.3d 432, 436 (4th Cir. 2004). As to the second inquiry, to determine whether a
16 particular dispute falls within the scope of the NASD Rule 10301(a), the complaining party
17 must be a "customer" of the NASD member or an associated person, and the complaining
18 party's NASD claims must have arisen "in connection with the business of such member or
19 in connection with the activities of such associated person." *Wheat, First Securities, Inc. v.*
20 *Green,* 993 F.2d 814, 820 (11th Cir. 1993).

21       The parties do not dispute that ONESCO is a NASD member, and agree that
22 Lancaster was a representative of ONESCO from March 23, 2004 to January 3, 2005. *Mot.*
23 *for Preliminary Injunction,* p. 2. Pursuant to NASD Rules 10101 and 10301(a), ONESCO,
24 by virtue of its NASD membership, has agreed to arbitrate claims "arising out of or in
25 connection with the business of any member" and "between and among members or
26 associated persons and public customers." It follows that ONESCO has agreed to arbitrate
27 Wallace's misrepresentation and failure to supervise claims that arose out of Lancaster's
28 activities from March 23, 2004 to January 3, 2005, the period when Lancaster was an
associated person of ONESCO.

The documentary evidence in the record demonstrates that Wallace's money was held in an escrow account and Lancorp could terminate the offering at any time prior to the initial closing date, that in April 2004, Wallace was required to confirm her subscription when the Lancorp offering was materially changed, and that the initial closing date did not occur until May 2004. The record before the Court demonstrates that no investment in the Lancorp Fund became final until after March 23, 2004, the date when Lancaster became an associated person of ONESCO.[4] ONESCO contends that an evidentiary hearing is necessary to determine who actually sold the Lancorp shares to Wallace, what misrepresentations or omissions, if any, induced Wallace's investments, and who made such misrepresentations and omissions. These questions go to the merits of Wallace's claims and the Court need not address them in making its arbitrability determination. After reviewing the record, the Court concludes that Wallace was a "customer" of Lancaster during the period when Lancaster was an "associated person" of ONESCO, and Wallace's claims arose in connection with the activities of Lancaster during this time period. *See* NASD Rules 10101, 10301(a).

### Conclusion

IT IS HEREBY ORDERED that (1) Defendant's Motion to Compel Arbitration (Doc. # 20) is **GRANTED**; (2) Plaintiff's Motion for Preliminary Injunction (Doc. # 15) is **DENIED** as moot; (3), Defendant's Motion for Protective Order (Doc. # 22) is **DENIED** as moot; and (4) Plaintiff's Motion for Order Under Civil Rule 56(f) Denying Defendant's Motion to Compel Arbitration or, Alternatively, Granting a Continuance to permit

---

[4] ONESCO relies on *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814 (11th Cir. 1993), to support its contention that Wallace was not its customer at the relevant time. *Wheat, First* held that "customer status . . . must be determined as of the time of the events providing the basis for the allegations of fraud." *Id.* at 820. *Wheat, First,* however, is distinguishable because Wallace's negligent supervision claim arose after Lancaster became an associated person of ONESCO and none of Wallace's investments in the Lancorp Fund became final until after Lancaster became an associated person of ONESCO. The Court agrees with the other district courts which have decided the issue and determined that ONESCO's construction of Wallace's arbitration claims as limited to the alleged misrepresentations made by Lancaster in connection with Wallace's execution of the Subscription Agreement is overly narrow. *See, e.g., ONESCO v. Steinke,* 2007 U.S. Dist. LEXIS, 64842.

- 7 -  07cv859 WQH (AJB)

Discovery to be Taken on the Issue of Arbitrability by O.N. Equity Sales Company (Doc. #32) is **DENIED** as moot.

    IT IS FURTHER ORDERED that Plaintiff's Complaint (Doc. # 1) is **DISMISSED without prejudice.**

DATED: November 15, 2007

                                                             **WILLIAM Q. HAYES**
                                                            United States District Judge