ZEIGER, TIGGES & LITTLE LLP
Marion H. Little, Jr. (Admitted *pro hac vice*)
Michael R. Reed, Esq. (Admitted *pro hac vice*)
3500 Huntington Center
41 South High Street
Columbus, OH  43215
Telephone:  (614) 365-990
Facsimile:  (614) 365-7900
Email:  little@litohio.com

SQUIRE, SANDERS & DEMPSEY L.L.P.
Joseph A. Meckes (State Bar No. 190279)
Daniel T. Balmat (State Bar No. 230504)
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
Telephone:  (415) 954-0200
Facsimile:  (415) 393-9887
Email:  **jmeckes@ssd.com**
Email:  **dbalmat@ssd.com**

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, an Ohio Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL MARIA CUI,<br><br>Defendant. | Case No.  3:07-cv-02844-JSW<br><br>The Honorable Jeffrey S. White<br><br>**(Filed via ECF/PACER)**<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION; REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION; AND REQUEST FOR DENIAL OR DEFERRAL OF SUMMARY DISPOSITION OF DEFENDANT'S MOTION TO COMPEL PURSUANT TO CIVIL RULE 56(f)**<br><br>**Date:  January 18, 2008**<br>**Time: 9:00 a.m.**<br>**Courtroom:  2, 17th Floor** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................ii, iii

Summary of Argument.............................................................................................. iv

I.      Introduction...................................................................................................... 1

II.     Law and Argument ......................................................................................... 3

        A.      Because Defendant Seeks A De Facto Summary Judgment On
                Arbitrability, Rule 56(f) Dictates That He Cannot Compel Arbitration
                Before ONESCO Has Had An Opportunity To Uncover Facts Essential To Its
                Opposition ...................................................................................................... 3

                1.      Defendant's De Facto Summary Judgment Motion Cannot Be
                        Decided On The Basis Of Defendant's Unilateral Factual
                        Submissions ...................................................................................... 4

                2.      Rule 56(f) Precludes Defendant From Obtaining A De Facto
                        Summary Judgment Before ONESCO Has Had An Opportunity
                        To Uncover Facts Essential To Its Opposition .................................. 5

        B.      Defendant's Motion To Compel Arbitration Presents Numerous Issues
                Of Fact, Which Should Not Be Decided In Defendant's Favor Based
                Solely On Defendant's Unilateral Submissions ............................................... 7

III.    Conclusion ...................................................................................................... 15

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

**PAGE**

Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779 (9th Cir. 1976) ........................ 4

Ainsle v. Spolyar, 926 P.2d 822 (Or. Ct. App. 1997)................................................. 10

Ambling v. Blackstone Cattle Co., 650 F. Supp. 170 (N.D. Ill. 1987).......................... 10

Beer v. Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007)............................................... 9

Bensadoun v. Jobe-Riatt, 316 F.3d 171 (2d Cir. 2002) ......................................... iv, 3, 4

Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir. 2002) ...................................... 8

Blue Chips v. Manor Drug Stores, 421 U.S. 723 (1975) ........................................... 11

California Fina Group, Inc. v. Herrin, 379 F.3d 311 (5th Cir. 2004) ......................... iv, 1, 8

Cohen v. Stratosphere Corp., 115 F.3d 695 (9th Cir. 1997) ...................................... 10

Doran v. Petroleum Mgmt. Corp., 576 F.2d 91 (5th Cir. 1978)................................... 10

Farsi v. Sterling Jewelers, Inc., 2007 WL 2323317 (D. Or. Aug. 9, 2007) .................. 8

Garrett v. City and County of San Francisco, 818 F.2d 1515 (9th Cir. 1987) ............. iv, 6, 7

Getty v. Harmon, 53 F. Supp.2d 1053 (W.D. Wash. 1999)........................................ 11

Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214 (4th Cir. 2002) ............. 6

Hornor, Townsend & Kent, Inc. v. Hamilton Case No. 1:01-CV-2979-JEC
(N.D. Ga., Sept. 6, 2005) ........................................................................................ 8, 9

Hornor, Townsend & Kent, Inc. v. Hamilton, 2004 WL 2284503
(N.D. Ga., Sept. 30, 2004)....................................................................................... 1, 9

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) ..................................... 8

Johnston v. Beazer Homes Texas, LP, 2007 WL 708555
(N.D. Cal., Mar. 2, 2007) ........................................................................................ 4

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991) ........... 10, 11

Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51 (3d Cir. 1980)........ iv, 4

1

Phillips v. Gen. Motors Corp., 911 F.2d 724 (Table), 1990 WL 117981
(4th Cir. 1990) ...................................................................................................

Simula, Inc. v. Autoliv, Inc., 175 F.3d 716 (9th Cir. 1999)............................................ iv, 1, 8

Stone v. Fossil Oil & Gas, 657 F. Supp. 1449 (D.N.M. 1987) ...................................... 10

Technetronics, Inc. v. Leybold-Geaeus GmbH, 1993 WL 197028
(E.D. Pa., June 9, 1993) ...................................................................................... 5

Umbenhower v. Copart, Inc., 2004 WL 2660649 (D. Kan., Nov. 19, 2004) ................. 5

USAllianz Sec. Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827
(W.D. Mich. 2003)................................................................................................ 9

Wheat, First Sec., Inc. v. Green, 993 F.2d 814 (11th Cir. 1993)...................................... 1, 8, 9

Wichita Falls Office Assocs. v. Banc One Corp., 978 F.2d 915 (5th Cir. 1992) ............. 5

World Group Sec., Inc. v. Sanders, 2006 WL 1278738 (D. Utah, May 8, 2006) ........... 9

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## SUMMARY OF ARGUMENT

2      Defendant asks the Court to summarily compel arbitration of all of his NASD claims

3  because Defendant says so.  In short, he has offered various third-party factual submissions

4  not mentioned in his NASD statement of claim (although he offers no evidence, himself), and

5  argues that such "evidence" conclusively establishes his status as a "customer" under NASD

6  Rule 10301(a).  The problem is that "customer" status, under Rule 10301(a), is a question as

7  to the _existence_ of an agreement to arbitrate between the parties to a specific dispute.

8  California Fina Group, Inc. v. Herrin, 379 F.3d 311, 316 n.6 (5th Cir. 2004).  This type of

9  "existence" inquiry cannot be resolved solely on the basis of one party's unilateral

10  submissions.  See Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir. 1999); Bensadoun

11  v. Jobe-Riatt, 316 F.3d 171, 175 (2d Cir. 2002).

12      What Defendant truly seeks is _summary judgment_ on his motion to compel arbitration

13  (i.e., summary judgment on the existence of an agreement to arbitrate).  In doing so, he asks

14  the Court to accept his submissions as fact, and to construe all allegations in his favor—_as the_

15  _moving party_.  In the context of a Motion to Compel Arbitration that is opposed on the basis

16  that no agreement exists, as in the case of a motion for summary judgment under Civil Rule

17  56, such a request is improper.  When a party opposes a motion to compel on the ground that

18  no agreement to arbitrate exists, a district court "should give to the opposing party the benefit

19  of all reasonable doubts and inferences that may arise."  Par-Knit Mills, Inc. v. Stockbridge

20  Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980).  This includes the opportunity to discover

21  facts necessary to the opposing party's opposition, pursuant to Civil Rule 56(f), particularly

22  where relevant facts are primarily or solely within the moving party's possession.  See, e.g.,

23  Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987).

24      The same is true here.  Defendant requests summary disposition of his Motion to

25  Compel Arbitration, which ONESCO opposes on the grounds that no agreement to arbitrate

26  exists.  Defendant has submitted factual materials that, he contends, compel arbitration of his

27  claims.  ONESCO must be permitted an opportunity to challenge Defendant's submissions.

28

1  **I.**                                    **INTRODUCTION**

2          This case raises one issue:   Are "all," "some," or "none" of Defendant's claims

3  arbitrable?   The case law makes clear that this is a factual issue that turns on Defendant's

4  status as a "customer" under NASD rules, which in turn hinges on the timing "of the

5  occurrence of events that constitute the factual predicate for the causes of action contained in

6  the arbitration complaint."   <u>Wheat, First Sec., Inc. v. Green</u>, 993 F.2d 814, 820 (11th Cir.

7  1993).   As one court explained, if these events "occurred at a time when [the associated

8  person] was not employed by [the NASD member], the latter cannot be hauled into an

9  arbitration proceeding."   <u>Hornor, Townsend & Kent, Inc. v. Hamilton</u>, 2004 WL 2284503, at

10  *3 (N.D. Ga., Sept. 30, 2004) [Exh. L to Affidavit of Marion H. Little, Jr. ("Little Aff'd")

11  (Docket No. 30).]

12          Case law holds that the question of an investor's "customer" status is an issue as to the

13  fundamental <u>*existence*</u> of an agreement to arbitrate between the specific parties to the dispute.

14  <u>California Fina Group, Inc. v. Herrin</u>, 379 F.3d 311, 316 n.6 (5th Cir. 2004).   As a result, it is

15  an issue that must be resolved independent of any federal presumption in favor of arbitration.

16  <u>Id.</u>[1]   And under the Federal Arbitration Act, it is an issue that can be resolved only after both

17  parties have had an adequate opportunity to gather and present relevant evidence.   <u>See</u>, <u>e.g.</u>,

18  <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 726 (9th Cir. 1999) (when a party opposing

19  arbitration raises a question as to the making of an agreement to arbitrate, the FAA "<u>*provides*</u>

20  <u>*for discovery and a full trial*</u>").

21          Defendant does not even attempt to answer this question as framed by the case law.

22  No affidavits or declarations are offered by Defendant, himself, as to the "timing" of the

23  alleged misrepresentations or omissions supposedly inducing his Lancorp Fund investments.

24

25  [1]     At the outset, we address Defendant's argument that the occurrence and timing of
26  events giving rise to his claims do not present a question of his "customer" status under
   NASD Rules, but instead raise an issue only as to whether Defendant "was a customer at the
   right time."   [Defendant's Motion, at 20-21.]   This contention is wrong.   As <u>Wheat</u> makes
27  clear, if the events giving rise to an investor's claims are based on the alleged activities of an
   "associated person," and if such events occurred at a time when that person was not
28  associated with the respondent broker-dealer, then the investor does not qualify as a
   "customer" under NASD rules.   <u>Wheat</u>, 993 F.2d at 818-20.

1   Instead, Defendant offers a slew of new factual contentions (most unsupported by a proper

2   evidentiary basis), and arguments not mentioned in his statement of claim filed with the

3   NASD and unrelated to the timing of any actual inducements, be they misrepresentations or

4   omissions.  In doing so, he seeks to divert the Court's attention from the obvious:  The factual

5   predicate for Defendant's claims—the alleged misrepresentations/omissions accompanying

6   the *offer of securities* at issue—occurred *before Gary Lancaster became an associated person*

7   *of ONESCO* and, indeed, appear to have been made by *someone other than Lancaster*.

8        ONESCO again submits that if the Court simply views the actual allegations asserted

9   by Defendant in his Statement of Claim, the Court will conclude that *none* of Defendant's

10  NASD claims are arbitrable and his motion to compel arbitration should be *denied*.

11  Defendant's  July  30,  2003  Subscription  Agreement  (i.e.,  Defendant's  *irrevocable*

12  commitment  to  purchase)  bearing  his  signature—the  authenticity  of  which  Defendant

13  admitted in his Answer—provides the defining date for the Court's consideration.  That is, the

14  alleged misrepresentations and omissions that accompanied the Lancorp Fund's "offer" of

15  securities were surely made before Defendant's irrevocable commitment to purchase, and as

16  the undisputed facts make clear, *before Lancaster's association* with ONESCO.  As a matter

17  of law, and specifically under <u>Wheat</u>, ONESCO has no obligation to arbitrate claims based, in

18  whole or in part, upon these events.

19       Nevertheless, in unilaterally submitting evidence and claims not even advanced in his

20  Statement  of  Claim,  Defendant  has  identified  an  inherently  factual  dispute  as  to  the

21  occurrence and timing of events giving rise to his NASD claims.  As the case law makes

22  clear, this dispute cannot be resolved summarily, solely on the basis of Defendant's

23  submissions, before both parties have had an opportunity to conduct discovery and present

24  evidence relevant to this fundamental question of contract existence.  In light of this law,

25  ONESCO requests that the Court:  (1) grant injunctive relief enjoining those claims that, as

26  described in detail at pages 15-17 of its Motion for Preliminary Injunction [Docket No. 30],

27  are clearly based on events that occurred at a time when Lancaster was not associated with

28  ONESCO; and (2) deny or defer a decision on Defendant's Motion to Compel as to the

1   remaining claims until ONESCO has had an opportunity to engage in discovery relevant and

2   necessary to its opposition thereto.[2]   Because the necessity for severance of clearly non-

3   arbitrable claims is thoroughly discussed in ONESCO's Motion for Preliminary Injunction,

4   we address only the latter point here.

5   **II.**                                    **LAW & ARGUMENT**

6       **A.    Because Defendant Seeks A De Facto Summary Judgment On Arbitrability,
             Rule 56(f) Dictates That He Cannot Compel Arbitration Before ONESCO Has
7            Had An Opportunity To Uncover Facts Essential To Its Opposition.**

8               *"In the context of motions to compel arbitration ..., the court
                applies a standard similar to that applicable for a motion for*
9               *summary judgment.  If there is an issue of fact as to the making*
                *of the agreement for arbitration, then a trial is necessary."*
10

11              [*Bensadoun v. Jobe-Riatt*, 316 F.3d 171, 175 (2d Cir.
                2002) (citations omitted).]

12          Again, the only issue in this action is whether "all," "some," or "none" of Defendant's

13  NASD claims are arbitrable.   ONESCO contends that material evidence on the issue of

14  arbitrability lies solely within Defendant's control, yet Defendant opposes all discovery in this

15  action while, at the same time, he has filed a Motion to Compel Arbitration.  To that Motion,

16  Defendant has attached his own "evidence," which he says should be construed in his favor

17  and which he argues conclusively shows that his claims are arbitrable.

18          Defendant thus asks the Court for a *de facto* summary judgment—and, not only that,

19  he asks the Court to confine its inquiry to his so-called additional "evidence" while barring

20  ONESCO from discovering evidence to the contrary.   Then, as if that is not enough,

21  Defendant asks to be accorded the same deference normally afforded to the *nonmoving* party

22  in a summary judgment motion.   That is, Defendant asks the Court to (1) accept his

23

24

---

25  [2]      On November 16, 2007, the Court affirmed, with limited comment, the Magistrate
    Judge's decision denying discovery in this case.  [Docket No. 50.]  Nonetheless, given that
26  Defendant now asks the Court to issue an order *summarily* compelling arbitration of all of his
    NASD claims based solely on his unilateral factual submissions, ONESCO is compelled to
27  request, pursuant to Civil Rule 56(f)—and as set forth in the attached Rule 56(f) affidavit—
    denial or a continuance of Defendant's motion so that ONESCO may have an opportunity to
28  discover evidence necessary to its opposition. These Rule 56(f) concerns were not addressed
    in the Magistrate Judge's decision, nor in the Court's decision affirming it.

recharacterization of his claims and a perjured declaration from a non-party as undisputed fact and (2) construe these "facts" and make all inferences in his favor.

Unfortunately for Defendant, the law does not work that way, for two key reasons.

### 1.    Defendant's De Facto Summary Judgment Motion Cannot Be Decided On The Basis Of Defendant's Unilateral Factual Submissions.

*First*, as the federal courts have recognized, what Defendant truly seeks is a *de facto* summary judgment on the arbitrability of his claims.  ONESCO contends, and the case law holds, that when arbitrability hinges on issues of fact, discovery and an evidentiary hearing are necessary.  See, e.g., Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976) ("There is no apparent reason to deny [a party] an opportunity to present his witnesses where, as in this case, there is a sharp factual conflict, resolution of that conflict will determine the outcome, … the facts are simple, [and] little time would be required for an evidentiary hearing … .").  But even assuming that summary judgment treatment is appropriate, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riatt, 316 F.3d 171, 175 (2d Cir. 2002).

Bensadoun is precisely on point.  There, the Second Circuit reversed the district court's dismissal of an NASD member's action seeking – as ONESCO requests here – declaratory and injunctive relief on the issue of arbitrability of claims brought by NASD claimants.  The Second Circuit found that the district court erred by granting judgment against the NASD member in the face of an evidentiary record that the district court itself acknowledged was "sparse."  The district court erred when it "liberally construed" what little evidence was in the record against the plaintiff while "appear[ing] to have resolved against [the plaintiff] the factual issues he sought to present." Id. at 174-75.

In short, a "district court, when considering a motion to compel arbitration which is opposed on the ground that *no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.*" Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980) (emphasis added).  See also Johnston v. Beazer Homes Texas, LP, 2007 WL 708555 (N.D.

4

Cal., Mar. 2, 2007) (citations omitted) ("[I]n considering a motion to compel arbitration which is opposed on the ground that no valid agreement to arbitrate was made, a district [court] should give *the opposing party* the benefit of all reasonable doubts and inferences that may arise.") [Exh. D to Rule 56(f) Affidavit of Michael Reed, filed herewith ("Rule 56(f) Aff'd").]

> **2.    Rule 56(f) Precludes Defendant From Obtaining A De Facto Summary Judgment Before ONESCO Has Had An Opportunity To Uncover Facts Essential To Its Opposition.**

*Second*, if sufficient discovery has not been taken before a party moves for summary judgment on an opposing party's claims, Rule 56(f) of the Federal Rules of Civil Procedure dictates—and fundamental due process requires—that the moving party cannot obtain summary judgment before the opposing party has had an opportunity to discover evidence sufficient to create a triable issue of fact.[3]

Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Thus, "Rule 56(f) motions should be granted 'almost as a matter of course' unless the 'nonmoving party has not diligently pursued discovery of evidence.'" Wichita Falls Office Assocs. v. Banc One Corp., 978 F.2d 915, 191 (5th Cir. 1992) (quoted in Barovich Associates, Inc. v. Aura Systems, Inc., 134 F.3d 376, 1998 WL 10747, *1 (9th Cir. Jan. 8, 1998)). Although Rules 56(c) and (e) require a party opposing summary judgment to show that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law, Rule 56(f) tempers that requirement by allowing the non-moving party to

---

[3]    Circuit courts of appeals and district courts around the country uniformly apply the Rule 56 standards  (including Rule 56(f)) where a party, as here, seeks *de facto* summary judgment on a motion to compel arbitration.  See, e.g., Umbenhower v. Copart, Inc., 2004 WL 2660649, at *2-3 (D. Kan., Nov. 19, 2004) [Exh. E to Rule 56(f) Aff'd.]; Technetronics, Inc. v. Leybold-Geaeus GmbH, 1993 WL 197028, at *2 (E.D. Pa., June 9, 1993) [Exh. F to Rule 56(f) Aff'd].

1   establish that further discovery is required so that it can "present facts essential to justify his

2   opposition" to such a motion.  Garrett v. City and County of San Francisco, 818 F.2d 1515,

3   1518 (9ᵗʰ Cir. 1987).

4        As one court stated, "[a]s a general rule, granting summary judgment prior to the

5   completion of all discovery is inappropriate."  Phillips v. Gen. Motors Corp., 911 F.2d 724

6   (Table), 1990 WL 117981, at *8 (4ᵗʰ Cir. 1990) (Exh. G to Rule 56(f) Aff'd).  In the summary

7   judgment context, the nonmoving party's required showing of a genuine issue for trial is

8   qualified by Rule 56(f)'s requirement that discovery be permitted where "a party's access to

9   … material is of crucial importance … where the information is likely to be in the sole

10  possession of the opposing party."  Garrett, 818 F.2d at 1519 (citation omitted).  In short,

11  summary judgment should be denied "where the nonmoving party has not had the opportunity

12  to discover information that is essential to his opposition."  Phillips, 911 F.2d at *5 (quoting

13  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)) (internal quotation marks

14  omitted).  See also Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4ᵗʰ Cir.

15  2002) (same).

16       As Rule 56(f) contemplates, the usual mechanism for the nonmoving party to preclude

17  summary judgment is to file an affidavit that "make[s] clear what information is sought and

18  how it would preclude summary judgment."  Garrett, 818 F.2d at 1518-19.  These factors are

19  easily met where the needed evidence is in the sole possession of the party resisting

20  discovery.  See, e.g., id.  Thus, as the Ninth Circuit declared:

> In denying the discovery motion as "moot" after having first
> granted defendants' summary judgment motion, the district
> court failed to exercise its discretion with respect to the
> discovery motion. … As the district court stated, the summary
> judgment motion was granted in part because of, "the lack of
> evidence of disparate treatment." … *This is precisely the type*
> *of evidence plaintiff's motion to compel sought to elicit*.  Thus,
> this case presents the circumstance where 'a party's access to …
> material is of crucial importance … where the information is
> likely to be in the sole possession of the opposing party.

[Id. at 1519 (emphasis added).]

6

Although ONESCO is filing a Rule 56(f) affidavit, it is important to note that the fundamental principal at issue is not the formality of such an affidavit but, rather, a litigant's right to obtain discovery on material issues before judgment can be passed against it.  [See Rule 56(f) Aff'd.]  In Garrett, therefore, the Ninth Circuit reversed and remanded the district court's summary judgment decision even though the nonmoving party had actually couched its request in other terms, not as a Rule 56(f) request.  This was because the request in question adequately established both the information that was sought, and how such information would preclude summary judgment—the key elements of Rule 56(f).  Id. at 1518.

In light of this case law and given the fundamental factual questions presented by Defendant's Motion, the Court should defer ruling on Defendant's Motion to Compel pending discovery on the issue of arbitrability.

**B.  Defendant's Motion To Compel Arbitration Presents Numerous Issues Of Fact, Which Should Not Be Decided In Defendant's Favor Based Solely On Defendant's Unilateral Submissions.**

Despite the clear allegations in his NASD Statement of Claim, and the date of his irrevocable commitment to purchase Lancorp Fund investments, Defendant now argues that additional facts, not mentioned in his NASD statement of claim, actually form the basis for his claims.  He argues that unilateral factual submissions (including affidavits from third-party Lancaster)—submissions ONESCO has not had an opportunity to challenge—settle the issue of arbitrability and, thus, compel summary disposition of his motion.  At the same time, he has submitted no evidence himself, in the form of affidavits of otherwise, to substantiate his allegations of arbitrability.  Rule 56(f) is designed to prevent the unjust result Defendant seeks.

As the case law discussed in ONESCO's Motion for Preliminary Injunction makes clear, arbitrability under NASD rules hinges on a determination of Defendant's "customer" status under NASD Rule 10301(a).  Courts have held that this is a question of the _existence_ of an agreement to arbitrate between the specific parties to the dispute.  California Fina Group,

7

379 F.3d at 316 n.6.[4]  Under the Federal Arbitration Act, such _existence_ questions (as opposed to mere "_scope_" questions) can be answered only after the parties have conducted discovery and presented relevant evidence.  See Simula, 175 F.3d at 726.

As an issue of contract _existence_, the "customer" question hinges on the timing "of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint."  Wheat, 993 F.2d at 820.  In an action based on allegations of securities fraud, the "factual predicate" is the alleged material misrepresentations or omissions that induced an investor's investment decisions.  Hornor, Townsend & Kent, Inc. v. Hamilton Case No. 1:01-CV-2979-JEC, at *9 (N.D. Ga., Sept. 6, 2005) ("The events that constitute the factual predicate for defendants' claim that Tommy Fountain made fraudulent representations are the sales pitches that Fountain made up to the date that the sale was made.") (Exh. H to Rule 56(f) Aff'd).  As the Northern District of Georgia explained, if these events "occurred at a time when [the associated person] was not employed by [the member], the latter cannot be

---

[4]    As ONESCO predicted in its Motion for Preliminary Injunction, Defendant has cited a few decisions in which courts held that Rule 10301(a) constitutes an agreement to arbitrate, and that the "customer" issue presents an issue of contract "scope."  For the reasons discussed in detail in Footnote 5 to ONESCO's Motion, however, such decisions are inapposite. [See ONESCO's Motion, at 9-10.]  In each of the cited instances, the court held simply that the Rule constitutes an agreement where the investor's only relationship was with an associated person, and it was undisputed that the events giving rise to the investor's claims occurred during that associated person's relationship with the NASD member.  That is not the case here, where the question of Defendant's "customer" status hinges on the resolution of an inherently factual dispute as to the occurrence and timing of events giving rise to his claims.

Indeed, Defendant tries to get around this factual timing question by arguing, under Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), that timing questions are for the arbitrators.  Howsam, however, has nothing to do with the issue presented in this case.  Instead, it concerned the NASD's six-year eligibility rule and has nothing to do with arbitrability – specifically the application of NASD Rule 10301(a) for determining "customer" status.  Indeed, Howsam is simply consistent with a long line of cases holding that statute of limitations questions are for the arbitrators to decide.  See, e.g., Blair v. Scott Specialty Gases, 283 F.3d 595, 611 (3d Cir. 2002) (statute of limitations issues are for arbitrators); Farsi v. Sterling Jewelers, Inc., 2007 WL 2323317, *4  (D. Or. Aug. 9, 2007) (same) (Exh. I to Rule 56(f) Aff'd).

1    hauled into an arbitration proceeding." Hornor, Townsend & Kent, Inc. v. Hamilton, 2004

2    WL 2284503, at *3 (N.D. Ga., Sept. 30, 2004) (Exh. J to Rule 56(f) Aff'd).[5]

3    _____

4    [5]        That Defendant purportedly asserts a lack of supervision claim does not save him from
     application of this settled rule.  In Hornor, the court rejected the same argument made by

5    Defendant here and, again, focused on the timing of the actual misrepresentations that
     allegedly induced the NASD claimant's investments.  In doing so, it noted succinctly that:

6    "*Plaintiff could not have supervised Fountain at a time before Fountain became employed
     with plaintiff* … ."  Hornor, Case No. 1:01-cv-02979, slip op. at 10 (emphasis added).  Thus,

7    the court determined that "customer" status could not be premised on an argument that a
     broker-dealer failed to adequately supervise a representative with respect to claims based on

8    *events that occurred prior to the representative's association with the broker-dealer*.  See id.
     In other words, the arbitrability of an investor's lack-of-supervision claim is directly linked to

9    the timing of the *factual predicate* giving rise to the investor's claims.

10

11        Defendant cites two cases in which courts allowed claims of negligent supervision to
     be arbitrated in the NASD system.  Contrary to Defendant's argument, in *neither case* was the

12   NASD member compelled to arbitrate a fraudulent inducement claim based on alleged
     conduct of a sales representative occurring before he or she was associated with the member.

13

14        One of the two cases, USAllianz Sec. Inc. v. Southern Mich. Bancorp, Inc., 290 F.
     Supp. 2d 827 (W.D. Mich. 2003), involved investors' fraudulent inducement claims against a

15   sales representative and a broker-dealer with whom the representative was associated at the
     time of the alleged inducements.  See id. at 829.  After these transactions occurred, the sales

16   representative left the first broker and became associated with USAllianz; thus, the claims
     against USAllianz were limited to "generally a failure to supervise" the sales representative

17   during the time of his association with USAllianz.  Id.  The court compelled arbitration of the
     failure-to-supervise claims, based on a theory that the investors "clearly allege" that

18   USAllianz, during the time the sales representative was associated with it, failed to "act to
     lessen the losses" resulting from the earlier purchases.  Id. at 831.  A key point, which

19   Defendant omits, is that no claims were made against USAllianz based on the associated
     person's conduct *before* his association with USAllianz and, thus, USAllianz was not ordered

20   to arbitrate such claims.

21

22        The arbitration order in the other case cited by Defendant, World Group Sec., Inc. v.
     Sanders, 2006 WL 1278738 (D. Utah, May 8, 2006), likewise did not involve a claim of

23   fraudulent inducement of a securities purchase.  Rather, the investor's claim for losses was
     premised on failure to supervise a sales representative *after* the challenged transaction and

24   during a time when the sales representative was associated with World Group.  See id. at *4.
     The court even noted that, under Wheat, First, the decision on arbitrability would have been

25   different had the investor sought damages "only for her original … investment."  Id. at *6.

26        Defendant further relies upon the Southern District of New York's decision in Beer v.
     Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007), for the proposition that claims of "continuing

27   fraud" are arbitrable.  This is a red herring.  In Beer, the court held that an investor may

28   arbitrate claims based on *new and materially different misrepresentations and omissions* made
     by an investment representative after an investor's initial purchase of securities.  Id. at *3.

                                                9

1    Identification of the factual predicate, which is critical to the issue of arbitrability in

2    this case, hinges on the Court's determination of inherently factual questions relating to the

3    timing of events giving rise to Defendant's NASD claims.  A cursory review of Defendant's

4    NASD pleading reveals that such claims are premised on statements contained in (and/or

5    alleged omissions from) a private placement memorandum (*i.e.*, the "offer" of securities) that

6    was provided to Defendant *before he* executed his irrevocable commitment to purchase

7    Lancorp Fund investments, and before Gary Lancaster became affiliated with ONESCO.

8    Thus, even though Defendant asserts a number of federal and state law causes of action in his

9    NASD statement of claim, *all* are fundamentally premised on the same events or occurrences

10   (i.e., the same factual predicate):  *The alleged misrepresentations and/or omissions that*

11   *induced his decision to invest in the Lancorp Fund*.[6]

12
13   Defendant, of course, does not allege such a "continuing fraud" in his NASD Statement of
     Claim, nor does he allege any new and materially different misrepresentations or omissions
14   that induced any of the alleged subsequent activities he now highlights, for the first time,
     through Lancaster's declarations.

15   [6]    Defendant states that the actual "sales" of securities establish the factual predicate for
16   his claims.  Of course, that is not what he said in his Statement of Claim, where he identified
     the factual predicate for claims based on alleged investments in 2005 as "the false and
17   misleading misrepresentations" Lancaster made earlier, while associated with ONESCO.
     [Statement of Claim, at 17.]  He also cites a series of decisions stating the general rule
18   regarding when a "sale" of securities occurs for purposes of triggering the statute of repose for
     a federal securities-law claim.  See, e.g., Stone v. Fossil Oil & Gas, 657 F. Supp. 1449
19   (D.N.M. 1987); Ambling v. Blackstone Cattle Co., 650 F. Supp. 170 (N.D. Ill. 1987); Doran
     v. Petroleum Mgmt. Corp., 576 F.2d 91 (5th Cir. 1978).  But these decisions predate the
20   Supreme Court's decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501
21   U.S. 350 (1991), which held that the statute of repose for a Rule 10b-5 securities fraud claim
     starts from the date of the alleged misrepresentation inducing a sale, not from the date of sale
22   itself.  Id. at 364.  To the extent the definition of "sale" provided in these cases remains viable
     after Lampf, it is irrelevant here in light of Lampf's holding that the pertinent event in a
23   securities fraud action is not the "sale," but the misrepresentations or omissions that induced
24   it.  Moreover, Defendants' only post-Lampf citation, Ainsle v. Spolyar, 926 P.2d 822 (Or. Ct.
     App. 1997), merely provides a definition as to when a sale is complete; it sheds no light on
25   the actual events that form the basis for Defendant's claims in this case.

26   Defendant also cites Cohen v. Stratosphere Corp., 115 F.3d 695 (9th Cir. 1997), for the
27   proposition that the Lancorp Fund's purported April 2004 replacement of promised insurance
     coverage with identical protection from another source constituted a new investment for
28   purposes of his customer status.  Defendant cites a portion of the court's analysis of the
     doctrine of illusory promises in Cohen, but Cohen is a standing case that has nothing to do

1       Nonetheless, Defendant now, *for the first time*, asserts that arbitrability should be

2 determined on the basis of other facts and events after he signed the Subscription Agreement.

3 These unilateral assertions raise numerous questions of fact directly relevant to the Court's

4 disposition of Defendant's Motion to Compel Arbitration—questions the Court should not

5 answer in Defendant's favor, pursuant to Rule 56(f), before ONESCO has had an opportunity

6 to discover evidence essential to its opposition.[7]   We summarize these material factual

7 questions below.

---

8 with the events giving rise to NASD "customer" status.  The issue there was acceptance and
contract formation.  The court held that the plaintiffs, who claimed to have entered into
9 securities contracts with a seller, had no standing to sue under Section 10(b) because the seller
had not accepted the plaintiffs' subscription agreements.  The seller's reservation of rights of
10 acceptance was deemed an illusory promise, which meant that plaintiffs' "execution of their
subscription agreements did not create a binding contract for purchase of securities." Id. at
11 702.  The same is true of <u>Blue Chips v. Manor Drug Stores</u>, 421 U.S. 723 (1975), which
addressed standing questions, but did not address the actual events giving rise to an investor's
12 10b-5 claims.
13

14       Defendant further misplaces his reliance on <u>Getty v. Harmon</u>, 53 F. Supp.2d 1053
(W.D. Wash. 1999), another statute-of-repose case that also did not concern NASD
15 "customer" status.  On the issue of when the statute of repose for securities fraud starts to run,
the <u>Getty</u> court's holding is highly questionable because it was based on outdated case law.
16 <u>Getty</u> held that "renewals" of promissory notes "each constituted a new investment" for the
purposes of establishing the statute of repose for each purchase, regardless of whether each
17 renewal was "accompanied by new representations or not." Id. at 1056.  But the <u>Getty</u> court
reached this holding based on case law predating the Supreme Court's decision in <u>Lampf</u>, 501
18 U.S. at 364, which held that the statute of repose for a Rule 10b-5 claim starts from the date of
the alleged misrepresentation inducing a sale, not from the date of sale itself.
19

20 [7]     This is the very error committed by the other district courts, whose decisions
Defendant cites in his Motion to Compel.  In each of the cited instances, the district courts
21 denied ONESCO an opportunity to participate in discovery and present evidence relevant to
the existence of an agreement to arbitrate, contrary to the case law and the mandate of the
22 Federal Arbitration Act.  ONESCO has appealed these decisions to the respective circuit
courts of appeals.  For instance, in <u>ONESCO v. Pals</u>, 2007 WL 2506033 (N.D. Iowa Sept. 6,
23 2007); and <u>ONESCO v. Steinke</u>, 2007 WL 2421761 (C.D. Cal. Aug. 27, 2007), the courts
permitted the defendants to interject evidence; then accepted their unilateral evidentiary
24 submissions at face value; refused to allow ONESCO to make any challenge to these facts, be
it by discovery or an evidentiary hearing; and then answered the inherently factual question of
25 arbitrability (i.e., the existence of an agreement to arbitrate) in favor of the defendants based
upon defendants' unilateral submissions.  Essentially, the courts improperly "presumed"
26 arbitration was appropriate and accepted the defendants' word for it.  The same can be said of
27 the other decisions referenced by Defendant at pages 5-7 of his Motion.
28

1

- Who actually sold the subject securities to Defendant?

2

Defendant alleges that Lancaster, who was associated with ONESCO for a limited

3

period, sold him the securities in question. But his Subscription Agreement, at page SB-11,

4

indicates that it was a Bob Reese who actually introduced him to the Lancorp Fund. [See

5

Defendant's Subscription Agreement, Exh. A to Little Aff'd.]   Other than his conclusory

6

assertions, Defendant offers nothing to suggest that Lancaster, as opposed to someone not

7

affiliated with ONESCO, actually sold him the investments in question. If, in fact, someone

8

other than Lancaster sold Defendant the Lancorp Fund investments, then certainly ONESCO

9

could not be required to arbitrate any claims based on such sales.

10

- What misrepresentations or omissions were actually made to induce Defendant's investment decisions?

11

12

A simple review of Defendant's NASD statement of claim provides the clear answer

13

to this material question:   "In connection with the above **_offer of securities_**, Respondent

14

ONESCO, acting through Lancaster, failed to disclose the following material facts, among

15

others, which were necessary in order to make the statements made, in light of the

16

circumstances under which they were made, not misleading … ."   [Defendant's First

17

Amended NASD Statement of Claim, at ¶ 44 (emphasis added).]  This offer, in the form of

18

the Lancorp Fund Private Placement Memorandum, was provided to Defendant prior to his

19

execution of the Subscription Agreement and before Lancaster's association with ONESCO.

20

Nonetheless, Defendant now argues that Lancaster made subsequent material

21

misrepresentations and/or omissions that actually induced his investment decisions, including

22

an April 2004 "change" in which the Lancorp Fund allegedly announced its replacement of

23

promised insurance coverage with identical coverage from a bank or broker-dealer.

24

Defendant bases this new argument, which is not mentioned in his NASD statement of claim,

25

solely on the conclusory assertions of his counsel and affidavits procured from Lancaster. No

26

affidavit is offered by Defendant, himself, as to the materiality of this alleged change.[8]

27

28

---

[8]    Indeed, Lancaster's own declaration suggests that the "materiality" of the April 2004 "change" in promised insurance coverage is far from clear.  In fact, it appears that just the opposite is true.  In his first declaration, Lancaster averred that the replacement coverage from

In lieu of his own evidence, Defendant offers and vouches for the statements of Lancaster, a person Defendant accuses of committing fraud and attempts to characterize as dishonest.  In any event, this Court should not simply accept the unilateral factual submissions of Defendant through the affidavits of Lancaster, a third-party whom ONESCO has had no opportunity to cross examine and whose credibility is in serious question.

Specifically, Lancaster offers his opinions as to the import of Defendant's irrevocable Subscription Agreement and he asserts that he expressly informed ONESCO in writing of his involvement with the Lancorp Fund.  Putting aside obvious issues with respect to the admissibility of Lancaster's interpretations of express written agreements, these affidavits reveal serious questions as to Lancaster's credibility.  For instance, Lancaster's contention that he provided express written notice to ONESCO of his involvement with the Lancorp Fund private placement contradicts the NASD's finding in its Letter of Acceptance, Waiver and Consent with Lancaster, which Lancaster executed on August 10, 2006.  [Exh. C to Little Aff'd.]  Specifically, the NASD found that "Lancaster failed to provide written notice of his participation in these securities transactions to O.N. Equity."  [Id. at 5.]  This blatant contradiction calls into question Lancaster's credibility, both with respect to this contention, and with respect to all other items addressed in his declaration.

- Who actually made the misrepresentations or omissions that induced Defendant's investment decisions?

Defendant stated in his Subscription Agreement that it was Bob Reese, as opposed to Lancaster, who actually referred him to the Lancorp Fund.  This raises the question of _who_ actually made the misrepresentations or omissions that form the basis for Defendant's claims.  Indeed, Lancaster, during his deposition in connection with Securities and Exchange Commission v. Megafund Corporation, et al., Case No. 3:05-CV-1328-L (N.D. Texas),

---

a bank or broker-dealer "_would provide the same level of protection that was initially contemplated from an outside insurer._"  [Lancaster First Decl.]

In other words, this "change" in reality reflected _no change_ in the "level of protection" promised to investors in the Lancorp Fund.  Thus, by Lancaster's own submission, such "change" did not reflect a new or material change in the representations that allegedly induced Pals' investments in the Lancorp Fund.

1    testified that he did not solicit *any* investors in the Lancorp Fund, but that such solicitation

2    was conducted by others who, like Mr. Reese, indisputably had no relationship with

3    ONESCO.  [See Lancaster Tr. at 66, Exh. D to Little Aff'd.]  In a letter to Jodi Larson,

4    apparently with the NASD, Lancaster further stated that the Lancorp Fund, itself, conducted

5    no solicitation of investors.  [See Lawson Letter, Exh. A to Rule 56(f) Aff'd.]  Defendant

6    offers nothing to suggest that Lancaster, as opposed to someone else, ever actually solicited

7    his investment in Lancorp Fund.

8         If someone other than Lancaster engaged in the wrongful conduct alleged by

9    Defendant, then certainly ONESCO would have no obligation to arbitrate claims arising from

10   such conduct.

11        •    When did the misrepresentations or omissions that induced Defendant's
12             investment decisions occur?

13        Finally, even assuming that Lancaster actually made the misrepresentations and

14   omissions alleged by Defendant, Defendant's unilateral submissions merely beg the ultimate

15   question of when such misrepresentations or omissions occurred.  Despite the date of his

16   Subscription Agreement, Defendant attempts to push forward in time the events giving rise to

17   his statement of claim by arguing that subsequent events, including the April 2004 "change"

18   and the Lancorp Fund's alleged holding in escrow and subsequent reinvestment of his funds,

19   actually form the basis for his claims.  But these "facts" do not answer the questions of when

20   the relevant material misrepresentations or omissions occurred, and whether these alleged

21   subsequent events (again, not mentioned in Defendant's NASD statement of claim) were

22   based on the same alleged misrepresentations or omissions that induced his Subscription

23   Agreement.  Again, discovery is necessary before the Court can answer these inherently

24   factual questions, which are material to the issue of arbitrability.

25        Moreover, even if Defendant was correct that the Lancorp Fund's holding in escrow

26   and subsequent reinvestment of his funds actually provides the basis for his claims,

27   Lancaster's testimony in connection with Megafund, *supra*, indicates that Lancorp Fund did

28   not invest in Megafund (the alleged Ponzi scheme identified in Defendant's NASD

                                           14

1  allegations) until *2005*, *after Lancaster was no longer associated with ONESCO*.  [Lancaster

2  Tr. at 24-25.]

3          In short, Defendant's unilateral submissions raise factual questions as to when the

4  events giving rise to his NASD claims actually occurred (i.e., before, during or after

5  Lancaster's association with ONESCO).  Such questions should not be answered solely on the

6  basis of Defendant's unilateral submissions.

7                                          **CONCLUSION**

8          For all of the reasons set forth herein and in ONESCO's Motion for Preliminary

9  Injunction, the Court should grant ONESCO's motion for preliminary injunction as to those

10  claims clearly based on events that occurred at a time when Lancaster was not associated with

11  ONESCO and deny or defer a decision on Defendant's Motion to Compel as to the remaining

12  claims until ONESCO has had an opportunity to discover facts essential to its opposition

13  thereto.

14

15

16  Dated:  December 12, 2007          Respectfully submitted,

17                                      ZEIGER, TIGGES & LITTLE LLP

18                                      /s/ Michael R. Reed
                                        Michael R. Reed, Esq
19
                                        Attorneys for Plaintiff
20                                      THE O.N. EQUITY SALES COMPANY

21

22

23

24

25  414-011:182207

26

27

28

                                          15