Westlaw.

911 F.2d 724                                                                                    Page 1

911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962
**(Cite as: 911 F.2d 724, 911 F.2d 724 (Table))**

C
Phillips v. General Motors Corp.
C.A.4 (Md.),1990.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a " Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Fourth Circuit.
Mark S. PHILLIPS, Vicky L. Phillips, his wife, Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
No. 89-2210.

Argued May 9, 1990.
Decided Aug. 16, 1990.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CA-89-1209-JH)

Dennis Francis O'Brien, White, Mindel, Clarke & Hill, Towson, Md., (argued), for appellants, Samuel D. Hill, White, Mindel, Clarke & Hill, Towson, Md., David Kimmelman, Baltimore, Md., on brief.
Michael Salvatore Barranco, Piper & Marbury, Baltimore, Md., (argued), for appellee; Joseph G. Finnerty, Jr., Piper & Marbury, Baltimore, Md., on brief.
D.Md.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Before PHILLIPS, Circuit Judge, JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, Sitting by Designation, and McMILLAN, Senior United States District Judge for the Western District of North Carolina, Sitting by Designation.
PER CURIAM:
*1 Mark S. Phillips was injured in an automobile accident that occurred after he lost control of the Pontiac Sunbird he was driving. He brought a products liability action against General Motors (GM), the Sunbird's manufacturer, and, together with his wife, added a claim for loss of consortium. The complaint alleged that the Sunbird's rear axle fractured as a result of an unspecified defect, causing the left rear tire to come off while the car was in motion and resulting in the crash. After the discovery completion date, the district court granted GM's motion for summary judgment. At the time the court granted GM's motion, Phillips had pending with the court a motion to compel discovery. On appeal, Phillips contends that evidence of an axle defect before the court created a genuine issue of material fact and, alternatively, that the court abused its discretion in granting summary judgment before he had the opportunity to complete discovery. We agree that the district court acted prematurely in rendering judgment in this case without addressing the discovery dispute and therefore remand this case for further proceedings.

I

Phillips was driving his 1978 Pontiac Sunbird on a four lane road in Baltimore, Maryland, at approximately 3:30 A.M. on March 29, 1986, when he lost control of the vehicle and eventually crashed into a utility pole. Phillips had purchased the used Sunbird approximately eighteen months before at a time when it had over 89,000 miles on its odometer. In deposition testimony, Phillips indicated that he felt the rear end of the car drop as he approached an intersection and heard a loud clunk from beneath the car. The car pulled hard to the left; he responded by jerking the steering wheel back to the right to avoid oncoming traffic and attempted to guide the car into a field off the right shoulder of the road. Phillips did not regain control of the car

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

G

Case 3:07-cv-02844-JSW   Document 52-8   Filed 12/12/2007   Page 2 of 7

Page 3 of 8

911 F.2d 724                                                                                                                Page 2
911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962
**(Cite as: 911 F.2d 724, 911 F.2d 724 (Table))**

and crashed into a utility pole along the right side of the road. The left rear tire and part of the axle were apparently found some distance from the car in a parking lot. Although in his complaint Phillips alleged that just before the incident the left rear wheel had hit a pothole, at his deposition Phillips testified that he did not hit any potholes or strike any other object before he lost control of the car. *See* Joint Appendix (J.A.) at 4; 134.

Two of Phillips' friends riding in his car at the time of the accident and another friend in a van that was behind the Sunbird gave corroborative deposition testimony. John Mahala, Phillips' front seat passenger, testified that he felt a "dip" before the car went out of control, but could remember little else. Charles Coburn, who was in the back seat of Phillips' car, testified that he "heard a loud snap and the car just jolted and I was thrown to the floor and next thing I knew we were impacted with a pole." *Id.* at 203. Ray Mogle, a passenger in the van behind Phillips' car, indicated that the rear tire of the Sunbird came off before Phillips lost control of the car; it bounced away up the street as Phillips struggled with the swerving car. *Id.* at 172-81. He also said that he saw sparks from underneath the car as it careened toward the utility pole and noticed grey paint on the road leading up to the pole.

*2 Phillips employed Dr. Carl Zapffe, a research metallurgist and professional engineer, to examine the Sunbird and prepare a report on the results of his investigation. Dr. Zapffe submitted his report, titled "Fractological Analysis of A Failed Automotive Axle," February 9, 1987. Dr. Zapffe concluded after examining the left rear axle that the axle had suffered a single-stress impact fracture while the vehicle was in motion. He characterized it as a "Type II failure"-"one which has been caused solely by externally imposed stress, and not by any defect within the metal which weakened its serviceability." *Id.* at 128. The shaft was " primarily broken by high-velocity bending, but the progression of the separation was affected by rotational forces of torque." *Id.* He added that "the scenario is virtually limited to one in which a wheel either strikes some object on the roadway, or drops into a hole." *Id.* His final conclusion summarizes his findings.

*Sixth*, because the failure occurred during customer use that shows no evidence of being so highly unusual as to lie beyond reasonable anticipation, one is left to conclude that the shaft has either been insufficiently or improperly designed. This investigation did not proceed to analyze the steel from either chemical or metallographic standpoints, then check it against original specifications of the manufacturer, since the original purpose of the study seems to have been answered. The shaft was too weak to resist bend forces transmitted from road contacts; and it was too shock-sensitive to resist fracture under high-velocity loading.

*Id.*

The Phillipses filed this action in the Circuit Court for Baltimore County on March 22, 1989. In the complaint, Mark Phillips individually stated claims for negligence, breach of warranty, and strict liability; the Phillipses jointly added a claim for loss of services arising from injuries Mark Phillips suffered.[FN1] GM removed the case to federal court on the basis of diversity of citizenship. After the action was removed, the district court entered a scheduling order calling for the close of discovery by August 25, 1989. Phillips' attorney had contacted GM as early as February 1987 regarding his claim and had included Dr. Zapffe's report. Phillips also had made the axle available for inspection by GM (the rest of the vehicle was not retained). GM did not request the vehicle components until June 22, 1989, and at that time also inquired about Phillips' proposed expert witnesses. Phillips' attorney responded on July 5; he indicated that Dr. Zapffe would be an expert for the plaintiffs and included interrogatories.

GM apparently expected the parts to be delivered and did not conduct any investigation until sometime after July 19. On that date, Phillips' attorney indicated in a letter to GM's attorney, copying the district court, that the scheduling order was impractical in light of GM's failure to yet answer plaintiffs' interrogatories and the expected time needed to follow up on the information gained from the interrogatory answers. GM finally responded to one of Phillips' interrogatories on August 14, identifying three possible experts and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

indicating that they were expected to testify "that the fracture in the rear axle of the accident vehicle was not caused by any design or manufacturing defect but was caused by the impact of the accident vehicle with the utility pole which the accident vehicle struck after Mark Phillips lost control of the vehicle." *Id.* at 26-27. They also moved the court to compel Phillips to respond to their interrogatories and requests for production of documents.

*3 On August 25, the date discovery was to close, Phillips filed an answer to the motion to compel and apparently sent plaintiffs' answers to GM. He also filed a motion to delay the dates established in the court's scheduling order, again highlighting GM's failure to answer plaintiffs' interrogatories. Phillips' attorney wrote the court an explanatory letter on September 7 that noted GM's continued failure to answer the interrogatories. GM finally answered plaintiffs' interrogatories on or around September 11, noting objections to many of the questions.

GM moved for summary judgment on September 12 on the ground that Phillips had no evidence of any defect in the Sunbird's axle. Phillips responded to GM's motion, relying on the deposition testimony of Phillips and the other fact witnesses and Dr. Zapffe's report, to be supplemented by his affidavit. Phillips claimed that "questions of proper specifications and whether the steel in and the axle itself met those specifications would require an automotive engineer having all the information that the Defendant only can provide and which the Plaintiffs have attempted to obtain by its (sic) Interrogatories very recently answered by the Defendant but without really providing the information requested." *Id.* at 54. Phillips noted that since the discovery deadline had passed, there was "little or no time" to pursue more detailed information from the defendant and "then to obtain an automotive engineer to go over this information and form an opinion as to the propriety of the specifications or the manufacturing process." *Id.* at 55. The court responded to Phillips' delay requests and "unwillingly" continued the trial dates, but also indicated that it would rule on GM's motion for summary judgment as soon as it received Dr. Zapffe's affidavit.

On October 2, Phillips moved the court to compel GM to answer plaintiffs' interrogatories. Phillips contended that the answers GM provided to eighteen interrogatories were inadequate and identified for several of those interrogatories specific reasons for his objection. Phillips also filed Dr. Zapffe's affidavit with the court on October 2. Dr. Zapffe averred that he "should have expanded upon" his statement that the fracture scenario was limited to impact from a pothole or other object to include causation from a transmission power surge. Further, he added that in his field notes he had written that the Sunbird had "an amazingly flimsy axle in appearance," and that the failure could "only be a design defect, an axle member of insufficient strength." *Id.* at 80. He indicated, however, that his investigation "did not go into whether this axle was made to specifications and/or standards in the industry or even what these specifications, etc. were, since that investigation is one for an automotive engineer." *Id.* In apparent response to the conclusion proffered by GM's experts, Dr. Zapffe opined that the axle "did not fracture as the result of striking either curb or pole, but that the failure instead occurred prior to any such collision events causing damage to the auto body." *Id.*

*4 The district court granted GM's motion for summary judgment and issued a memorandum opinion on October 10, 1989. The court emphasized Dr. Zapffe's uncontradicted conclusion that the axle fracture was "caused solely by externally imposed stress, and not by an defect within the metal which weakened its serviceability"; Dr. Zapffe's seemingly contradictory assessment in his field notes was deemed preliminary and insufficient to create any genuine issue of material fact. The court held that Phillips' strict liability claim failed for want of any evidence that the Sunbird's axle was in a defective condition when it left GM's control.[FN2] The court also held that Phillips' breach of warranty claim was barred by Maryland's statute of limitations.[FN3] Phillips filed a motion to strike the judgment "so that Discovery can proceed and the case be eventually tried," attaching in support information indicating that other GM model cars (not the Sunbird) had axle failure problems. The court found that Phillips still

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW   Document 52-8   Filed 12/12/2007   Page 4 of 7

911 F.2d 724                                                                                                  Page 4
911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962
**(Cite as: 911 F.2d 724, 911 F.2d 724 (Table))**

had not produced any specific evidence of a defect in the axle of his car and denied the motion. The court never ruled on Phillips' motion to compel answers to plaintiffs' interrogatories.

This appeal followed.

II

A

Under Fed.R.Civ.P. 56(c), summary judgment " shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is properly awarded against a party who fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of informing the court of the basis of the motion and identifying those portions of the record which are believed to show the absence of a genuine issue of material fact. *See id.* at 323. If the moving party does not bear the burden of proof at trial and that party makes a showing to demonstrate the absence of a genuine issue of material fact, the nonmoving party cannot rest on its pleadings but must make a specific showing of facts presenting a genuine issue for trial. *See id.* at 323-24; Fed.R.Civ.P. 56(e).

As a general rule, granting summary judgment prior to the completion of all discovery is inappropriate. *See Snook v. Trust Co. of Ga. Bank of Savannah,* 859 F.2d 865, 870 (11th Cir.1988); *Visa Int'l Serv. Ass'n v. Bankcard Holders,* 784 F.2d 1472, 1475 (9th Cir.1986); *see also Celotex,* 477 U.S. at 322 (summary judgment appropriate only "after adequate time for discovery"). Under Federal Rule 56(f), the district court has discretionary authority to deny a motion for summary judgment in response to the nonmoving party's plea for additional discovery.

*5 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). The Supreme Court has stated that Rule 56(e)'s requirement that the party opposing a summary judgment motion set forth specific facts showing that there is a genuine issue for trial "is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 & n. 5 (1986). Although the law in some circuits is apparently to the contrary, *see Mid-South Grizzlies v. National Football League,* 720 F.2d 772, 780 n. 4 (3d Cir.1983), the majority rule is that the nonmoving party need not file an affidavit to preserve a Rule 56(f) contention, provided that the court is aware, through outstanding discovery requests and other filings with the court, of the asserted need for additional discovery. *See Snook,* 859 F.2d at 871; *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1518 (9th Cir.1987).

The relevant question for a reviewing court when the district court has granted summary judgment without ruling on the nonmoving party's Rule 56(f) motion or pending discovery requests is whether the nonmovant has sufficiently identified the information sought by discovery, the reasons the information has not yet been obtained, and the materiality of the information to its opposition to the summary judgment motion. *See generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2741 (1983) [hereinafter Wright, Miller, & Kane]. Thus in *Snook* the court found it "clear that many of the documents requested are relevant to the issues raised by the defendants' motion for summary judgment" and that "many of the requested documents are discoverable.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW   Document 52-8   Filed 12/12/2007   Page 5 of 7

911 F.2d 724                                                                     Page 5
911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962
**(Cite as: 911 F.2d 724, 911 F.2d 724 (Table))**

" 859 F.2d at 871. Similarly the court in *Klingele v. Eikenberry,* 849 F.2d 409, 412 (9th Cir.1988) (citations omitted), found that the plaintiff had set forth "the particular facts that he expected to uncover through discovery and identified specific facts tending to show that the evidence sought actually exists." Requests for broad additional discovery or "fishing expeditions" will not suffice. *See Garrett,* 818 F.2d at 1518; *see also Visa Int'l,* 784 F.2d at 1475 (Rule 56(f) application properly denied "where it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation").

A district court's denial of a Rule 56(f) motion is reviewed under an abuse of discretion standard. *See, e.g., Visa Int'l,* 784 F.2d 1475. But where the court has failed to rule on a Rule 56(f) motion, or grants summary judgment without addressing outstanding discovery motions, appellate courts have not hesitated to find abuse of discretion. *See Snook,* 859 F.2d at 871 (reversing grant of summary judgment and remanding for district court to rule on motion to compel discovery); *see also Garrett,* 818 F.2d at 1518 & n. 3 (failure to rule on Rule 56(f) motion is failure to exercise discretion and is reviewed de novo).

B

*6 The district court in this case granted GM's summary judgment motion without addressing Phillips' pending motion to compel GM to answer responsively plaintiffs' interrogatories. Phillips' repeated notices to the district court that GM was dilatory in answering plaintiffs' interrogatories, the motion to compel adequate answers filed with the court after receiving GM's responses, and the several pleas for extensions of the scheduling order dates put the court on notice of plaintiffs' contention that they could not adequately oppose GM's motion for summary judgment without additional discovery. We agree with those courts that have held that a nonmoving party is not necessarily precluded from invoking the protections of Rule 56(f) by that party's failure to present its request by affidavit. We will not exalt form over fair procedures and require strict adherence to Rule 56(f) when, as here, the nonmoving party has made plain through summary judgment opposition papers and outstanding discovery motions its attempt to invoke the protections of that rule. *See Snook,* 859 F.2d at 871 (citing *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.1973) (en banc)).

Accepting that a nonmoving party may adequately demonstrate its desire to invoke Rule 56(f) by means other than an affidavit does not, however, resolve this case. The affidavit requirement in Rule 56 serves the salutary purpose of forcing the nonmoving party to identify for the court the specific reasons for its inability to mount an opposition to the summary judgment motion. The rule does not place the burden on the district court to ferret out from the mountain of papers that may have been filed with it during the course of the litigation the nonmoving party's reasons for its inability to present "facts essential to justify the party's opposition." *See*Fed.R.Civ.P. 56(f). Rather, Rule 56(f) contemplates that the nonmoving party explain why those facts cannot yet be presented. *See*10A Wright, Miller, and Kane, § 2740, at 530.

Phillips contends that GM failed to answer adequately plaintiffs' interrogatories, answers that would have revealed information in the exclusive possession of GM that was critical to the opposition to GM's summary judgment motion. Averment that the moving party has exclusive possession and control of the relevant facts by itself is insufficient to invoke the protections of Rule 56(f). "[T]he opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control, what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules, and that he wishes to take advantage of these discovery procedures." 6 J. Moore & J. Wicker, *Moore's Federal Practice,* para. 56.24, at 56-811 (2d ed. 1988); *see*10A Wright, Miller, & Kane, § 2741, at 548-52.

We think that Phillips' various entreaties were sufficiently focused to apprise the court, even in the absence of an affidavit, of plaintiffs' desire to invoke the protections of Rule 56(f). Phillips

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW   Document 52-8   Filed 12/12/2007   Page 6 of 7

911 F.2d 724                                                                                          Page 6
911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962
**(Cite as: 911 F.2d 724, 911 F.2d 724 (Table))**

repeatedly highlighted GM's failure to timely respond to plaintiffs' interrogatories. Phillips' opposition to GM's summary judgment motion, a motion filed immediately after GM answered plaintiffs' interrogatories, was based in large part on the alleged failure of GM to provide information requested in the interrogatories and the inability to pursue additional discovery based on that information. Phillips then directed the court to specific interrogatories objected to by GM and moved the court to compel adequate answers to those questions.

*7 We think it is also clear that the information requested in plaintiffs' interrogatories was critical to the opposition to GM's summary judgment motion. The district court held that Phillips failed to establish that the Sunbird's axle was in a defective condition when it left GM's control and granted the company's summary judgment motion on that basis. In opposing the motion, Phillips emphasized that the question whether the axle was properly designed ("questions of proper specifications") and manufactured could be answered only after GM provided information sought in plaintiffs' interrogatories. Only then could an automotive engineer "go over this information and form an opinion as to the propriety of the specifications or the manufacturing process." Phillips then might have been able to create a triable issue on the defect question. *See Tauber v. Nissan Motor Corp., USA,* 671 F.Supp. 1070 (D.Md.1987) (summary judgment granted where plaintiffs present no credible evidence of design defect; expert's testimony not credited); *Harrison v. Bill Cairns Pontiac,* 549 A.2d 385 (Md.App.1988) (experts' testimony insufficient to permit inference that defect existed at time automobile left manufacturer's control; summary judgment affirmed); *Jensen v. American Motors Corp.,* 437 A.2d 242 (Md.App.1981) (no expert evidence of any defect in automobile and circumstantial evidence insufficient to permit inference of defect; summary judgment affirmed); *see also Garrett,* 818 F.2d at 1519 (plaintiff's motion to compel sought "precisely the type of evidence" needed to meet its burden in responding to summary judgment motion).

Phillips' inability to make the kind of showing necessary to present a genuine issue for trial on the defect issue was thus directly tied to the asserted failure of GM to respond properly to plaintiffs' interrogatories. Phillips placed the issue before the district court in the motion to compel, but the court never ruled on that motion. Without attempting to rule in the first instance on the motion to compel, we can say that the information requested in at least some of plaintiffs' interrogatories is relevant to the issues raised in GM's summary judgment motion and that such information is discoverable. *See Snook,* 859 F.2d at 871; *Garrett,* 818 F.2d at 1519. For example, plaintiffs' interrogatory 21 requested GM to identify "all engineering reports, memos, notes and calculations on the justification or support for the mechanical design and safety of the rear axles and axle assemblies used in the 1978 Pontiac Sunbird, as well as all persons having personal knowledge of these facts." J.A. at 71; *see also id.* at 75 (interrogatory 26, requesting rear axle specifications and changes in same for Pontiac Sunbird); *id.* at 73-74, 76 (interrogatories 24 and 27 requesting test and inspection information). The district court should have addressed under the rules governing discovery Phillips' motion to compel answers to these and the other identified interrogatories before addressing GM's motion for summary judgment.

*8 We think this approach is consistent with the Supreme Court's admonition that summary judgment procedure is properly regarded "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex,* 477 U.S. at 327. GM properly informed the court of the basis for its motion-the asserted absence of an issue of material fact on the question whether the axle of Phillips' Sunbird was defective when it left GM's control. We need not and do not decide whether the evidence forecast by Phillips was sufficient to raise an issue of material fact on this question because we believe that the district court prematurely interdicted Phillips' efforts to make a showing that there was a genuine issue for trial. Phillips apprised the court of plaintiffs' inability to present all the facts justifying their opposition and moved the court to compel GM to provide information critical to the question posed by the summary judgment motion. *See Anderson v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02844-JSW   Document 52-8   Filed 12/12/2007   Page 7 of 7

911 F.2d 724                                                                                                Page 7
911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962
**(Cite as: 911 F.2d 724, 911 F.2d 724 (Table))**

*Liberty Lobby, Inc.,* 477 U.S. at 257 (plaintiff must present affirmative evidence in order to defeat properly supported summary judgment motion " even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a *full opportunity* to conduct discovery") (emphasis added). We can reconcile Rule 56(e)'s requirement that the nonmovant demonstrate the presence of a genuine issue for trial with the qualification inherent in Rule 56(f) that the nonmovant must have the opportunity to discover information essential to its opposition only by requiring the district court in a case like this one to determine whether discovery should be compelled and, in light of that decision, whether relief under Rule 56(f) should be granted. *See id.* at 250 & n. 5.

III

We hold that where, as here, a party opposing a summary judgment motion has sufficiently identified information sought by discovery, the reasons the information has not yet been obtained, and the materiality of that information to its opposition to the motion, the district court must exercise its discretion under Rule 56(f) and determine whether the protections of that rule should be invoked. Where the party opposing the summary judgment motion has pending before the court discovery motions that underlie its Rule 56(f) entreaty, it is error for the district court to rule on the summary judgment motion without first having determined the merits of the pending discovery requests. The district court here acted prematurely in granting GM's motion for summary judgment; we therefore reverse that judgment. On remand, the court should rule on Phillips' motion to compel discovery. In light of that ruling, the court should determine in its discretion whether or not to deny GM's motion, order a continuance so that additional discovery may be undertaken, or "make such other order as is just" under Rule 56(f).

*REVERSED AND REMANDED WITH INSTRUCTIONS.*

FN1. For convenience, we will from this point forward refer to the plaintiffs as " Phillips."

FN2. Under Maryland law, the law applicable in this diversity action, a plaintiff seeking to recover on a products liability claim must prove four essential elements:
1) that the product was in a defective condition at the time that it left the possession or control of the seller (defendant);
2) that the product was unreasonably dangerous to the user or consumer;
3) that the defect was the cause of the injuries; and
4) that the product was expected to and did reach the consumer without substantial change in its condition.
*See Phipps v. General Motors Corp.,* 363 A.2d 955, 958 (Md.1976).

FN3. Phillips has not appealed this ruling.
C.A.4 (Md.),1990.
Phillips v. General Motors Corp.
911 F.2d 724, 1990 WL 117981 (C.A.4 (Md.)), 17 Fed.R.Serv.3d 962

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.