1   Joel A. Goodman (FL Bar No. 802468)
    Admitted *pro hac vice*
2   Email: gn.law@verizon.net
    Goodman & Nekvasil, P.A.
3   14020 Roosevelt Blvd., Suite 808
    P.O. Box 17709
4   Clearwater, Florida 33762
    Telephone:  727-524-8486
5   Facsimile:  727-524-8786

6   Cary S. Lapidus (CA Bar No. 123983)
    Email: CaryLapidus@aol.com
7   Law Offices of Cary S. Lapidus
    425 California Street, Suite 2100
8   San Francisco, CA 94104
    Telephone: (415) 296-7101
9   Facsimile: (415) 296-7821
    Local counsel
10
11  Attorneys for Defendant Daniel Maria Cui

12              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13

14  THE O.N. EQUITY SALES COMPANY,            )   Case No. C 07-02844 JSW
                                              )
15              Plaintiff,                    )   **DEFENDANT'S REPLY**
                                              )   **MEMORANDUM OF POINTS AND**
16      v.                                    )   **AUTHORITIES IN SUPPORT OF**
                                              )   **HIS MOTION TO COMPEL**
17  DANIEL MARIA CUI,                         )   **ARBITRATION**
                                              )
18              Defendant.                    )   Date: January 18, 2008
                                              )   Time: 9:00 a.m.
19  _____  )   Courtroom: 2, 17th Floor

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27  /

28  /

---

Defendant's Reply in Support of his Motion to Compel Arbitration   Case No. C 07-02844 JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    Three More Judges have Denied Discovery, and Two of Them Found that ONESCO should be Compelled to Arbitrate.**

In his Memorandum of Points and Authorities in Support of his Motion to Compel Arbitration ("Motion to Compel Arbitration") (doc. 49) and his response to Plaintiff's Objections to Magistrate's Order Denying Discovery ("Response to Discovery Objections") (doc. 48), Defendant Daniel Maria Cui ("Maria Cui") told this Court that seven federal judges had compelled Plaintiff O.N. Equity Sales Company ("ONESCO") to arbitrate, and five more had denied ONESCO's request for discovery, while not ruling on arbitrability.  Since that time, two more judges have denied discovery and found that ONESCO should be required to arbitrate. ONESCO v. Rahner, ___ F. Supp. 2d ___, 2007 WL 4258642 (D. Colo. Nov. 30, 2007); ONESCO v. Samuels, 2007 WL 4237013 (M.D. Fla. Nov. 30, 2007).  Like Judge James and this Court, a third judge has denied discovery, without ruling on arbitrability.  ONESCO v. Dina, Case No. 07-cv-3597-RJD-KAM (E.D.N.Y. Dec. 5, 2007) (A copy of this unpublished decision is attached as an exhibit.)

Maria Cui directs this Court to the following statements in Rahner and Samuels.

> The discovery ONESCO seeks would have no impact on this determination. . . . [I]t is irrelevant that the Rahners first entered into their subscription agreements before Mr. Lancaster became associated with ONESCO. Whether Mr. Lancaster or Mr. Reese made false representations to the Rahners, or when they made them, is also irrelevant . . . . Such facts might be pertinent to the merits of the Rahners' claims . . ., but . . . the Court is only concerned with whether the Rahners received investment services from Mr. Lancaster while he was associated with ONESCO. Such receipt of services, alone, is sufficient to render the Rahners "customers" of an "associated person" for purposes of Rule 10301.

Rahner, 2007 WL 4258642, at *5. "[A]t the pertinent times, the plaintiff was an NASD member, Lancaster was an associated person of the plaintiff, and the defendant was a customer of Lancaster. . . . [N]othing about these determinative facts . . . warrants discovery." Samuels, 2007 WL 4237013, at *5.  This Court should reach the same conclusions and compel ONESCO to arbitrate.

**B.    ONESCO's Arguments Regarding Discovery Should have been Made to Judge James and in ONESCO's Objections to her Order Denying Discovery.**

At the scheduling conference on September 7, 2007, after ONESCO filed a 12-page Memorandum in Support of its Motion for Immediate Discovery (doc. 32), this Court ordered that the discovery motion be stricken, because it violated this Court's Standing Order regarding discovery

-1-

1   procedures. (<u>See</u> Civil Minute Order, doc. 34) This Court referred all discovery issues to Judge

2   James. (doc. 34)  Judge James denied ONESCO's request for discovery (doc. 38), and ONESCO

3   filed objections to her decision. (doc. 40) This Court ordered Maria Cui to respond to the objections,

4   limiting the response to ten pages. (doc. 43) After Maria Cui filed his ten-page Response to

5   Discovery Objections, this Court affirmed Judge James's decision. (doc. 50)

6        Now, as its Response to Maria Cui's Motion to Compel Arbitration and its Reply in Support

7   of its Motion for Preliminary Injunction ("Injunction Reply" or "Reply") (doc. 51), ONESCO has

8   filed a 15-page document devoted largely to arguing that ONESCO is entitled to discovery pursuant

9   to Federal Rule of Civil Procedure 56(f) and for other reasons, along with a seven-page affidavit

10   (doc. 52) to the same effect.  Although the Injunction Reply nominally complies with the parties'

11   stipulated briefing schedule (doc. 41) as ordered by this Court (doc. 42) that the Reply not exceed

12   15 pages, it is in fact longer than 15 pages, given its lengthy single-spaced footnotes.  It further

13   violates this Court's orders, because this Court referred all discovery issues to Judge James.  In

14   addition, this Court's Civil Standing Order states that "no motions regarding discovery disputes may

15   be filed without prior leave of Court," and "requests for discovery relief must be summarized jointly

16   by the parties in a *joint* letter brief no longer than four pages."  Defendant also observes that

17   ONESCO's recent filings, including the Injunction Reply and its affidavit, do not see the need to

18   comply with Federal Rule of Civil Procedure 5(d), which requires the attachment of certificates of

19   service.  ONESCO unfortunately did not learn from this Court's striking of its earlier discovery

20   motion and has proceeded again to disregard this Court's orders and rules relating to discovery.

21        More fundamentally, ONESCO has already made its discovery arguments to Judge James

22   and in its objections to her order.  Rule 56(f) and any other new arguments relating to discovery

23   should have been raised, if at all, in those filings.  ONESCO's new arguments regarding discovery,

24   including its citation of Rule 56(f), are waived, and its old arguments regarding discovery are barred

25   as being merely repetitive of the arguments that Judge James and this Court have already rejected.

26   <u>See</u> <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[A] party's

27   objections to the magistrate judge's report and recommendation must be . . . specific to preserve an

28   issue for . . . review by the district court . . .").

C.    **For Arbitrability Purposes, the Pertinent Facts are Undisputed.**

In its Injunction Reply, ONESCO focuses on what it believes to be the timing of the representations and omissions made to Maria Cui in connection with his Lancorp investments. Nowhere in the dozens of pages that ONESCO has written and filed in this Court, however, does ONESCO dispute that Maria Cui's initial investments were not sold until April or May 2004, after Lancaster became an ONESCO employee in March 2004. Nowhere does ONESCO dispute that the initial Lancorp subscription agreement was not a completed contract when signed, because it imposed no obligation on Lancorp, and Lancorp could withdraw the offer at any time, prior to closing in May 2004. Nowhere does ONESCO dispute that Maria Cui had no standing to bring a claim at the time the initial subscription agreement was signed, because the investment was not yet sold at that time. ONESCO's contentions amount to the nonsensical proposition that Maria Cui cannot arbitrate ONESCO's liability for the Lancorp sales to Maria Cui, because the pertinent representations and omissions were supposedly made earlier, even though ONESCO does not dispute that Maria Cui could not bring a claim at the time ONESCO thinks the representations and omissions were made.

Nowhere does ONESCO dispute that Lancaster offered Maria Cui an opportunity in April 2004 to get back his initial investment, before the Lancorp offering closed in May 2004 and after Lancaster became an ONESCO employee. Nowhere does ONESCO dispute that Maria Cui made the investment decision in April 2004 not to get back his money and to sign a reconfirmation letter, attached to his Motion to Compel Arbitration as Exhibit "2," stating that he desired to remain invested in Lancorp. Although ONESCO characterizes the initial Lancorp subscription agreement as "irrevocable," Injunction Reply at 2, it manifestly was not irrevocable in light of Lancaster's offer to refund Maria Cui's funds. Nowhere does ONESCO dispute that paragraph 39 of Maria Cui's arbitration claim, attached to ONESCO's Complaint as Exhibit "C," alleges that he purchased his initial investments in April 2004, while Lancaster worked for ONESCO, and thereafter made additional investments. Nowhere does ONESCO dispute that Maria Cui alleges in his arbitration claim that ONESCO failed to supervise Lancaster while he worked for ONESCO.

Defendant's Reply in Support of his Motion to Compel Arbitration    Case No. C 07-02844 JSW

1
2
3
4
5
6

Contrary to ONESCO's assertions that Maria Cui is now offering a "slew of new factual contentions," Injunction Reply at 2, Maria Cui's position in this Court is the same as it was in paragraph 39 of his arbitration claim.  His Lancorp investments were sold to him after Lancaster started worked for ONESCO, and Maria Cui is entitled to arbitrate whether ONESCO is responsible for those sales.  Maria Cui has undisputedly alleged facts that occurred while Lancaster worked for ONESCO on which Maria Cui may properly seek to hold ONESCO liable in arbitration.

7
8
9
10
11
12
13
14
15
16
17
18

ONESCO wants to focus this Court's attention on earlier representations and omissions that ONESCO believes took place.  ONESCO argues that claims about these earlier representations and omissions, if any, as well as claims about events after Lancaster left ONESCO, should be determined to be non-arbitrable.  Maria Cui, however, is seeking to arbitrate about single transactions, all of which occurred after Lancaster started working for ONESCO. Earlier representations and omissions, if any, carried forward as part of the background for and as part of the actual sales, in the same way that ONESCO may seek to introduce evidence in the arbitration about Maria Cui's financial, educational, and employment history, as part of the background for his dealings with Lancaster, Lancorp, and ONESCO.  Similarly, whether events relating to damages occurred after Lancaster left ONESCO, such as ONESCO's allegations about Lancorp's later investments in Megafund, see Injunction Reply at 14-15, does not alter Maria Cui's entitlement to arbitrate whether ONESCO is liable for the sales and for any damages that the sales proximately caused.

19
20
21
22
23
24
25
26
27
28

This Court therefore need not be concerned about ONESCO's allegations of disputed facts, which pertain only to liability, not arbitrability.  Besides its allegations about Megafund and the representations before Lancaster started working for ONESCO, ONESCO alleges as a disputed fact that Robert Reese ("Reese") was involved in the Lancorp sale to Maria Cui.  See ONESCO's Injunction Reply at 13-14.  As Maria Cui already explained in his Motion to Compel Arbitration at 21-22, however, Lancaster was heavily involved in the Lancorp offering. Regardless of the nature and extent of Reese's participation in the Lancorp offering and regardless of whether Lancaster used Reese as an agent to contact Maria Cui, Maria Cui has alleged events performed by Lancaster while he worked for ONESCO for which ONESCO may be held liable and about which they are entitled to arbitrate.

Defendant's Reply in Support of his Motion to Compel Arbitration   Case No. C 07-02844 JSW

1    The same conclusion applies to ONESCO's assertion that Lancaster's changes in the

2  insurance element of the Lancorp offering were immaterial.  Injunction Reply at 12 n.8. Maria Cui

3  might have preferred insurance rather than the new Lancorp provision for a bank or broker-dealer's

4  assurance that the liquidation value of the securities purchased–which could later decrease–was

5  required to be greater than the amount paid. (See Exh. "2" attached to the Motion to Compel

6  Arbitration)  This Court can readily see that insurance is better than a mere assurance that the

7  securities purchased can initially be liquidated for the amount paid for them.

8    ONESCO alleges as a disputed fact that Lancaster lacks credibility, because his Declaration

9  states he told ONESCO about Lancorp, but he told the NASD he did not tell ONESCO about

10  Lancorp.  Injunction Reply at 13.  The NASD document in question, however, states only that

11  Lancaster did not disclose specific Lancorp transactions to ONESCO, not that he did not disclose

12  his general involvement in Lancorp. This document is therefore not inconsistent with Lancaster's

13  Declaration. Moreover, Lancaster did not admit to the findings in the document, and he consented

14  to the document solely for proceedings in which the NASD was a party.  In addition, given the

15  undisputed facts of Lancaster's heavy involvement in Lancorp, other issues relating to Lancaster's

16  credibility relate to the merits, not to arbitrability.  "While due process certainly entitles ONESCO

17  to contest the factual claims asserted against it by the defendant, including the ability to challenge

18  Lancaster's credibility, this is precisely the kind of inquiry that is at the heart of the merits of the

19  claim and not necessary for resolution at this stage." ONESCO v. Gibson, 514 F. Supp. 2d 857, 863

20  (S.D.W. Va. 2007).

21    In this connection, ONESCO's citation of Bensadoun v. Jobe-Riatt, 316 F.3d 171 (2d Cir.

22  2002), is not on point.  In Bensadoun, the broker denied having any contact with the investors in

23  connection with the investment at issue, and the Second Circuit determined that a factual question

24  was created about whether the investors were the broker's customers.  Here by contrast, Lancaster

25  had direct contact with Maria Cui in connection with Lancorp while he worked for ONESCO, as

26  evidenced by the reconfirmation letter he sent in April 2004.  For purposes of ONESCO's NASD

27  arbitration obligation under Rule 10301, Maria Cui was unambiguously Lancaster's customer in

28

1    connection with his Lancorp activities while he worked for ONESCO.  This point is by itself

2    dispositive of the arbitrability issue in this case.

3            Contrary to ONESCO's repeated assertions, whether Lancaster was credible or whether the

4    changes in the Lancorp offering were material or different from those made earlier–or, indeed,

5    whether Lancaster made any new representations after he became an ONESCO representative that

6    were material or different from those made earlier–is pertinent at best only to liability, not to

7    arbitrability. Even assuming *arguendo* that all of ONESCO's factual allegations on these issues on

8    which it hopes to discover supporting evidence are true, Maria Cui can still arbitrate, because his

9    allegations still satisfy the requirements for arbitrability under NASD Rule 10301.  First, he was an

10   ONESCO customer through Lancaster, because a customer under NASD Rule 10301 is anyone who

11   is not a broker or dealer. Multi-Financial Sec. Corp. v. King,  386 F.3d 1364, 1368 (11th Cir. 2004)

12   ("The NASD generally defines the term 'customer' as anyone who is not a broker or a dealer.").

13   "[U]nder the NASD Code, when the investor deals with an agent or representative, the investor deals

14   with the member, and on that basis the investor is entitled to have resolved in arbitration any dispute

15   that arises out of that relationship." Vestax Sec. Corp. v. McWood, 280 F.3d 1078, 1082 (6th Cir.

16   2002).  Second, he has alleged that ONESCO failed to supervise events occurring in connection with

17   his Lancorp investments while he was Lancaster's customer and while Lancaster worked for

18   ONESCO.  "'A dispute that arises from a firm's lack of supervision over its brokers arises in

19   connection with its business,'" for purposes of this requirement for arbitrability under NASD Rule

20   10301. Id. at 1082 (citation omitted).

21           ONESCO is improperly attempting to convert liability issues into arbitrability issues.  For

22   arbitrability purposes under NASD Rule 10301, the pertinent facts are undisputed.

23           [W]e are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus
             on those facts required to satisfy . . . [the] two-part test [for arbitrability under Rule
24           10301].  So while there many be dozens of disputed facts, the facts that matter in this
             case are undisputed: the Bornsteins were customers of Keller, who was an associated
25           person of MONY. This undisputed fact pattern is somewhat common, and the
             overwhelming response is that the case is subject to arbitration.  More importantly,
26           this fact pattern falls wholly within the clear language of Rules 10101 and 10301,
             which focus first on whether the investor is a customer, and second on whether the
27           dispute arose in connection with the business of the member.

28

1  MONY Sec. Corp. v. Bornstein, 390 F.3d 1340, 1346 (11th Cir. 2004) (citations omitted). Because

2  the requirements for arbitrability under Rule 10301 are satisfied, Section 4 of the Federal Arbitration

3  Act, 9 U.S.C. § 4, mandates that this Court summarily compel arbitration, without delay for

4  discovery and a two-day evidentiary hearing.

5          D.      **This Court must Apply a Presumption of Arbitrability.**

6          ONESCO continues not to understand that the issue in this case is the scope of NASD Rule

7  10301, not its existence. See Injunction Reply at 7-8. ONESCO concedes that NASD Rule 10301

8  exists and is binding on ONESCO. The issue is whether this undisputedly valid arbitration

9  agreement applies to the disputes between ONESCO and Maria Cui. This issue is by definition an

10  issue of scope, not of existence.

11          Furthermore, the disputed issue in this case is not whether Maria Cui was a customer of

12  Lancaster, because he clearly was. Instead, the disputed issue, according to ONESCO, is whether

13  he was a customer at the right time to be entitled to enforce Rule 10301. Timing questions are

14  subject to a presumption of arbitrability. Kristian v. Comcast Corp., 446 F.3d 25, 35 (1st Cir. 2006).

15          In Washington Square Sec., Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004) (citations

16  omitted), the Fourth Circuit applied this presumption to Rule 10301.

17          We address first the district court's finding that no presumption in favor of
        arbitration applied in this case because the Investors and [the brokerage firm] never
18      entered into an agreement to arbitrate [under NASD Rule 10301]. . . . We find . . . the
        reasoning of the district court unpersuasive.
19
                . . . .
20
                . . . The NASD Code constitutes an "agreement in writing" under the Federal
21      Arbitration Act, 9 U.S.C. § 2, which binds . . . an NASD member[] to submit an
        eligible dispute to arbitration upon a customer's demand. Because this arbitration
22      agreement binds Washington Square, the remaining issue is whether the Investors are
        "customers" whose dispute falls within its scope.
23

24  This Court must therefore apply a presumption of arbitrability to the scope issue in this case.

        E.      **Summary Judgment Procedures Do Not Apply.**
25
        ONESCO argues that summary judgment procedures should apply to the arbitrability issue
26
    in this case, including entitlement to discovery under Rule 56(f) and the benefit of reasonable doubts
27
    in favor of the nonmoving party. Even if Rule 56(f) did apply, the undisputed facts show that
28
    discovery is not needed. See State ex rel. Cal. Dept. of Toxic Substances Control v. Campbell, 138

-7-

1    F.3d 772, 780 (9th Cir. 1998) (rejecting the defendants' reliance on Rule 56(f), because "the facts

2    that the defendants hope to elicit during discovery are not essential to resisting [the] summary

3    adjudication motion").

4        Moreover, as stated in more detail in Maria Cui's Response to Discovery Objections (doc.

5    48) at 5-6, under Section 6 of the Federal Arbitration Act, 9 U.S.C. § 6, Appellees' motion to compel

6    arbitration is properly treated as a motion.  Summary judgment procedures under Rule 56 apply only

7    to complaints, not to motions. Parties cannot seek summary judgments on motions.  Accordingly,

8    Rule 56(f) and other summary judgment procedures do not apply to this case.

9        Although ONESCO cites cases treating motions to compel arbitration similarly to motions

10   for summary judgment, because both types of motions call for summary dispositions, no case states

11   that the specific procedural requirements of Rule 56, such as subdivision (f), are applicable to

12   motions to compel arbitration.  To the contrary, in <u>Umbenhower v. Copart, Inc</u>, 2004 WL 2660649

13   (D. Kan. Nov. 19, 2004), cited by ONESCO, the court did not apply Rule 56 authentication

14   requirements to motions to compel arbitration.  "[T]his court has found no appellate cases extending

15   the Rule 56 requirement that the parties submit evidence in a form that would be admissible at trial

16   into the context of a motion to compel" arbitration.  <u>Id.</u> at *6 n.4.  Similarly, in <u>Brown v. Dorsey &amp;</u>

17   <u>Whitney</u>, 267 F. Supp. 2d 61 (D.D.C. 2003), which treated a motion to dismiss as a motion to

18   compel arbitration, the court did not apply the notice requirements that would ordinarily apply when

19   a motion to dismiss is converted to a motion for summary judgment.  "[T]he Court is not actually

20   affecting a conversion for review under Rule 56, but is rather construing the motion for what it really

21   is–a motion to compel arbitration . . . ."  <u>Id.</u> at 67.

22       Many of the cases discussing summary judgment in the context of motions to compel

23   arbitration do so only in dicta or in connection with the making of an arbitration agreement.  <u>See</u>,

24   <u>e.g.</u>, <u>Umbenhower</u>, 2004 WL 26604649, at *6 (challenge to authenticity of the plaintiff's signature

25   on the arbitration agreement); <u>Tinder v. Pinkerton Sec.</u>, 305 F.3d 728, 735-36 (7th Cir. 2002)

26   (Employee alleged she never saw the arbitration agreement.); <u>Par-Knit Mills, Inc. v. Stockbridge</u>

27   <u>Fabrics Co.</u>, 636 F.2d 51 (3d Cir. 1980) (Production manager's signature was allegedly only a

28   confirmation of delivery dates, not an agreement to arbitrate.).  When the issue, unlike this case, is

1   whether an arbitration agreement was made at all, a discussion of summary judgment can

2   appropriately focus attention on whether summary resolution is possible and whether meaningful

3   factual disputes relating to the making of the agreement exist.  Even in this circumstance, however,

4   to facilitate the national policy favoring arbitration, the facts should be viewed in the light most

5   favorable to arbitration or at least neutrally, rather than in the light favorable to the non-moving

6   party.

7        In this case, in his Motion to Compel Arbitration at 18-21, Maria Cui explained in detail that

8   the issue is not the making of NASD Rule 10301, but its scope, to which a presumption of

9   arbitrability applies.  Unlike motions to compel compliance with an arbitration agreement, for which

10  this Court must resolve all doubts about the scope of the agreement in favor of arbitration, the facts

11  for summary judgment motions are "viewed in the light most favorable to the nonmoving party,"

12  albeit "only if there is a 'genuine' dispute as to those facts."  Broderson v. Harris, 127 S. Ct. 1769,

13  1776 (2007).  Thus, the presumption resolving doubts about the scope of arbitration agreements in

14  favor of movants seeking to compel arbitration differs from the standard applicable to summary

15  judgment motions, which requires court to view the facts in the light most favorable to the

16  nonmoving party.  Because the Federal Arbitration Act and Rule 56 standards of review are different,

17  Rule 56 standards do not appropriately apply to the scope question in this case.

18       Even if Rule 56 standards do apply, Maria Cui is entitled to summary disposition.  Under

19  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-53 (1986), trial courts, when ruling on summary

20  judgment motions, must apply "the substantive evidentiary standard of proof that would apply at a

21  trial on the merits" and must "view the evidence presented through the prism of the substantive

22  evidentiary burden."  Here, the "substantive evidentiary burden" requires resolution of doubts in

23  favor of arbitration.  Because the only question is whether doubts exist, this question is inevitably

24  susceptible to summary determination without trial.

25       The court in First Montauk Sec. Corp. v. Four Mile Range Development Co., 65 F. Supp. 2d

26  1371 (S.D. Fla. 1999), adopted this analysis in granting summary judgment to an investor on the

27  customer issue under NASD Rule 10301.  "The Court concludes that the 'substantive evidentiary

28  burden' is applicable to this action and involves the scope of written agreements to arbitrate.

1   Therefore, unless the Court can say with positive assurance that the arbitration provisions at issue

2   are not susceptible of an interpretation in favor of arbitration, the Court must find in favor of

3   arbitration." <u>Id.</u> at 1377.

4          In this instance, Maria Cui has cited numerous cases holding on facts substantially identical

5   to those in the present case that Lancorp investors are entitled to arbitrate with ONESCO.  Plainly,

6   NASD Rule 10301 is at least susceptible to this interpretation.  Consequently, even if summary

7   judgment principles are properly applied in this case, Maria Cui is entitled to summary judgment.

8          WHEREFORE, Maria Cui respectfully requests this Court to deny injunctive relief and to

9   compel arbitration.

10                              Respectfully submitted,

11  DATED: December 19, 2007          GOODMAN & NEKVASIL, P.A.
                                      By:  ____/s/ Joel A. Goodman_____
12                                         Joel A. Goodman
                                           Attorney *pro hac vice*
13
                                      LAW OFFICES OF CARY S. LAPIDUS
14                                         Cary S. Lapidus
                                           Local counsel
15
                                      Attorneys for Defendant
16
                              **CERTIFICATE OF SERVICE**
17
           I hereby certify that on December 19, 2007, Pacific Standard Time, I electronically filed the
18
    foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such
19
    filing to the e-mail addresses denoted on the Electronic Mail Notice List below.
20
                                       _/s/ Joel A. Goodman_____
21                                     Joel A. Goodman
                                       Goodman & Nekvasil, P.A.
22                                     14020 Roosevelt Blvd., Suite 808
                                       P.O. Box 17709
23                                     Clearwater, Florida 33762
                                       Telephone:  727-524-8486
24                                     Facsimile:  727-524-8786

25  **Electronic Mail Notice List**
    Daniel T. Balmat                  dbalmat@ssd.com
26  Joseph Anthony Meckes             jmeckes@ssd.com, sfr_docket@ssd.com
    Marion H. Little, Jr.             little@litohio.com
27  Michael R. Reed                   reed@litohio.com

28

                                       -10-
    Defendant's Reply in Support of his Motion to Compel Arbitration   Case No. C 07-02844 JSW